1
2
3
4
5
6
7

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WASHINGTON**

8

9   STEPHEN BUSHANSKY, derivatively on behalf
10  of ATHIRA PHARMA, INC.,

11                              Plaintiff,            Case No.: 2:22-cv-497

12            vs.                                     **VERIFIED STOCKHOLDER**
                                                      **DERIVATIVE COMPLAINT**
13  LEEN KAWAS, KELLY A. ROMANO, JOSEPH
    EDELMAN, JOHN M. FLUKE, JR., JAMES A.
14  JOHNSON, BARBARA KOSACZ, and MARK                 **JURY DEMAND**
    LITTON,

15                              Defendants,

16            and

17  ATHIRA PHARMA, INC.,

18                              Nominal Defendant.

19

20        Plaintiff, Stephen Bushansky, by his undersigned attorneys, brings this stockholder

21  derivative action on behalf of nominal defendant Athira Pharma Inc. ("Athira" or the "Company")

22  against the members of the Company's Board of Directors for their breaches of fiduciary duties,

23  violations of the federal securities laws, and other misconduct that resulted in material damage to

24  the Company and its stockholders.  These allegations are made upon personal knowledge with

25  respect to Plaintiff and, as to all other matters, upon information and belief based upon the

26  investigation and analysis by Plaintiff's counsel, including, among other things, a review of the

27

28  VERIFIED STOCKHOLDER DERIVATIVE          WEISS LAW
    COMPLAINT - 1                            305 Broadway, 7th Floor
                                             New York, New York 10007
    Case No. 2:22-cv-497                     Telephone: (212) 682-3025

1    Company's press releases and public filings with the United States Securities and Exchange

2    Commission ("SEC"), corporate governance documents published on the Company's website,

3    news reports, financial analyst reports, and other publicly available information about the

4    Company.  Plaintiff believes that substantial additional evidentiary support will exist for the

5    allegations after a reasonable opportunity for discovery.

## I.    NATURE OF THE ACTION

7          1.     This is a stockholder derivative action brought by Plaintiff on behalf of nominal

8    defendant Athira against certain of its current and former officers and directors for their breaches

9    of fiduciary duty and the federal securities laws that resulted in material damage to the Company

10    and its stockholders.

11          2.     Athira is a late clinical-stage biopharmaceutical company that focuses on

12    developing small molecules to restore neuronal health and stop neurodegeneration, caused by

13    illnesses such as Alzheimer's disease and Parkinson's disease.  The Company was formed by

14    Defendant Leen Kawas ("Kawas") and her former professors at Washington State University

15    ("WSU") to commercialize Dihexa, a drug that Kawas researched and published several articles

16    on with Athira's co-founders.

17          3.     On September 18, 2020, the Company went public to gather funds to develop its

18    lead product, ATH-1017, a drug which converts into Dihexa once in the bloodstream.[1]  In the

19    Company's offering materials, it was represented that ATH-1017 showed promise in treating such

20    neurological conditions as Alzheimer's disease and that Athira intended to utilize the funds from

21    the Initial Public Offering ("IPO") to fund further trials associated with the drug and to continue

22    research into similar drug compounds.

23

24

---

25    [1]     Athira Pharma Press Release, *Athira Pharma Announces Completion of Enrollment in*

26    *Phase 2 ACT-AD Trial Evaluating ATH-1017 for Mild-to-Moderate Alzheimer's Disease*, Oct. 22, 2021,  https://investors.athira.com/news-releases/news-release-details/athira-pharma-announces-

27    completion-enrollment-phase-2-act-ad.

28    VERIFIED STOCKHOLDER DERIVATIVE          WEISS LAW
COMPLAINT - 2                       305 Broadway, 7th Floor
                             New York, New York 10007
Case No. 2:22-cv-497              Telephone: (212) 682-3025

4.      In a subsequent secondary share offering and in quarterly and annual reports filed with the SEC, the Company represented that ATH-1017 was progressing as a drug candidate for the treatment of Alzheimer's disease and that Kawas was successfully serving as President and Chief Executive Officer ("CEO") of the Company.

5.      On June 17, 2021, Athira issued a press release announcing that it had placed Kawas on leave pending an investigation by a special committee of the Athira Board of Directors (the "Board") into allegations that Kawas had altered images in connection with her research, thus misrepresenting the entire basis for Athira's drug platform.

6.      On October 21, 2021, in a Current Report on Form 8-K filed by Athira with the SEC, the Special Committee disclosed that, after its investigation, it concluded that images used in Kawas's research were altered. Kawas resigned from her position at the Company and admitted the deception in a letter to Athira employees.

7.      Athira's stock price dropped precipitously in the wake of these shocking disclosures, leading to the filing of securities class action lawsuits against the Company, Kawas, and several of the other Individual Defendants by aggrieved investors.  As such, the Company is now subject to substantial liability and will be forced to expend substantial sums to defend itself and its officers and/or directors.

8.      The Individual Defendants owed and owe Athira and its stockholders the highest fiduciary duties.  Those duties required that they investigate and act when presented with red flags of misconduct.  They utterly failed to fulfill this important duty.  Concerns about certain images reproduced in Kawas's published research were voiced repeatedly in the years prior to the Company's IPO and secondary offering. Contributors to a highly regarded peer review site consistently pointed out the discrepancies in the images accompanying Kawas's research and warned that the images supporting her research were suspect.  These comments were sent to Kawas and the other co-founders of the Company. Jay Wright ("Wright") and Joseph Harding ("Harding"), the other co-founders of the Company, abruptly left the Company shortly before it went public. Despite these red flags and the ability to investigate any potential misconduct long

VERIFIED STOCKHOLDER DERIVATIVE
COMPLAINT - 3

Case No. 2:22-cv-497

WEISS LAW
305 Broadway, 7th Floor
New York, New York 10007
Telephone: (212) 682-3025

before the IPO, the Individual Defendants failed to investigate and take action to prevent or mitigate the damage to the Company.

9.      As a result of the Individual Defendants' breaches of fiduciary duty, Athira has sustained substantial damages and irreparable injury to its reputation.  Through this action, Plaintiff seeks to recover for the Company its damages and remediate the control weaknesses that plague Athira.

10.      Plaintiff did not make a demand prior to bringing this action because it would be futile.  The Company's directors are neither disinterested nor independent.  In the absence of this action, Athira will neither recover its damages nor properly remediate the weaknesses in its internal controls and corporate governance practices and procedures.

## II.    JURISDICTION AND VENUE

11.      This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act, 15 U.S.C. §78n(a)(1) and 15 U.S.C. §§ 78j(b), 78t(a) and 78t-1, and SEC Rule 14a-9 promulgated thereunder, 17 C.F.R. § 240.14a-9, pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction). This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

12.      This derivative action is not a collusive action to confer jurisdiction on a court of the United States that it would not otherwise have.

13.      This Court has jurisdiction over the Defendants because each Defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

14.      Venue is proper in this District where Athira maintains its principal executive offices pursuant to 28 U.S.C. § 1391 because a substantial portion of the wrongs took place in this District, Defendants transact business in this District, and Defendants' actions have had an effect in this District.

VERIFIED STOCKHOLDER DERIVATIVE
COMPLAINT - 4

Case No. 2:22-cv-497

WEISS LAW
305 Broadway, 7th Floor
New York, New York 10007
Telephone: (212) 682-3025

### III.    PARTIES

15.    Plaintiff Stephen Bushansky purchased Athira stock in the Company's IPO and has held Athira common stock continuously since that time.  As such, Plaintiff was a shareholder at the time of the transactions complained of herein.

16.    Nominal defendant Athira is a company duly incorporated under the laws of the State of Delaware.  Its principal executive offices are located at 18706 North Creek Parkway, Suite 104 Bothell, WA 98011.  Athira's common stock trades on the Nasdaq Stock Market under the ticker symbol "ATHA."

17.    Defendant Kawas is a co-founder of the Company, serving as its CEO, President, and as a director from January 2014 until resigning from the Company in October 2021.  According to the Company's proxy statement filed by Athira with the SEC on April 16, 2021 (the "2020 Proxy Statement"), Kawas beneficially owns 1,693,102 Athira shares, giving her 4.5% of the Company's total shares.  For the fiscal year ended December 31, 2020, Kawas received a base salary of $510,000.

18.    Defendant Kelly A. Romano ("Romano") is a director of the Company since December 2020, serving as Chair of the Board of Directors since January 2021.  She is also a member of the Company's Audit Committee.  According to the 2020 Proxy Statement, Romano beneficially owns 4,168 Athira shares.  For the fiscal year ending December 31, 2020, Romano received $583,900 in total compensation.

19.    Defendant Joseph Edelman ("Edelman") is a director of the Company since May 2020, and a member of its Compensation Committee and its Nominating and Corporate Governance Committee.  According to the 2020 Proxy Statement, Edelman beneficially owns 3,432,080 Athira shares, giving him 9.2% of the Company's total shares.  For the fiscal year ending December 31, 2020, Edelman received $94,956 in total compensation.  Edelman is the Founder, CEO, and Portfolio Manager of Perceptive Advisors LLC ("Perceptive"), an investment firm specializing in start-up companies in the life sciences industry, since 1999.

VERIFIED STOCKHOLDER DERIVATIVE
COMPLAINT - 5

Case No. 2:22-cv-497

WEISS LAW
305 Broadway, 7th Floor
New York, New York 10007
Telephone: (212) 682-3025

20.     Defendant John M. Fluke, Jr. ("Fluke") is a director of the Company since December 2014, and a member of its Audit Committee and its Nominating and Corporate Governance Committee.  According to the 2020 Proxy Statement, Fluke beneficially owns 156,779 Athira shares.  For the fiscal year ending December 31, 2020, Fluke received $98,929 in total compensation.

21.     Defendant James A. Johnson ("Johnson") is a director of the Company since August 2020 and Chair of its Audit Committee.  According to the 2020 Proxy Statement, Johnson beneficially owns 6,935 Athira shares.  For the fiscal year ending December 31, 2020, Johnson received $97,789 in total compensation.

22.     Defendant Barbara Kosacz ("Kosacz") is a director of the Company since March 2021 and a member of its Compensation Committee and its Nominating and Corporate Governance Committee.  According to the 2020 Proxy Statement, Kosacz beneficially owns 1,541 Athira shares.  From October 2006 to July 2020, Kosacz was a Partner at the law firm of Cooley LLP ("Cooley").

23.     Defendant Mark Litton ("Litton") is President and CEO of Athira and a director of the Company since October 2021.  Prior to being appointed President and CEO, Litton served as Athira's COO since July 2019.  According to the 2020 Proxy Statement, Litton beneficially owns 13,126 Athira shares.[2]

24.     Defendants Kawas, Romano, Edelman, Fluke, Johnson, Kosacz, and Litton are collectively referred to herein as the "Individual Defendants."

**IV.    INDIVIDUAL DEFENDANTS' DUTIES**

25.     By virtue of their positions as officers and directors of the Company, and because of their ability to control its business and affairs, the Individual Defendants owed and owe the Company and its shareholders fiduciary obligations of loyalty, good faith, due care and candor.

---

[2]     The shares were issued jointly to Defendant Litton and his wife. An additional 19,689 Athira shares were issued to a trust for the benefit of Litton's children.

VERIFIED STOCKHOLDER DERIVATIVE
COMPLAINT - 6

Case No. 2:22-cv-497

WEISS LAW
305 Broadway, 7th Floor
New York, New York 10007
Telephone: (212) 682-3025

The Individual Defendants were mandated to use their utmost ability to control and manage Athira in a manner that is fair, honest, and equitable. The Individual Defendants were required to act in furtherance of the best interests of Athira and its shareholders to benefit all shareholders equally and not in furtherance of their personal interest or benefit. Each director and officer of the Company owes to Athira and its shareholders a fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, and the highest obligations of fair dealing.

26.     Each Individual Defendant, by virtue of his or her position as a director and/or officer, owed to the Company and its shareholders the highest fiduciary duties of loyalty, good faith, and to exercise due care and diligence in the management and administration of the Company's affairs, as well as in the use and preservation of its property and assets. The conduct of the Individual Defendants complained of herein involves a knowing and culpable violation of their obligations as directors and/or officers of the Company, the absence of good faith on their part and/or disregard for their duties to the Company and its shareholders that the Individual Defendants were aware or should have been aware that their failure to fulfill their fiduciary duties would pose a risk of serious injury to the Company.

27.     The Individual Defendants, because of their positions of control and authority as directors and/or officers of Athira, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein. Because of their advisory, executive, managerial, and directorial positions with Athira, each of the Individual Defendants knew material, non-public information pertinent to the Company.

28.     As senior executive officers and directors of a publicly traded company whose common stock was registered with the SEC and traded on Nasdaq, the Individual Defendants also owed a duty to ensure the dissemination of accurate, complete and truthful information concerning Athira's financial condition, performance, growth, operations, financial statements, business, products, management, earnings, internal controls, and business prospects. In addition, the Individual Defendants had a duty to cause the Company to disclose in its regulatory filings with

VERIFIED STOCKHOLDER DERIVATIVE
COMPLAINT - 7

Case No. 2:22-cv-497

WEISS LAW
305 Broadway, 7th Floor
New York, New York 10007
Telephone: (212) 682-3025

the SEC all material facts described so that the market price of the Company's shares would be based upon accurate information.

29.     In order to meet these duties, the Individual Defendants were required to exercise reasonable control and supervision over Athira's management, policies, and internal controls.

30.     Each of the Individual Defendants also owed to the Company and its shareholders the duty of loyalty requiring that they prioritize Athira's interest and that of its shareholders over their own interests and refrain from using their position, influence, or insider knowledge of the affairs of the Company to gain personal advantage.

31.     At all times relevant hereto, the Individual Defendants were the agents of each other and Athira and were always acting within the course and scope of such agency.

32.     The Individual Defendants were and are also subject to particularized duties pursuant to specific policies in effect at Athira.

**A.     Additional Duties Under Athira's Code Of Business Conduct And Ethics**

33.     Athira maintains a Code of Business Conduct and Ethics (the "Code of Conduct") applicable to all directors, officers, and employees (who, unless specified otherwise, are referred to as "employees").  Employees are required to read the policies provided in the Code and certify that they understand and comply with them.

34.     The Code of Conduct promotes "compliance with applicable laws, rules and regulations including, without limitation, full, fair, accurate, timely and understandable disclosure in reports and documents the Company files with, or submit to, the U.S. Securities and Exchange Commission and in other public communications."  The Code of Conduct specifically provides that "[e]mployees are expected to read the policies set forth in this Code and ensure that they understand and comply with them."

35.     The Code of Conduct requires that its employees disseminate "accurate and complete reporting of financial information within their respective areas and for the timely notification to senior management of financial and non-financial information that may be material

VERIFIED STOCKHOLDER DERIVATIVE
COMPLAINT - 8

Case No. 2:22-cv-497

WEISS LAW
305 Broadway, 7th Floor
New York, New York 10007
Telephone: (212) 682-3025

to the Company to ensure full, fair, accurate, timely and understandable disclosure in reports and documents that the Company files with government agencies or releases to the general public."

36.     Notably, the Code of Conduct mandated that each "employee involved in the Company's disclosure process must familiarize themselves with the disclosure requirements applicable to the Company, and must not knowingly misrepresent, or cause others to misrepresent, facts about the Company to others."

### B.    Additional Duties Under The Audit Committee Charter

37.     The Audit Committee Charter places additional duties on the members of the Audit Committee,[3] including requirements that its members assist the Board in its oversight of:

- the accounting and financial reporting processes and internal controls of the Company; the audit and integrity of the Company's financial statements;

- the Company's compliance with applicable law (including U.S. federal securities laws and other legal and regulatory requirements);

- the qualifications, independence and performance of the Company's independent auditors; and

- the implementation and performance of the Company's internal audit function, if applicable.

38.     The Audit Committee is responsible for "preparing the report required by the Securities and Exchange Commission (the "SEC") rules to be included in the Company's proxy statement for the annual meeting of stockholders, and for performing other duties and responsibilities as are enumerated in or consistent with this charter."

39.     Further, with respect to "Enterprise Risk Management," the Audit Committee must, in relevant part: "review and discuss with management, including the Company's internal audit function, if applicable, and the Company's independent auditor guidelines and policies to identify, monitor, and address enterprise risks." The Audit Committee is also required to "review with the full Board any issues that arise regarding: (a) the quality or integrity of the Company's financial

---

[3]     Athira Pharma, Audit Committee Charter, https://investors.athira.com/static-files/abee8883-ab7b-4bcd-8db1-da434fa13ae9 (last visited March 15, 2022).

VERIFIED STOCKHOLDER DERIVATIVE
COMPLAINT - 9

Case No. 2:22-cv-497

WEISS LAW
305 Broadway, 7th Floor
New York, New York 10007
Telephone: (212) 682-3025

statements; (b) the Company's compliance with legal or regulatory requirements; (c) the performance and independence of the Company's independent auditor; and (d) the performance of the internal audit function, if applicable."

**C.    Additional Duties Under The Nominating And Corporate Governance Charter**

40.    The Nominating and Corporate Governance Charter places additional duties on the members of the Nominating and Corporate Governance Committee,[4] including requirements that its members:

- develop and recommend to the Board corporate governance guidelines and annually review the corporate governance guidelines and their application, and make recommendations, if any, to the Board for changes to the corporate governance guidelines; and

- oversee the Company's corporate governance practices, including reviewing and recommending to the Board for approval any changes to the Company's corporate governance framework.

**V.    SUBSTANTIVE ALLEGATIONS**

**A.    Athira Is Founded To Commercialize Dihexa, A Drug Researched By Defendant Kawas**

41.    Athira is a late clinical-stage biopharmaceutical company focused on developing small molecules to restore neuronal health and stop neurodegeneration.  The Company's pipeline is built from its proprietary drug discovery platform, or ATH platform, and consists of a series of small molecules that are designed to target either the central nervous system by crossing the blood brain or the peripheral nervous system.  The primary focus of the Company's lead pharmaceutical candidate, ATH-1017, is the treatment of Alzheimer's disease.

---

[4]    Athira Pharma, Nominating and Corporate Governance Charter, https://investors.athira.com/static-files/59032e56-d609-4717-919c-81d27c8fac20 (last visited March 15, 2022).

VERIFIED STOCKHOLDER DERIVATIVE
COMPLAINT - 10

Case No. 2:22-cv-497

WEISS LAW
305 Broadway, 7th Floor
New York, New York 10007
Telephone: (212) 682-3025

42.     Athira, originally known as M3 Biotechnology[5], was founded by Kawas along with two WSU professors, Wright and Harding,[6] to commercialize Dihexa, a drug that showed some early potential to improve cognition in patients who have Alzheimer's and other diseases. Shortly after Kawas published her dissertation on the development of small molecules for drug therapies as a graduate student at WSU, Athira entered into an exclusive licensing agreement with WSU to commercialize, develop, and sell Dihexa and any related drugs.

43.     After working for four years to prove the efficacy of Dihexa, Athira disclosed that the drug did not have the appropriate characteristics needed to be a "successful therapeutic product."[7] As a result, Athira instead commenced a campaign to develop a similar drug therapy.[8] The Company's current lead candidate, ATH-1017, a small molecule which converts into Dihexa once in the bloodstream, is the subject of a phase 2/3 clinical study.

44.     At the time of its IPO, the confidence expressed by the Company in ATH-1017 was largely based on Kawas's research. Indeed, at that time, the drug was administered to fewer than a dozen Alzheimer's disease patients and no cognitive tests were performed to assess the efficacy of the drug.

**B.     Athira Goes Public To Fund The Development Of ATH-1017**

45.     On August 26, 2020, Athira filed a Registration Statement with the SEC for its IPO (the "IPO Registration Statement"), which was signed by Defendants Kawas, Edelman, Fluke, and Johnson. On September 18, 2020, Athira filed a Prospectus for the IPO (the "IPO Prospectus") with the SEC, which was signed by Defendants Kawas, Edelman, Fluke, and Johnson.[9] In the

---

[5]     Athira was founded under the name M3 Biotechnology, Inc. ("M3 Biotechnology") in 2011. The Company changed its name to Athira in 2019.

[6]     According to the 2020 Proxy Statement, Harding left the Company in August 2020. Wright also left the Company sometime before the IPO.

[7]     Market Screener, Oct. 21, 2021, https://www.marketscreener.com/quote/stock/ATHIRA-PHARMA-INC-112589423/news/ATHIRA-PHARMA-INC-Other-Events-Financial-Statements-and-Exhibits-form-8-K-36747026/.

[8]     *Id.*

[9]     The IPO Prospectus and the IPO Registration Statement are collectively referred to herein

VERIFIED STOCKHOLDER DERIVATIVE
COMPLAINT - 11
Case No. 2:22-cv-497

WEISS LAW
305 Broadway, 7th Floor
New York, New York 10007
Telephone: (212) 682-3025

IPO, the Company sold approximately 13,397,712 shares of common stock at a price of $17.00 per share. Athira received proceeds of approximately $208.5 million from the IPO, net of underwriting discounts and commissions.

46.    The proceeds from the IPO were to fund clinical trials for its lead development candidate, ATH-1017, and similar drug compounds. ATH-1017 was moving into a pivotal phase 2/3 clinical trial for treatment of Alzheimer's disease after purportedly exhibiting early signs of promoting regeneration, inhibiting inflammation, and enhancing cognitive processing.[10]

**C.    The Individual Defendants Knew The Material Risks Regarding Athira's Core Operations**

47.    The IPO Materials discussed the risk that the Company's therapeutic approach was novel and under development:

> ***Our approach to targeting brain growth factors through the use of small molecules is based on a novel therapeutic approach, which exposes us to unforeseen risks.[11]*** We have discovered and are developing a platform of small molecule product candidates from which we have selected our lead product candidate, ATH-1017, which is under development to treat AD and other CNS disorders. Our product candidates target a brain growth factor which is expected to increase synaptic density, recovery in the network and information transmission in the brain, which we believe could ultimately result in improvement in cognition and clinical symptoms. The therapeutic promise of brain growth factors in neurodegenerative disorders had been hampered in earlier therapies by the lack of efficient and non-invasive delivery to the brain. Our small molecule product candidates are designed to penetrate the blood brain barrier and enhance the activity of a brain growth factor, but we cannot be certain that our clinical trials will provide sufficient evidence that our design approach results in the intended therapeutic effect. [Emphasis in original].

48.    The IPO Materials also disclosed the Company is subject to material risks from misconduct of the Company's employees in relation to clinical trials:

> We are exposed to the risk that our employees, independent contractors, consultants . . . may engage in misconduct or other improper activities. . . . Misconduct by these parties could also involve the improper use of information obtained in the course of clinical trials, which could result in regulatory sanctions and serious harm

---

as the "IPO Materials."

[10]    IPO Prospectus, pp. 121, 135.

[11]    All emphasis herein is added unless otherwise stated.

VERIFIED STOCKHOLDER DERIVATIVE
COMPLAINT - 12

Case No. 2:22-cv-497

WEISS LAW
305 Broadway, 7th Floor
New York, New York 10007
Telephone: (212) 682-3025

to our reputation.

49.    In a Quarterly Report on Form 10-Q filed with the SEC on November 12, 2020 (the

"3Q20 10-Q"), signed by Defendant Kawas, Athira again disclosed the material risks posed to the

Company by the misconduct of employees in relation to clinical trials:

> Misconduct by these parties could also involve the improper use of information
> obtained in the course of clinical trials, which could result in regulatory sanctions
> and serious harm to our reputation.
>
> ***
>
> If any such actions are instituted against us, and we are not successful in defending
> ourselves or asserting our rights, those actions could have a significant impact on
> our business, including the imposition of significant penalties, including civil,
> criminal and administrative penalties, damages, fines, disgorgement,
> imprisonment, exclusion from participation in government funded healthcare
> programs, such as Medicare and Medicaid, integrity oversight and reporting
> obligations, contractual damages, reputational harm, diminished profits and future
> earnings and the curtailment or restructuring of our operations.

50.    On January 6, 2021, Athira filed its Registration Statement on Form S-1 with the

SEC for its Secondary Public Offering ("SPO") which was subsequently amended and declared

effective by the SEC on January 21, 2021.  On January 19, 2021, Athira issued a Prospectus in

conjunction with the Second Public Offering pursuant to Rule 424(b)(4).[12]  The SPO Materials

were signed by Defendants Kawas, Edelman, Fluke, Johnson, and Ramano.  In the Second Public

Offering, Athira sold 4,000,000 Company shares at $22.50 per share for gross proceeds of more

than $90 million.  In the SPO Materials, the Company reiterated the risks to the Company resulting

from its novel therapeutic approach:

> ***Our approach to targeting brain growth factors through the use of small
> molecules is based on a novel therapeutic approach, which exposes us to
> unforeseen risks. We have limited data from our Phase 1a and 1b clinical trials,
> including only 11 patients with mild to moderate AD, and we cannot be certain
> that future trials will yield similar data. In addition, our use of EEG methods to
> gather data requires placement of electrodes on a subject's scalp and, if not
> properly placed, we may be unable to obtain the data sought or data obtained may
> be unreliable.***
>
> We have discovered and are developing a platform of small molecule product
> candidates from which we have selected our lead product candidate, ATH-1017,
> which is under development to treat Alzheimer's disease, or AD, and other central

---

[12]    These documents are collectively referred to as the "SPO Materials."

VERIFIED STOCKHOLDER DERIVATIVE
COMPLAINT - 13

Case No. 2:22-cv-497

WEISS LAW
305 Broadway, 7th Floor
New York, New York 10007
Telephone: (212) 682-3025

nervous system, or CNS, disorders. Our product candidates target a brain growth factor which is expected to increase synaptic density, recovery in the network and information transmission in the brain, which we believe could ultimately result in improvement in cognition and clinical symptoms. The therapeutic promise of brain growth factors in neurodegenerative disorders had been hampered in earlier therapies by the lack of efficient and non-invasive delivery to the brain. Our small molecule product candidates are designed to penetrate the blood brain barrier and enhance the activity of a brain growth factor, but we cannot be certain that our clinical trials will provide sufficient evidence that our design approach results in the intended therapeutic effect [Emphasis in original].

51.    Further, in the SPO Materials, the Company acknowledged the risks regarding employee misconduct in relation to clinical trials and research:

We are exposed to the risk that our employees, independent contractors, consultants . . . may engage in misconduct or other improper activities. . . . Misconduct by these parties could also involve the improper use of information obtained in the course of clinical trials, which could result in regulatory sanctions and serious harm to our reputation.

52.    In an Annual Report on Form 10-K filed with the SEC on March 25, 2021 (the "2020 10-K"),[13] the Company restated the risks from the IPO and SPO Materials regarding the Company's novel and undeveloped therapeutic approach:

Our approach to targeting brain growth factors through the use of small molecules is based on a novel therapeutic approach, which exposes us to unforeseen risks. We have limited data from our Phase 1a and 1b clinical trials, including only 11 patients with mild to moderate Alzheimer's disease, and we cannot be certain that future trials will yield similar data. In addition, our use of electroencephalogram methods to gather data requires placement of electrodes on a subject's scalp and, if not properly placed, we may be unable to obtain the data sought or data obtained may be unreliable.

***

Data from our Phase 1a and 1b clinical trials, while promising, were obtained from a relatively small number of subjects and a single clinical site and we cannot be certain that future trials involving a larger number of subjects and clinical sites will yield similar data. Additionally, in our Phase 1a and 1b clinical trials, we used electroencephalogram, or EEG, methods to gather data that we believe provide valuable insight into cognitive processing of the subjects evaluated. These EEG methods require the placement of electrodes on a subject's scalp and, if these electrodes are not properly placed, we may be unable to obtain the data sought or

---

[13]    The 2020 10-K was signed by Defendants Kawas, Edelman, Fluke, Johnson, Kosacz, and Romano. Pursuant to the Sarbanes-Oxley Act of 2002 ("SOX"), Defendant Kawas certified that the 2020 10-K fully complied with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934 and that the information contained in the 2020 10-K fairly presented, in all material respects, the financial condition and results of operations of the Company.

VERIFIED STOCKHOLDER DERIVATIVE
COMPLAINT - 14

Case No. 2:22-cv-497

WEISS LAW
305 Broadway, 7th Floor
New York, New York 10007
Telephone: (212) 682-3025

the data obtained may be compromised and unreliable. In our Phase 1a and 1b clinical trials, data from certain subjects were not obtained due to problems encountered with the placement of the EEG electrodes and other technical issues, such as subject movement. While we believe the lack of data from these subjects did not impact the reliability or interpretation of the remaining data from these trials, we may in the future face similar issues with EEG methods, which could compromise future clinical trial results. We may ultimately discover that ATH-1017, or any of our other small molecules, do not possess certain properties required for therapeutic effectiveness. We have no long-term evidence regarding the efficacy, safety and tolerability of ATH-1017 or other small molecules in our product platform.

53.     The 2020 10-K reiterated the risks from potential misconduct by employees in relation to clinical trials and research:

We are exposed to the risk that our employees, independent contractors, consultants . . . may engage in misconduct or other improper activities. . . .  Misconduct by these parties could also involve the improper use of information obtained in the course of clinical trials, which could result in regulatory sanctions and serious harm to our reputation.

54.     In a Quarterly Report on Form 10-Q filed with the SEC on May 13, 2021 (the "1Q21 10-Q") the Company again disclosed the risks related to Athira's novel therapy and the potential misconduct by employees in relation to clinical trials and research.

**D.     Athira And Certain Individual Defendants Make Repeated Representations About The Potential Of ATH-1017 And Kawas's Leadership**

55.     In the IPO Materials, the Company described the results of the early trials for ATH-1017:

We are developing our lead product candidate, ATH-1017, for the treatment of neurodegenerative disorders, with an initial focus on AD[14]. ATH-1017 is designed to improve neuronal health and promote regeneration, thereby improving symptoms in cognitively impaired subjects. As we continue to develop ATH-1017, we will plan to assess additional functional and behavioral benefits. In our Phase 1a and Phase 1b clinical trials, ATH-1017:

- was well tolerated with no serious adverse events across 88 subjects, including 11 subjects with mild-to-moderate AD;

- led to improvements in brain network activity that indicated potentially positive effects on brain function; and

---

[14]     The Company sometimes refers to Alzheimer's disease as "AD" in its public filings.

VERIFIED STOCKHOLDER DERIVATIVE
COMPLAINT - 15

Case No. 2:22-cv-497

WEISS LAW
305 Broadway, 7th Floor
New York, New York 10007
Telephone: (212) 682-3025

- demonstrated significantly improved brain activity in the AD subjects with multiple dosing as measured by P300 latency, a functional measure that is highly correlated with cognition.

56.     In the IPO Materials, Kawas is described as ***"essential in creating our innovative translational development strategy."***  The IPO Materials also touted Kawas's qualifications:

> ***Dr. Kawas earned a Ph.D. in molecular pharmacology from Washington State University in 2011*** and a pharmacy degree from the University of Jordan in 2008. ***We believe Dr. Kawas's scientific and professional training***, her instrumental role in building Athira Pharma, Inc., and her extensive understanding of our business, operations and strategy qualify her to serve on our board of directors.

57.     It was represented in the IPO Materials that Athira had licensed certain patents from WSU:

> Under this agreement, WSU granted us an exclusive license to make, use, sell, and offer for sale licensed products and licensed processes that embody the licensed patents (including WSU's rights to a patent jointly owned with Pacific Northwest Biotechnology, Inc.) and that form the underlying technology of the drug therapies we are developing."
>
> ***
>
> To keep in good standing, the agreement requires the Company to meet certain development milestones and pay an annual maintenance fee.  All contractual requirements have been met as of December 31, 2019.

58.     In the 3Q20 10-Q, the Company disclosed its progress in developing ATH-1017:

> In September 2020, we initiated patient dosing in LIFT-AD, our Phase 2/3 clinical trial for ATH-1017 that may provide pivotal data in support of registration, for the treatment of mild-to-moderate Alzheimer's disease, or AD, with topline results expected by the end of 2022. By the end of 2020, we plan to initiate dosing in ACT-AD, a P300 Phase 2 clinical trial, in mild-to-moderate AD to better understand the overall effects of ATH-1017 on working memory processing speed and cognitive measures, with topline results expected by early 2022.
>
> ***
>
> Beyond AD, we believe that ATH-1017 can ultimately address the broader dementia patient population. In an effort to begin this expansion, we are planning to conduct a Phase 2 clinical trial for Parkinson's disease dementia, or PDD, to commence by the end of 2021.
>
> ***
>
> We have discovered and are developing a platform of small molecule product candidates from which we have selected our lead product candidate, ATH-1017, which is under development to treat Alzheimer's disease, or AD, and other central nervous system, or CNS, disorders. Our product candidates target a brain growth factor which is expected to increase synaptic density, recovery in the network and information transmission in the brain, which we believe could ultimately result in

improvement in cognition and clinical symptoms. The therapeutic promise of brain growth factors in neurodegenerative disorders had been hampered in earlier therapies by the lack of efficient and non-invasive delivery to the brain. Our small molecule product candidates are designed to penetrate the blood brain barrier and enhance the activity of a brain growth factor, but we cannot be certain that our clinical trials will provide sufficient evidence that our design approach results in the intended therapeutic effect. ***Based on the results of our nonclinical and clinical studies to date, we believe ATH-1017 has the potential to rapidly improve cognition and durably restore the lives of patients suffering from AD.***

59.    In the SPO Materials, the Company repeated the representations made in the IPO Materials regarding ATH-1017 and its research efforts:

We are developing our lead product candidate, ATH-1017, for the treatment of neurodegenerative disorders, with an initial focus on AD. ATH-1017 is designed to improve neuronal health and promote regeneration, thereby improving symptoms in cognitively impaired subjects. As we continue to develop ATH-1017, we will plan to assess additional functional and behavioral benefits. In our Phase 1a and Phase 1b clinical trials, ATH-1017:

- was well tolerated with no serious adverse events across 88 subjects recruited in the study, including 11 subjects with mild-to-moderate AD, who were assigned to treatment and control groups;

- led to improvements in brain network activity that indicated potentially positive effects on brain function; and

- demonstrated significant improvement in P300 latency, a functional measure that is highly correlated with cognition, in the AD subjects with multiple dosing; however, we have not yet established a connection between these P300 latency results and improved cognition.

60.    The SPO Materials touted the leadership qualities and experience that Defendant Kawas brought to Athira:

***Dr. Kawas earned a Ph.D. in molecular pharmacology from Washington State University in 2011*** and a pharmacy degree from the University of Jordan in 2008. ***We believe Dr. Kawas's scientific and professional training***, her instrumental role in building Athira Pharma, Inc., and her extensive understanding of our business, operations and strategy qualify her to serve on our board of directors.

61.    In the 2020 10-K, the Company touted Kawas's qualifications stating that "[*w*]*e believe Dr. Kawas's scientific and professional training*, her instrumental role in building Athira Pharma, Inc., and her extensive understanding of our business, operations and strategy qualify her to serve on our board of directors."

VERIFIED STOCKHOLDER DERIVATIVE
COMPLAINT - 17

Case No. 2:22-cv-497

WEISS LAW
305 Broadway, 7th Floor
New York, New York 10007
Telephone: (212) 682-3025

62.    The 2020 10-K also discussed the Company's licensing arrangement with WSU and stressed that the Company had met all development goals for 2020 associated with the licensing agreement.

63.    In the 1Q21 10-Q, the Company made false representations regarding the potential benefits of the ATH drug platform and its leading drug candidate:

> Our approach is designed to augment neuronal growth factor signaling through HGF/MET, a naturally occurring regenerative system. We believe enhancing HGF/MET signaling has the potential to protect existing neurons from damage, reduce inflammation, promote regeneration, and positively modulate brain activity. We anticipate that all of these characteristics may improve neuronal health and translate into clinical benefits. Our pipeline is built from our proprietary drug discovery platform, or ATH platform, and consists of a series of small molecules that are designed to target either (1) the central nervous system, or CNS, by crossing the blood brain barrier, or BBB, or (2) the peripheral nervous system.

> ***

> [Our] results suggest that ATH-1017 has the potential to substantially improve synaptic connectivity and brain function in AD subjects.

64.    The 1Q21 10-Q also made the same representations as the prior quarterly and annual reports as to the leadership qualities and experience that Kawas brings to the Company.

65.    The 1Q21 10-Q confirmed that Athira had met all of the development goals for quarter in accordance with the WSU licensing agreement.

66.    In an Annual Report on Form 10-K filed with the SEC on March 28, 2022 (the "2021 10-K"),[15] reiterated the false representations regarding the potential benefits of the ATH drug platform and ATH-1017:

> Our approach is designed to augment neuronal growth factor signaling through the hepatocyte growth factor/MET, or HGF/MET, a naturally occurring, repair and regenerative system. We believe enhancing HGF/MET signaling has the potential

---

[15]    The 2021 10-K was signed by Defendants Edelman, Fluke, Johnson, Kosacz, Litton, and Romano and two recent additions to the Board, Michael Panzara and Grant Pickering. Pursuant to the Sarbanes-Oxley Act of 2002 ("SOX"), Defendant Litton certified that the 2021 10-K fully complied with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934 and that the information contained in the 2021 10-K fairly presented, in all material respects, the financial condition and results of operations of the Company.

VERIFIED STOCKHOLDER DERIVATIVE
COMPLAINT - 18

Case No. 2:22-cv-497

WEISS LAW
305 Broadway, 7th Floor
New York, New York 10007
Telephone: (212) 682-3025

to protect existing neurons from damage, reduce inflammation, promote regeneration, and benefit brain physiology. We anticipate that all of these characteristics may improve neuronal health and translate into clinical benefits. Our pipeline is built from our proprietary drug discovery platform, or ATH platform, and consists of a series of small molecules that are designed to target either (1) the central nervous system, or CNS, by crossing the blood brain barrier, or BBB, or (2) the peripheral nervous system.

***

These results suggest that [ATH-1017] has the potential to substantially improve synaptic connectivity and brain function in AD subjects.

### E.    Athira Announces Defendant Kawas's Suspension

67.    On June 17, 2021, the Company announced[16] that it had placed Defendant Kawas on temporary leave "pending a review of actions stemming from doctoral research Dr. Kawas conducted while at Washington State University." According to the Company's press release, during the review, Kawas would remain on the Board, which "formed an independent special committee to undertake this review." The Special Committee was comprised of Defendants Romano, Johnson, and Kosacz.[17] The Company also announced that Defendant Litton would be assuming "day-to-day leadership responsibilities for the Company, effective immediately."

68.    Tadataka "Tachi" Yamada ("Yamada"), then-Chair of the Board of Athira, stated:

Athira is **committed to the integrity of scientific research** in its mission to restore neuronal health for those suffering from neurological diseases, so that patients can regain their memories, lives, and family relationships. ATH-1017 was discovered, developed, and patented by Athira **on the basis of novel data generated within the Company.** The Company is confident in the therapeutic potential of ATH-1017 for treating dementia.

---

[16]    Athira Pharma Press Release, , *Athira Pharma Chief Operating Officer, Mark Litton, Assumes Day-to-Day Leadership Responsibilities of Company,* June 17, 2021,https://investors.athira.com/news-releases/news-release-details/athira-pharma-chief-operating-officer-mark-litton-assumes-day; John Cook, *Athira Pharma CEO Leen Kawas Placed on Leave, Shares Sink More than 30%, GeekWire,* June 17, 2021, https://www.geekwire.com/2021/athira-pharma-ceo-placed-leave-shares-plummet/.

[17]    Taylor Soper, *Ex-Athira Pharma CEO Leen Kawas Resigns and Leaves Board after Image Manipulation Investigation***,** *GeekWire,* Oct. 21, 2021, https://www.geekwire.com/2021/ex-athira-pharma-ceo-leen-kawas-resigns-leaves-board-image manipulation-investigation.

VERIFIED STOCKHOLDER DERIVATIVE
COMPLAINT - 19

Case No. 2:22-cv-497

WEISS LAW
305 Broadway, 7th Floor
New York, New York 10007
Telephone: (212) 682-3025

69.    On that day, *STAT* reported[18] that WSU was investigating claims that Kawas "published several papers containing altered images while she was a graduate student." The papers "are foundational to Athira's efforts to treat Alzheimer's" as they "established that a particular molecule affects the activity of HGF."[19]

70.    The *STAT* article reported that Kawas's research is "cited in a patent licensed by Athira. Kawas, who co-founded Athira, is described as a co-inventor in the patent."

71.    The *STAT* article also noted that "[i]mages of Western blots, used to determine the presence of specific proteins in biological samples, look as though they've been altered from their original state." And according to experts cited in the article, "If the Western blots are inaccurate, then the whole study must be redone."

72.    The *STAT* article stated that:

> In all four papers led by Kawas, Western blots are surrounded by faint lines. "These suggest that some parts of the photo might have been derived from elsewhere, and that this was not the blot as it was originally obtained," said Elisabeth Bik, a microbiologist and science consultant who focuses on image authenticity. In eight different images in four different papers, the same Western blot bands seemingly appear repeatedly. "That's highly unlikely that came about accidentally," said Paul Brookes, professor at the University of Rochester Medical Center, who has also worked on exposing scientific errors. Some researchers previously found to have edited images said they did so because the originals were too unattractive. "It's impossible to assign intent," Brookes said. "***But generally, you ask what are the chances this could have happened by accident?" The chances, he added, are "slim."*** In two instances, the same image seems to be used to show the results of two different experiments published in different papers. And in a 2011 paper in the Journal of Pharmacology and Experimental Therapeutics, the same series of Western blot bands is seemingly used twice to represent two different proteins, and is stretched out for one of the proteins. "That's even more potentially problematic," said Bik. Such an inaccuracy is potentially reason to retract the paper, she said. "That's very misleading."

***

---

18    Olivia Goldhill, *Athira Pharma CEO Placed on Leave Amide Allegations of Altered Images in her Research Papers, STAT+, June 17, 2021,* https://www.statnews.com/2021/06/17/athira-pharma-ceo-placed-on-leave-amid-allegations-of-altered-images-in-research-papers/.

19    HGF stands for hepatocyte growth factor. HGF is a protein which affects cell development and movement. *See* Prospec, *HGF Human*, https://www.prospecbio.com-hgf_human (last visited March 15, 2022).

VERIFIED STOCKHOLDER DERIVATIVE
COMPLAINT - 20

Case No. 2:22-cv-497

WEISS LAW
305 Broadway, 7th Floor
New York, New York 10007
Telephone: (212) 682-3025

*The allegedly altered images call into question the validity of the entire studies, said several Alzheimer's experts. If the Western blots are inaccurate, then the whole study must be redone, said Perry.[20] The images are an important method of determining how the compound interacts with HGF. "If there is a question about key data, all must be questioned," he said.*

73.    In a note to investors, Paul Matteis ("Matteis"), a Stifel analyst, expressed shock regarding the allegations of misconduct by Kawas stating that " [w]e don't really know how to process this development."  Matteis also discussed the impact of the allegations on the Company's value:

> The scientific hypothesis behind Athira came out of the work [that] Dr. Kawas did in graduate school so there is risk here that whatever comes out of this investigation could have clear negative implications for how we/investors view the asset, and/or management credibility.

74.    On June 18, 2021, following the report of Kawas's suspension and the special committee investigation, Athira shares fell $7.09, or approximately 39%, to close at $11.15 per share.

75.    On September 1, 2021, the editors of The Journal of Pharmacology and Experimental Therapeutics, "expressed concern" about "possible image alteration" after "reviewing information from several sources" about the repeated manipulation of images by Kawas in articles she published.  On that date, the editors noted that they had "shared these concerns with the corresponding author and their institution, Washington State University, and will await the results of an inquiry to determine appropriate next steps."

### F.    Athira Reports The Results Of The Special Committee's Investigation And Kawas's Resignation From The Company

76.    In a Current Report on Form 8-K filed with the SEC on October 21, 2021, Athira disclosed the results of the special committee investigation into "allegations raised regarding doctoral research by Dr. Kawas" announced in June:

**Special Committee Findings**

The special committee, assisted by independent legal counsel, conducted a thorough investigation of allegations raised regarding doctoral research by

---

[20]    George Perry is a neuroscientist at the University of Texas at San Antonio.

WEISS LAW
305 Broadway, 7th Floor
New York, New York 10007
Telephone: (212) 682-3025

Dr. Leen Kawas, Athira's chief executive officer and one of its founders, conducted while at WSU, as well as related matters.

The special committee's primary finding was that **Dr. Kawas altered images** in her 2011 doctoral dissertation and at least four research papers that she co-authored while a graduate student at WSU, and published from 2011 to 2014.

***Among its other findings, the special committee found that Athira's issued U.S. patent claiming ATH-1017, Athira's lead development candidate, does not cite any paper which the committee found to contain an image altered by Dr. Kawas.*** Though the committee found that Athira has cited challenged research papers relating to dihexa to support the activity of ATH-1017, a prodrug of dihexa, in certain other communications and applications, it also found that Athira has conducted alternative preclinical studies to support ATH-1017's activity and recently submitted those studies for peer review publication.

Among its other findings, the special committee also found that WSU's dihexa patent incorporates images from papers co-authored by Dr. Kawas, certain of which were altered by Dr. Kawas. The committee understands that WSU is undertaking its own investigation into claims of potential misconduct involving research conducted by Dr. Kawas during her doctoral studies at WSU. The committee understands that this review is ongoing, and Athira cannot predict when WSU's investigation will be completed or what conclusions WSU will reach.

77.    In a press release attached to the Form 8-K, the Company officially released the results of the investigation and announced the appointment of Litton to replace Kawas as a director and CEO of the Company:[21]

Dr. Litton succeeds Dr. Leen Kawas, who has resigned from her position as the Company's President and Chief Executive Officer and as a member of the Company's Board of Directors. Dr. Litton will also join the Company's Board of Directors.

\*\*\*

The special committee's primary finding was that Dr. Kawas altered images in her 2011 doctoral dissertation and in at least four research papers that she co-authored while a graduate student at WSU, published from 2011 to 2014.

78.    The Form 8-K disclosed the terms of Kawas's separation agreement, which was also attached to the Form 8-K:

In connection with the cessation of Dr. Kawas's employment and pursuant to the terms of her separation agreement dated October 18, 2021 (the "Separation Agreement"), Dr. Kawas is eligible to receive (i) a lump sum equivalent to one year

---

[21]    Athira Pharma Press Release, *Athira Pharma Announces Leadership Changes; Mark Litton, Ph.D., M.B.A. Named President and Chief Executive Officer; Rachel Lenington, M.B.A. Named Chief Operating Officer,* Oct. 21, 2021, https://investors.athira.com/news-releases/news-release-details/athira-pharma-announces-leadership-changes-mark-litton-phd-mba.

VERIFIED STOCKHOLDER DERIVATIVE
COMPLAINT - 22

Case No. 2:22-cv-497

WEISS LAW
305 Broadway, 7th Floor
New York, New York 10007
Telephone: (212) 682-3025

of her base salary, for a total of $510,000, less applicable withholdings; and (ii) reimbursement of continued health coverage for herself and her dependents under COBRA for a period of up to 18 months, unless her and her dependents become covered under similar plans or are no longer eligible for continuation coverage under COBRA. In addition, under the Separation Agreement, Dr. Kawas will retain previously granted options, vested as of the effective date of the Separation Agreement, for 363,535 shares of Athira's common stock. Dr. Kawas's receipt of the foregoing severance benefits is subject to her continued compliance with the terms of her employment agreement dated September 8, 2020, confidential information, invention assignment, and arbitration agreement and Separation Agreement, which agreement includes a release of claims and certain customary confidentiality, non-solicitation, non-competition and non-disparagement provisions.

79.     Subsequently, Kawas announced her resignation from the Company. Kawas penned a letter[22] to Athira employees admitting to altering the images in her research:

I regret that mistakes I made as a graduate student many years ago caused any distraction to Athira today. At the time, I was navigating an unfamiliar environment and did not fully comprehend the significance of my decision to enhance the images I used in my research.

80.     On or about November 2021, after Athira admitted that Kawas's dissertation contained altered images, the dissertation was removed from the WSU archive.

**G.     The Special Committee Erroneously Concluded That Athira's ATH-1017 Patents Do Not Cite Dr. Kawas's Research**

81.     Despite the Special Committee's representations that Athira's patents relating to ATH-1017 do "not cite any paper which the committee found to contain an image altered by Dr. Kawas," Athira repeatedly utilized Kawas's research as a basis for its patent and grant applications.

82.     For example, in December 2013, WSU, Kawas and the other Athira founders obtained Patent No. 8,598,118 for "*Hepatocyte Growth Factor Mimics As Therapeutic Agents.*" The patent involved the underlying premise behind ATH-1017, utilizing small molecules to inhibit the HGF/Met system and improve neurological condition.[23]   The patent repeatedly references Kawas's manipulated research papers published in November 2011 and March 2012.

---

[22]     Rick Morgan, *Former Athira CEO Addresses Controversy and Departure in Letter to Employees, Puget Business Sound Journal*, Oct. 25, 2021, https://www.bizjournals.com-seattle-news-2021/10/24-former-athira-ceo-explains-departure-in-letter.html.

[23]     U.S. Patent No. 8,598,118 (filed Dec. 3, 2013).

VERIFIED STOCKHOLDER DERIVATIVE
COMPLAINT - 23

Case No. 2:22-cv-497

WEISS LAW
305 Broadway, 7th Floor
New York, New York 10007
Telephone: (212) 682-3025

83.    In June 2015, WSU, Kawas and the other Athira founders obtained Patent No. 9,051,351[24] which incorporated the entire earlier patent by reference, including its references to Kawas's fraudulent research papers.

84.    In June 2016, Athira and Kawas applied for a provisional patent for ATH-1017, which was heavily dependent on Kawas's research.  A provisional patent was granted in 2017.

85.    In October 2019, Athira filed a $15 million National Institute of Health ("NIH") grant application which referenced three of Kawas's research papers.  Based on the grant application, the National Institute on Aging within the NIH awarded funding for a Phase 2 clinical trial of ATH-1017 in December 2020.[25]

86.    In June 2021, Athira and Kawas filed Patent No. 11,021,514,[26] "covering the composition of matter for ATH-1017," which was later approved.  The patent application referenced Kawas's research and specifically focused on a January 2013 article by Kawas and others[27] purporting to establish the connection between ATH-1017 and its effect on Alzheimer's disease.

87.    The quality and scope of the special committee's investigation was demonstrably insufficient.  Indeed, its conclusion that the patents relating to ATH-1017 do not cite any of Kawas's papers that published manipulated images is, as shown herein, demonstrably false.  The

---

[24]    U.S. Patent No. 9,051,351 (filed June 9, 2015). Three other patents, Patent Nos. 9,066,901, 9,150,613, 9,475,854 also referenced Kawas's 2011, 2012 and 2013 research papers relating to the use of small molecules to treat melanoma, hearing loss, and angiogenesis.

[25]    Olivia Goodhill, *Athira Cited Altered Studies in $15 Million NIH Grant Application, Creating Legal Risk*, *STAT+*, Aug. 5, 2021, https://www.statnews.com/2021/08/05/athira-cited-altered-studies-in-nih-grant-application-creating-legal-risk/.

[26]    U.S. Patent No. 11, 021,514 (filed June 1, 2021).

[27]    Leen H. Kawas et al., *Evaluation of Metabolically Stabilized Angiotensin IV Analogs as Procognitive/Antidementia Agents*, *The Journal of Pharmacology and Experimental Therapeutics* (Jan.  31,  2013), at 141-154, https://pubmed.ncbi.nlm.nih.gov/23055539/.

VERIFIED STOCKHOLDER DERIVATIVE
COMPLAINT - 24

Case No. 2:22-cv-497

WEISS LAW
305 Broadway, 7th Floor
New York, New York 10007
Telephone: (212) 682-3025

1    special committee also failed to grasp that the submission of falsified data to the United States

2    Patent and Trademark Office renders the related patents unenforceable.[28]

3        **H.    Athira Is Sued In Three Securities Class Actions**

4        88.    On June 25, 2021, securities class action lawsuits began to be filed against Athira

5    and certain of its directors and officers.  These actions were consolidated on August 9, 2021.  On

6    January 7, 2022, a consolidated amended complaint was filed in the United States District Court

7    for the Western District of Washington captioned *Wang et al v. Athira Pharma, Inc. et al.*, Docket

8    No. 2:21-cv-00861-TSZ (W.D. Wash.) (the "Consolidated Amended Complaint").    The

9    Consolidated Amended Complaint seeks damages on behalf of a class of persons who purchased

10   or otherwise acquired Athira shares between September 17, 2020 and June 17, 2021, inclusive;

11   and on behalf of a class of persons who purchased or otherwise acquired Athira shares pursuant or

12   otherwise traceable to the Company's IPO or Second Offering.   The Consolidated Amended

13   Complaint charges Athira, Kawas, Edelman, Fluke, Johnson,[29] Glenna Mileson, Athira's Chief

14   Financial Officer ("Mileson"), Goldman Sachs & Co. LLC; Jefferies LLC ("Jefferies"); Stifel,

15   Nicolaus & Company, Inc., and JMP Securities LLC with violations of Section 10(b) of the

16   Exchange Act, 15 U.S.C. § 78j(b), Rule 10b-5 promulgated thereunder by the SEC; Section 11 of

17   the Securities Act of 1933 ("Securities Act"); Section 12 (a) (2) of the Securities Act; and Section

18   15 of the Securities Act.  Kawas, Mileson, Edelman, Fluke, and Johnson were also charged with

19   violations of Section 20(a) of the Exchange Act.

20       89.    The Securities Class Action alleges that: (1) Kawas's published research papers

21   contained improperly altered images; (2) Kawas's research was essential to Athira's efforts to

22   develop treatments for neurological diseases such as Alzheimer's disease and Parkinson's disease

23

24   [28]    The United States Patent and Trademark Office, *2016 Fraud, Inequitable Conduct, or

25   Violation of Duty of Disclosure Affects All Claims* [R-08.2017], https://www.uspto.gov-web/offices/pac/mpep/s2016.html (last visited on March 15, 2022).

26   [29]    Another of the Company's directors, Tadataka Yamada, was also named as a defendant but

27   he has since passed away.

28

WEISS LAW
305 Broadway, 7th Floor
New York, New York 10007
Telephone: (212) 682-3025

because it set forth the biological framework that Athira was using in its approach to treat those diseases; (3) because of the altered images, the Company's intellectual property and product development for the treatment of these diseases was premised on flawed research; and (4) as a result of the foregoing, the Individual Defendants' statements and omissions about Athira's business, operations, and prospects, were materially false and misleading.

### I.    Questions Are Raised Regarding Litton's And The Individual Defendants' Qualifications, As Well As Athira's Poor Corporate Governance Practices

90.    On March 18, 2022, Kawas co-founded Propel Bio Partners L.P. ("Propel Bio"), an equity investment firm, with Richard Kayne ("Kayne"), a veteran investor who is the founder and co-chairman of Kayne Anderson Capital Advisors, L.P. ("Kayne Anderson"). Kayne Anderson is a substantial investor in Athira, investing $27 million in Athira on April 28, 2021 in a Series B funding round.

91.    On March 30, 2022, Kayne confirmed in an open letter[30] to shareholders that he nominated himself and George W. Bickerstaff, III, the former Chief Financial Officer of Novartis Pharma AG, to Athira's Board at the upcoming 2022 Annual Meeting of Shareholders.[31] Kayne disclosed that he and his affiliates are the beneficial owners of approximately 4.8% of the outstanding shares of Athira common stock. In the letter, Kayne criticized Defendant Litton and the other Individual Defendants, pointing out their failure to manage the Company properly, lack of qualifications, and overpayment of compensation:

> Today, I am one of the Company's largest shareholders. While I steadfastly maintain my belief in the remarkable promise for ATH-1017, I have lost confidence in the current management team and the Board. ***I believe that current management—led by President and Chief Executive Officer Dr. Mark Litton—lacks the experience needed to provide proper oversight of, and strategy regarding, the clinical trials for ATH-1017.*** The next 18 months are critical for ATH-1017 and for Athira. ***Without the right leadership and oversight in place, the risk of failure and resulting loss of shareholder value is high.***

---

[30]    *Business Wire*, https://www.businesswire.com/news/home/20220329006078/en/Ric-Kayne-and-Affiliates-Confirm-Nomination-of-Two-Highly-Qualified-Candidates-for-Election-to-Athira-Pharma%E2%80%99s-Board-of-Directors, March 30, 2022.

[31]    On March 25, 2022, the Company filed a preliminary proxy statement with the SEC, reflecting the contested solicitation by Kayne.

VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT - 26

Case No. 2:22-cv-497

WEISS LAW
305 Broadway, 7th Floor
New York, New York 10007
Telephone: (212) 682-3025

**Athira's Urgent Need For New Leadership**

Simply put, Dr. Litton is not the right CEO for Athira. . . . Considering that Dr. Litton has little to no operational, clinical trial or scientific experience, having spent substantially all of his career in business development roles, I question the Board's decision-making in appointing him CEO and increasing his base salary by 19%. . . . Prior to Athira, the only operating role on Dr. Litton's resume is a short stint as the President and Chief Operating Officer at Alpine Immune Sciences, Inc. Tellingly, Dr. Litton joined Alpine Immune Sciences in August 2018 and by April 2019—a mere eight months later—he was terminated and replaced with an individual with a deep research, development and scientific background.

It is unfathomable to me that Athira's Board . . . replaced [Kawas] with an unqualified, unproven executive with no clinical trial expertise, all without even conducting a proper search process for a permanent CEO during the four-month investigation. . . .

The Board seems to have concluded that it was in the best interest of shareholders to not conduct a formal CEO search and appoint an individual without the requisite credentials or experience to oversee the pivotal clinical trials and lead the balance of the management team. This poor decision-making has also resulted in other management departures, including at least one individual that played a pivotal role in designing and overseeing the ATH-1017 trials and ensuring that clinical milestones were met. . . . What's more, notwithstanding a lack of credentials and a nearly 25% drop in the stock price since Dr. Litton assumed day-to-day management responsibility in June 2021, at the beginning of this year, the Board approved another increase to Dr. Litton's base salary, and also provided him with an increased bonus opportunity and an unwarranted and enhanced golden parachute in the event of a change of control of the Company.

***To make matters worse, some of the academic credentials claimed by Dr. Litton in Athira's SEC filings and website were false.*** Specifically, until just days ago, Dr. Litton claimed to have received a Bachelor of Science degree in Biochemistry from the University of California, Santa Cruz. His LinkedIn profile claimed that he had a Bachelor of Applied Science (not a Bachelor of Science) degree in Biochemistry. These were both inaccurate, as he has a Bachelor of Arts degree—in fact, at the time of his graduation, the University of California, Santa Cruz did not even offer a Bachelor of Science degree for Dr. Litton's major. When I learned of this information, I immediately notified the Board in writing and requested that they launch an investigation and take appropriate remedial action.

The Board ignored my request for almost two weeks and, finally, on March 25, 2022, responded with a one-line letter stating only that "Dr. Litton has the full support of Athira's board of directors." All shareholders should be dismayed at the Board's lack of engagement or substantive response on a matter that goes to the integrity of the individual leading our company, as I am. In the interim, Athira and Dr. Litton have quietly corrected his academic background on the Company's website, his LinkedIn profile and the preliminary proxy filed late last week, with no further explanation.

My concerns about a lack of relevant experience with regard to Dr. Litton apply equally to the Board. Athira's Board Chairwoman has limited to no drug development, scientific or biotechnology experience. ***In fact, before I initiated my***

VERIFIED STOCKHOLDER DERIVATIVE
COMPLAINT - 27

Case No. 2:22-cv-497

WEISS LAW
305 Broadway, 7th Floor
New York, New York 10007
Telephone: (212) 682-3025

*active engagement with the Company, a majority of the Board lacked any such experience, yet Board members are being paid handsomely, with at least one director earning almost $450,000 last year for her service.* It has only been in response to my active dialogue that the Board finally decided to act and add individuals that possess the type of background one would expect for a clinical stage biotech company.

***

<u>**Poor Corporate Governance**</u>

*Athira is a poster child for poor corporate governance.* It has a staggered Board, does not have a majority voting policy, and shareholders cannot act by written consent or call a special meeting. Although I appreciate that the Company is newly public, these Board and management entrenchment tools do not even have sunset provisions. ISS has recognized these significant governance shortcomings, having recommended that shareholders withhold support from two of the three directors up for election at last year's annual meeting. Of course, given the lack of a majority voting policy, the impact of withholding our votes does not even require directors to resign, which is a universal requirement at companies with good governance.

92.    In a March 30, 2022 press release,[32] the Company responded to Kayne's criticism and noted that Kayne was attempting to get Kawas back into the Company:

Mr. Kayne has pushed Athira to resume a formal relationship with his current business partner and the company's former CEO, Dr. Leen Kawas, who resigned as an executive and stepped down from the board in October 2021. This occurred after an investigation led by an independent board committee found that she altered images in her 2011 doctoral dissertation and in at least four research papers that she co-authored while a graduate student at Washington State University. *The board believes that ending Dr. Kawas's relationship with Athira was and remains in the best interests of Athira and our shareholders.*

**J.    The Individual Defendants Ignored Red Flags Regarding Kawas's Research**

93.    In June 2021, *Puget Sound Business Journal* reported[33] that questions about the authenticity of Kawas's research had surfaced in the scientific community beginning in 2016,[34] years prior to Athira's disclosure that her research was faked. The article[35] quoted Dr. Elisabeth

---

[32]    Athira Pharma Press Release, *Athira Pharma Highlights Strong Execution of Strategy and Positioning for the Future,* March 30, 2022, https://investors.athira.com/news-releases/news-release-details/athira-pharma-highlights-strong-execution-strategy-and.

[33]    Rick Morgan, *Questions around Athira CEO's research Began to Surface in 2016, Puget Sound Business Journal,* June 21, 2021, https://www.bizjournals.com-seattle-news-2021-06-20-athira-ceo-2016-research.html

[34]    A subsequent *STAT* article pointed out that the *PubPeer* comments began in 2014. Olivia Goodhill, *Athira Cited Altered Studies in $15 Million NIH Grant Application.*

[35]    *Id.*

VERIFIED STOCKHOLDER DERIVATIVE
COMPLAINT - 28

Case No. 2:22-cv-497

WEISS LAW
305 Broadway, 7th Floor
New York, New York 10007
Telephone: (212) 682-3025

Bik ("Bik"), an independent authority whose specialty includes discovering potential errors in images from published research. Bik had previously commented on Kawas's work on *PubPeer,* a scientific peer review website. In some of Kawas's research, Bik noted "that the same image results seem to be used in different experiments." Bik confirmed that, "[a]t least one of [of the images] is wrong" and concluded that "[m]aybe they ran the experiment, and the results were not as expected, or maybe they didn't run the experiment at all."

94.    In October 2014, four *PubPeer* contributors[36] concurred that there were unanswered questions about several images accompanying a November 2011 article by Kawas in *The Journal of Pharmacology and Experimental Therapeutics,* a leading pharmacology research journal published since 1909.[37]

95.    Also in October 2014, a *PubPeer* contributor commented that there was a "striking similarity" between several images in a November 2014 article authored by Kawas, Harding, Wright, and others[38] summarizing the "precognitive" effects of Dihexa and related compounds.

96.    In December 2014, *The Journal of Pharmacology and Experimental Therapeutics* published a correction to a November 2011 article authored by Kawas, Harding and Wright. The correction highlighted the presence of duplicated labels in the images.[39]

---

[36]    *PubPeer,*    https://pubpeer.com/publications/51C554512CE22267B2E62172DF3DDE; Leen H. Kawas et al., *Mimics of the Dimerization Domain of Hepatocyte Growth Factor Exhibit Anti-Met and Anticancer Activity*, *The Journal of Pharmacology and Experimental Therapeutics* (Nov. 2011), at 509-518, https://jpet.aspetjournals.org/content/339/2/509.

[37]    Scimago Institutions Rankings, https://www.scimagojr.comjournalsearch.php?q=23086&tip=sid.

[38]    Leen H. Kawas, et al., *The Procognitive and Synaptogenic Effects of Angiotensin IV– Derived Peptides Are Dependent on Activation of the Hepatocyte Growth Factor/c-Met System*, *The Journal of Pharmacology and Experimental Therapeutics* (Nov. 2014), https://jpet.aspetjournals.org/content/351/2/390.long.

[39]    Olivia Goldhill, *Athira Pharma CEO Placed on Leave;* Leen H. Kawas et al., *Correction to 'Mimics of the Dimerization Domain of Hepatocyte Growth Factor Exhibit Anti-Met and Anticancer Activity'*, *The Journal of Pharmacology and Experimental Therapeutics* (December 2014), at 685, https://jpet.aspetjournals.org/content/351/3/685.

VERIFIED STOCKHOLDER DERIVATIVE
COMPLAINT - 29

Case No. 2:22-cv-497

WEISS LAW
305 Broadway, 7th Floor
New York, New York 10007
Telephone: (212) 682-3025

97.     A January 2015 *PubPeer* contributor pointed out that while the authors had issued one correction regarding the November 2011 article, several issues with the images remained.[40]

98.     In June 2016, *PubPeer* contributors also pointed out discrepancies in the images contained in March 2012 and April 2013 articles published by Kawas.[41]  The contributors posited that several images in the article were obtained from other studies because they showed markings from previous papers.[42]

99.     A June 2016 contributor pointed out that some of the images in Kawas's November 2014 article had been reproduced upside down, indicating that they were copied from other works and modified.  Another June 2016 post stressed that the "research has been parlayed into a Biotechnology company called M3 led by one of the first authors of this study, Dr. Kawas.  ***In the post-Holmes/Theranos environment, these and other concerns have added urgency***."

100.     Athira co-founders Wright and Harding abruptly left the Company shortly before it went public.

101.     *PubPeer* contributors in May and June 2021 expressed the same concerns about image manipulation in several of the articles and confirmed that the images in the March 2012 and April 2013 articles were copied from Kawas's dissertation and altered.

102.     The *Puget Sound Business Journal* confirmed that Kawas, Harding, Wright, and WSU were sent email alerts of the *PubPeer* comments calling into question Kawas's work.  In

---

[40]     *PubPeer,* https://pubpeer.com/publications/51C554512CE22267B2E62172DF3DDE.

[41]     Leen H. Kawas, et al., *Development of Angiotensin IV Analogs as Hepatocyte Growth Factor/Met Modifiers, Journal of Pharmacology and Experimental Therapeutics* (March 2012), at 539-548,  https://pubmed.ncbi.nlm.nih.gov/22129598/; Leen H. Kawas, et al., *Nanoscale Mapping of the Met Receptor on Hippocampal Neurons by AFM and Confocal Microscopy*, Nanomedicine: Nanotechnology, Biology and Medicine (Apr. 2013), at 428-438, https://www.sciencedirect.com-science/article-abs-pii-S1549963412005229?via%3Dihub.

[42]     *PubPeer*, Comment #1 Peer 1, https://pubpeer.com/publications/; *PubPeer,* Comment #1 Peer 1,  https://pubpeer.com/publications/36F84FDB31C718C8CF8F52C717D15C (last visited March 15, 2021).

VERIFIED STOCKHOLDER DERIVATIVE
COMPLAINT - 30

Case No. 2:22-cv-497

WEISS LAW
305 Broadway, 7th Floor
New York, New York 10007
Telephone: (212) 682-3025

1  violation of their fiduciary duties, the Individual Defendants chose to ignore these red flags and

2  touted the research to investors and in public filings with the SEC.

3      **K.    Athira's Materially False And Misleading Proxy Statement**

4      103.    On April 16, 2021, the Company filed its 2020 Proxy Statement with the SEC

5  soliciting shareholder votes to, among other things, elect Defendants Kawas, Kosacz and Yamada

6  to the Board.  The 2020 Proxy Statement was issued by order of the Board and was signed by

7  Kawas.

8      104.    The 2020 Proxy Statement praised Kawas's qualifications:

9      Leen Kawas, Ph.D., has served as our chief executive officer and as a member of
       our board of directors since January 2014. Previously, Dr. Kawas served as our vice
10     president. Dr. Kawas serves on multiple boards, including the Washington
       Governor's Life Science Advisory Board, Scientific Review Board for the
11     Alzheimer's Drug Discovery Foundation, and Alzheimer's Association –
       Washington Chapter Board. She also served as the co-chair of the International
12     Alzheimer's Association Business Consortium. Dr. Kawas earned a Ph.D. in
       molecular pharmacology from Washington State University in 2011 and a
13     pharmacy degree from the University of Jordan in 2008. ***We believe Dr. Kawas's
       scientific and professional training, her instrumental role in building Athira
14     Pharma, Inc., and her extensive understanding of our business, operations and
       strategy qualify her to serve on our board of directors.***

15     105.    The 2020 Proxy Statement also disclosed the factors that Athira's Nominating and

16 Corporate Governance Committee uses to nominate directors:
17
18     While our board has not established minimum qualifications for board members,
       some of the factors that our nominating and corporate governance committee
19     considers in assessing director nominee qualifications include, without limitation,
       ***issues of character, professional ethics and integrity, judgment, business
20     acumen, proven achievement and competence in one's field, the ability to
       exercise sound business judgment,*** tenure on the board of directors and skills that
21     are complementary to the board of directors, an understanding of our business, an
       understanding of the responsibilities that are required of a member of the board of
22     directors . . . .

23     106.    The 2020 Proxy Statement represented that the Board was exercising proper risk

24 oversight and that "[o]ur board of directors believes its administration of its risk oversight function

25 has not affected the board of directors' leadership structure."

26     107.    The 2020 Proxy Statement also represented that the Audit Committee was

27 responsible for "establishing and maintaining internal controls."

28

VERIFIED STOCKHOLDER DERIVATIVE                WEISS LAW
COMPLAINT - 31                                 305 Broadway, 7th Floor
                                               New York, New York 10007
Case No. 2:22-cv-497                           Telephone: (212) 682-3025

108.    The 2020 Proxy Statement was materially false and misleading because the Individual Defendants failed to maintain adequate internal controls and conduct the required oversight, allowing the Company to rely improperly on Kawas's published research.  Kawas's purported research was critical to the Company's work to develop a drug candidate to treat Alzheimer's disease.  The Individual Defendants also failed to implement and maintain an effective system of internal controls to ensure the timely disclosure of truthful, accurate and complete information as required by the securities laws, which in addition to the IPO and SPO Materials, has resulted in the Company being named a defendant in the Securities Class Action.

109.    As a direct and proximate result of these material misstatements and omissions, the Company's shareholders elected Defendants Kawas and Kosacz and Yamada to the Athira Board of Directors.

110.    The wrongful conduct alleged herein has damaged Athira, leading to three securities class actions lawsuits and irreparably damaging its reputation.

## VI.    DERIVATIVE ALLEGATIONS

111.    Plaintiff brings this action derivatively and for the benefit of Athira to redress injuries suffered, and to be suffered, as a result of the Individual Defendants' breaches of their fiduciary duties as directors and/or officers of Athira, as well as the aiding and abetting thereof, unjust enrichment, gross mismanagement, waste of corporate assets, and violations of Section 14(a) of the Exchange Act.

112.    Plaintiff is a stockholder of the Company and was a stockholder of the Company at the time of the transactions alleged herein.  Plaintiff will adequately and fairly represent the interests of the Company and its stockholders in enforcing and prosecuting their rights.

113.    As directors of Athira, the Individual Defendants were required to implement and maintain an effective system of internal controls for the Company. However, in direct contravention of that duty, the Individual Defendants failed to implement and maintain internal controls or exercise oversight over the accuracy of Kawas's published research papers despite its centrality to the Company's core business. Likewise, the Individual Defendants failed to

VERIFIED STOCKHOLDER DERIVATIVE
COMPLAINT - 32

Case No. 2:22-cv-497

WEISS LAW
305 Broadway, 7th Floor
New York, New York 10007
Telephone: (212) 682-3025

1    implement and maintain an effective system of internal controls over the reporting of truthful,

2    accurate, and complete information in compliance with the federal securities laws.

3          114.    Under the circumstances presented herein, demand is futile and, thus, excused.

4        **A.    Demand Upon Defendant Romano Is Excused**

5          115.    Romano will not sue those responsible for the wrongdoing pled herein because

6    doing so would harm her and her investments.  Romano owns 4,168 Athira shares. If Romano

7    acknowledged that Kawas and others had issued misleading statements, her investment in Athira

8    would be substantially devalued.  Further, if she acknowledged that executives at Athira had

9    engaged in the wrongdoing alleged, she would be acknowledging that she, as an investor with

10   long-term involvement in the Company, either knew of the wrongdoing or should have known of

11   the wrongdoing.

12         116.    Romano is named as a defendant in the Securities Class Action.  As such, she is

13   incapable of considering a demand to commence and vigorously prosecute this action with the

14   required independence and disinterest.

15         117.    Romano authorized the Proxy Statement containing false and misleading

16   statements and material omissions and faces a substantial likelihood of liability therefor.

17         118.    Richard Kayne, an Athira investor with nearly 5% voting control of the Company,

18   is attempting to oust Defendant Litton as CEO and obtain two spots on the Board for himself and

19   another nominee. Thus, Romano would not take action against the other members of Athira's

20   Board or the Company's management because it would strengthen Kayne's bid, thereby

21   weakening her own position on Athira's Board.

22         119.    Romano, as a director of Athira, was required to, but failed to: (1) implement and

23   maintain an effective system of internal controls to ensure that the Company was complying with

24   all laws, rules, and regulations governing Athira's core operations; (2) implement and maintain an

25   effective system of internal controls and corporate governance practices and procedures to monitor

26   the material risks posed to the Company, its stockholders, and customers; and (3) investigate and

27   take action when presented with red flags evidencing that Kawas altered images in published

28

VERIFIED STOCKHOLDER DERIVATIVE
COMPLAINT - 33

Case No. 2:22-cv-497

WEISS LAW
305 Broadway, 7th Floor
New York, New York 10007
Telephone: (212) 682-3025

papers referenced in Athira's patents for ATH-1017, its leading drug candidate, and other compounds, and that representations made in public filings with the SEC by Athira, its officers and directors, regarding the Company's core operations and key personnel were false and misleading and omitted material information. Had Romano taken timely action the damage caused to Athira could have been prevented or at least minimized.

120.    Moreover, as a member of the Audit Committee, Romano had duties regarding oversight of the risks facing the Company and Athira's compliance with relevant laws, rules, and regulations. Romano utterly failed to perform these essential duties.

121.    Romano is not independent and faces a substantial likelihood of liability for her breaches of fiduciary duty and violations of federal securities laws. Any demand upon Defendant Romano is futile and, thus, excused.

**B.    Demand Upon Defendant Edelman Is Excused**

122.    Edelman will not sue those responsible for the wrongdoing pled herein because doing so would harm him and his investments. Edelman holds 3,432,080 Athira shares, giving him 9.2% of the Company's total shares. If Edelman acknowledged that Kawas and others had issued misleading statements, his investment in Athira would be substantially devalued. Further, if Edelman acknowledged that executives at Athira had engaged in the wrongdoing alleged, he would be acknowledging that he, as a major investor with long-term involvement in the Company, either knew of the wrongdoing or should have known of the wrongdoing.

123.    Edelman is named as a defendant in the Securities Class Action. As such, he is incapable of considering a demand to commence and vigorously prosecute this action with the required independence and disinterest.

124.    Edelman authorized the Proxy Statement containing false and misleading statements and material omissions and faces a substantial likelihood of liability therefor.

125.    Richard Kayne, an Athira investor with nearly 5% voting control of the Company, is attempting to oust Defendant Litton as CEO and obtain two spots on the Board for himself and another nominee. Thus, Edelman would not take action against the other members of Athira's

VERIFIED STOCKHOLDER DERIVATIVE
COMPLAINT - 34

Case No. 2:22-cv-497

WEISS LAW
305 Broadway, 7th Floor
New York, New York 10007
Telephone: (212) 682-3025

1   Board or the Company's management because it would strengthen Kayne's bid, thereby

2   weakening his own position on Athira's Board.

3       126.    Notably, Edelman is the Founder, CEO, and Portfolio Manager of Perceptive, an

4   investment firm specializing in start-up companies in the life sciences industry.  On June 4, 2020,

5   a consortium led by Perceptive acquired a minority stake in Athira, with a transaction value of

6   $86.40 million. The 2020 Proxy Statement describes Edelman as the beneficial owner of the shares

7   held by Perceptive.  Thus, Edelman would not take action against other members of Athira's Board

8   or its management because it would jeopardize his substantial investment in the Company and

9   damage his reputation as a professional investor.

10      127.    Edelman, as a director of Athira, was required to, but failed to: (1) implement and

11  maintain an effective system of internal controls to ensure that the Company was complying with

12  all laws, rules, and regulations governing Athira's core operations; (2) implement and maintain an

13  effective system of internal controls and corporate governance practices and procedures to monitor

14  the material risks posed to the Company, its stockholders, and customers; and (3) investigate and

15  take action when presented with red flags evidencing that Kawas altered images in published

16  papers referenced in Athira's patents for ATH-1017, its leading drug candidate, and other

17  compounds, and that representations made in public filings with the SEC by Athira, its officers

18  and directors, regarding the Company's core operations and key personnel were false and

19  misleading and omitted material information. Had Edelman taken timely action the damage caused

20  to Athira could have been prevented or at least minimized.

21      128.    Edelman failed to uphold his additional obligations as a member of the Nominating

22  and Corporate Governance Committee, which include, *inter alia*, ensuring the implementation and

23  effectiveness of Athira's Corporate Governance Guidelines.

24      129.    Edelman is not independent and faces a substantial likelihood of liability for his

25  breaches of fiduciary duty and violations of federal securities laws.  Any demand upon Defendant

26  Edelman is futile and, thus, excused.

27

28  VERIFIED STOCKHOLDER DERIVATIVE          WEISS LAW
    COMPLAINT - 35                           305 Broadway, 7th Floor
                                             New York, New York 10007
    Case No. 2:22-cv-497                     Telephone: (212) 682-3025

C.    **Demand Upon Defendant Fluke Is Excused**

130.    Fluke will not sue those responsible for the wrongdoing pled herein because doing so would harm him and his investments.  Fluke owns 156,779 of the Company's shares. If Fluke acknowledged that Kawas and others had issued misleading statements, his investment in Athira would be substantially devalued. Further, if Fluke acknowledged that executives at Athira had engaged in the wrongdoing alleged, he would be acknowledging that he either knew of the wrongdoing or should have known of the wrongdoing.

131.    Fluke is named as a defendant in the Securities Class Action.  As such, he is incapable of considering a demand to commence and vigorously prosecute this action with the required independence and disinterest.

132.    Fluke authorized the Proxy Statement containing false and misleading statements and material omissions and faces a substantial likelihood of liability therefor.

133.    Richard Kayne, an Athira investor with nearly 5% voting control of the Company, is attempting to oust Defendant Litton as CEO and obtain two spots on the Board for himself and another nominee. Thus, Fluke would not take action against the other members of Athira's Board or the Company's management because it would strengthen Kayne's bid, thereby weakening his own position on Athira's Board.

134.    Fluke is the founder and Chairman of Fluke Capital Management, L.P., ("Fluke Capital Management"), an investment firm. Fluke Capital Management was one of the early investors in Athira.  The 2020 Proxy Statement describes Fluke as the beneficial owner of $50,000 of convertible notes and 6,731 Athira shares issued to Fluke Capital Management.  Thus, Fluke would not take action against the other members of Athira's Board or the Company's management because it would jeopardize his investments and damage his reputation as a professional investor.

135.    Fluke is also a key investor in Propel Bio, an equity investment firm that Kawas recently co-founded.[43] **In a statement coinciding with the Propel Bio launch, Fluke made it**

---

[43]    Todd Bishop, *Ex-Athira CEO Leen Kawas Starts $150 million Fund with Key Investors from Former Company*, *GeekWire*, March 18, 2022, https://www.geekwire.com/2022/ex-athira-

VERIFIED STOCKHOLDER DERIVATIVE
COMPLAINT - 36

Case No. 2:22-cv-497

WEISS LAW
305 Broadway, 7th Floor
New York, New York 10007
Telephone: (212) 682-3025

**clear that his involvement was an endorsement of Kawas, expressly stating:** "I am investing in Propel for the same reason I invested in Athira: I have the extensive tangible evidence that Leen [Kawas] will lead Propel to identify and fund the most promising medical technology enterprises that will, in turn, deliver astounding improvements in human healthcare – and deliver consistently superior returns to investors." Having chosen to make a substantial investment backing a new venture co-founded by Kawas, Fluke cannot act with disinterest and independence in responding to a demand that action be taken against Kawas for breach of fiduciary duties and the other misconduct alleged herein.

136. Fluke, as a director of Athira, was required to, but failed to: (1) implement and maintain an effective system of internal controls to ensure that the Company was complying with all laws, rules, and regulations governing Athira's core operations; (2) implement and maintain an effective system of internal controls and corporate governance practices and procedures to monitor the material risks posed to the Company, its stockholders, and customers; and (3) investigate and take action when presented with red flags evidencing that Kawas altered images in published papers referenced in Athira's patents for ATH-1017, its leading drug candidate, and other compounds, and that representations made in public filings with the SEC by Athira, its officers and directors, regarding the Company's core operations and key personnel were false and misleading and omitted material information. Had Fluke taken timely action the damage caused to Athira could have been prevented or at least minimized.

137. Fluke failed to uphold his additional obligations as a member of the Nominating and Corporate Governance Committee, which include, *inter alia*, ensuring the implementation and effectiveness of Athira's Corporate Governance Guidelines.

138. Moreover, as a member of the Audit Committee, Fluke had duties regarding oversight of the risks facing the Company and Athira's compliance with relevant laws, rules, and regulations. Fluke utterly failed to perform these essential duties.

---

pharma-ceo-leen-kawas-starts-150m-fund-with-key-investors-from-former-company/.

VERIFIED STOCKHOLDER DERIVATIVE
COMPLAINT - 37

Case No. 2:22-cv-497

WEISS LAW
305 Broadway, 7th Floor
New York, New York 10007
Telephone: (212) 682-3025

139.   Fluke is not independent and faces a substantial likelihood of liability for his breaches of fiduciary duty and violations of federal securities laws.  Any demand upon Defendant Fluke is futile and, thus, excused.

**D.    Demand Upon Defendant Johnson Is Excused**

140.   Johnson will not sue those responsible for the wrongdoing pled herein because doing so would harm him and his investments.  Johnson owns 6,935 of the Company's shares.  If Johnson acknowledged that Kawas and others had issued misleading statements, his investment in Athira would be substantially devalued.  Further, if Johnson acknowledged that executives at Athira had engaged in the wrongdoing alleged, he would be acknowledging that he either knew of the wrongdoing or should have known of the wrongdoing.

141.   Johnson is named as a defendant in the Securities Class Action.  As such, he is incapable of considering a demand to commence and vigorously prosecute this action with the required independence and disinterest.

142.   Johnson authorized the Proxy Statement containing false and misleading statements and material omissions and faces a substantial likelihood of liability therefor.

143.   Richard Kayne, an Athira investor with nearly 5% voting control of the Company, is attempting to oust Defendant Litton as CEO and obtain two spots on the Board for himself and another nominee.  Thus, Johnson would not take action against the other members of Athira's Board or the Company's management because it would strengthen Kayne's bid, thereby weakening his own position on Athira's Board.

144.   Johnson, as a director of Athira, was required to, but failed to: (1) implement and maintain an effective system of internal controls to ensure that the Company was complying with all laws, rules, and regulations governing Athira's core operations; (2) implement and maintain an effective system of internal controls and corporate governance practices and procedures to monitor the material risks posed to the Company, its stockholders, and customers; and (3) investigate and take action when presented with red flags evidencing that Kawas altered images in published papers referenced in Athira's patents for ATH-1017, its leading drug candidate, and other

VERIFIED STOCKHOLDER DERIVATIVE
COMPLAINT - 38

Case No. 2:22-cv-497

WEISS LAW
305 Broadway, 7th Floor
New York, New York 10007
Telephone: (212) 682-3025

compounds, and that representations made in public filings with the SEC by Athira, its officers and directors, regarding the Company's core operations and key personnel were false and misleading and omitted material information. Had Johnson taken timely action the damage caused to Athira could have been prevented or at least minimized.

145. Moreover, as Chair of the Audit Committee, Johnson had duties regarding oversight of the risks facing the Company and Athira's compliance with relevant laws, rules, and regulations. Johnson utterly failed to perform these essential duties.

146. Johnson is not independent and faces a substantial likelihood of liability for his breaches of fiduciary duty and violations of federal securities laws. Any demand upon Defendant Johnson is futile and, thus, excused.

**E.    Demand Upon Defendant Kosacz Is Excused**

147. Kosacz will not sue those responsible for the wrongdoing pled herein because doing so would harm her and her investments. Kosacz beneficially owns 1,541 of the Company's shares. If Kosacz acknowledged that Kawas and others had issued misleading statements, her investment in Athira would be substantially devalued. Further, if Kosacz acknowledged that executives at Athira had engaged in the wrongdoing alleged, she would be acknowledging that she either knew of the wrongdoing or should have known of the wrongdoing.

148. Kosacz is named as a defendant in the Securities Class Action. As such, she is incapable of considering a demand to commence and vigorously prosecute this action with the required independence and disinterest.

149. Kosacz benefitted from the violation of Section 14(a) of the Exchange Act pled herein by securing her re-election to the Athira Board through false and misleading statements and material omissions in the 2020 Proxy Statement.

150. Richard Kayne, an Athira investor with nearly 5% voting control of the Company, is attempting to oust Defendant Litton as CEO and obtain two spots on the Board for himself and another nominee. Thus, Kosacz would not take action against the other members of Athira's Board

VERIFIED STOCKHOLDER DERIVATIVE
COMPLAINT - 39

Case No. 2:22-cv-497

WEISS LAW
305 Broadway, 7th Floor
New York, New York 10007
Telephone: (212) 682-3025

or the Company's management because it would strengthen Kayne's bid, thereby weakening her own position on Athira's Board.

151.    From October 2006 to July 2020, Kosacz was a Partner at the Cooley law firm. Cooley served as the legal advisor to the underwriters Goldman Sachs & Co., LLC, Jefferies, Stifel, and JMP Securities during the Company's IPO on September 17, 2020, raising $204 million, as well as the additional offering announced on January 20, 2021, and, as such, are named as defendants in the Securities Class Action.  Kosacz would not take action to remedy the wrongdoing alleged herein because that would compromise the defense of the underwriters.

152.    Kosacz, as a director of Athira, was required to, but failed to: (1) implement and maintain an effective system of internal controls to ensure that the Company was complying with all laws, rules, and regulations governing Athira's core operations; (2) implement and maintain an effective system of internal controls and corporate governance practices and procedures to monitor the material risks posed to the Company, its stockholders, and customers; and (3) investigate and take action when presented with red flags evidencing that Kawas altered images in published papers referenced in Athira's patents for ATH-1017, its leading drug candidate, and other compounds, and that representations made in public filings with the SEC by Athira, its officers and directors, regarding the Company's core operations and key personnel were false and misleading and omitted material information.  Had Kosacz taken timely action the damage caused to Athira could have been prevented or at least minimized.

153.    Kosacz failed to uphold her additional obligations as Chair of the Nominating and Corporate Governance Committee, which include, *inter alia*, ensuring the implementation and effectiveness of Athira's Corporate Governance Guidelines.

154.    Kosacz is not independent and faces a substantial likelihood of liability for her breaches of fiduciary duty and violations of federal securities laws.  Any demand upon Defendant Kosacz is futile and, thus, excused.

VERIFIED STOCKHOLDER DERIVATIVE
COMPLAINT - 40

Case No. 2:22-cv-497

WEISS LAW
305 Broadway, 7th Floor
New York, New York 10007
Telephone: (212) 682-3025

**F.    Demand Upon Defendant Litton Is Excused**

155.    Litton will not sue those responsible for the wrongdoing pled herein because doing so would harm him and his investments. Litton owns 13,126 of the Company's shares.  If Litton acknowledged that Kawas and others had issued misleading statements, his investment in Athira would be substantially devalued.  Further, if Litton acknowledged that executives at Athira had engaged in the wrongdoing alleged, he would be acknowledging that he either knew of the wrongdoing or should have known of the wrongdoing.

156.    Richard Kayne, an Athira investor with nearly 5% voting control of the Company, is attempting to oust Defendant Litton as CEO and obtain two spots on the Board for himself and another nominee. Thus, Litton would not take action against the other members of Athira's Board or the Company's management because it would strengthen Kayne's bid, thereby weakening his own position on Athira's Board and his position as CEO of the Company.

157.    Litton, as a director of Athira, was required to, but failed to: (1) implement and maintain an effective system of internal controls to ensure that the Company was complying with all laws, rules, and regulations governing Athira's core operations; (2) implement and maintain an effective system of internal controls and corporate governance practices and procedures to monitor the material risks posed to the Company, its stockholders, and customers; and (3) investigate and take action when presented with red flags evidencing that Kawas altered images in published papers referenced in Athira's patents for ATH-1017, its leading drug candidate, and other compounds, and that representations made in public filings with the SEC by Athira, its officers and directors, regarding the Company's core operations and key personnel were false and misleading and omitted material information.  Had Litton taken timely action the damage caused to Athira could have been prevented or at least minimized.

158.    Litton is not independent and faces a substantial likelihood of liability for his breaches of fiduciary duty and violations of federal securities laws.  Any demand upon Defendant Litton is futile and, thus, excused.

VERIFIED STOCKHOLDER DERIVATIVE
COMPLAINT - 41

Case No. 2:22-cv-497

WEISS LAW
305 Broadway, 7th Floor
New York, New York 10007
Telephone: (212) 682-3025

**G.    Demand Upon Panzara Is Excused**

159.    Michael Panzara ("Panzara") is neither disinterested nor independent. Panzara is the Chief Medical Officer at Wave Life Sciences ("Wave"), a pharmaceutical company. Cooley, a law firm that Defendant Kosacz was a partner in until recently, acted as a legal advisor to the underwriters for Wave's initial public offering on November 11, 2015.

160.    Jefferies, the investment banking firm that acted as an underwriter in Athira's IPO, also acted as an underwriter for Wave's initial public offering. Jefferies is a named defendant in the Securities Class Action and Panzara would not take any action to jeopardize its defense therein.

161.    Richard Kayne, an Athira investor with nearly 5% voting control of the Company, is attempting to oust Defendant Litton as CEO and obtain two spots on the Board for himself and another nominee. Thus, Panzara would not take action against the other members of Athira's Board or the Company's management because it would strengthen Kayne's bid, thereby weakening his own position on Athira's Board.

162.    Panzara is neither disinterested nor independent and any demand upon Panzara is futile, and thus, excused.

**H.    Demand Upon Pickering Is Excused**

163.    Grant Pickering ("Pickering") is neither disinterested nor independent. Pickering is the CEO and co-founder of Vaxcyte, Inc. ("Vaxcyte"), a company developing vaccines designed to prevent or treat infectious diseases. Cooley, a law firm that Defendant Kosacz was a partner in until recently, is the acting legal counsel for Vaxcyte.

164.    Jefferies, the investment banking firm that acted as an underwriter in Athira's IPO, also acted as an underwriter for Vaxcyte's initial public offering on June 16, 2020. Jefferies is a named defendant in the Securities Class Action and Pickering would not take any action to jeopardize its defense therein.

165.    Pickering is neither disinterested nor independent and any demand upon Pickering is futile and, thus, excused.

VERIFIED STOCKHOLDER DERIVATIVE
COMPLAINT - 42

Case No. 2:22-cv-497

WEISS LAW
305 Broadway, 7th Floor
New York, New York 10007
Telephone: (212) 682-3025

**I.       Other Factors Demonstrating That Demand
Upon The Individual Defendants Is Futile**

166.    Athira has been and will continue to be exposed to significant losses due to the wrongdoing complained of herein, yet the Board has not caused the Company to take action to recover for the Company the damages it has suffered and will suffer thereby.

167.    The members of the Board received, and continue to receive, substantial salaries, bonuses, payments, benefits, and other emoluments by virtue of their membership on the Board. They have thus benefited from the wrongs herein alleged and have engaged therein to preserve their positions of control and the perquisites thereof and are incapable of exercising independent objective judgment in deciding whether to bring this action.

168.    Publicly traded companies, such as Athira, typically carry director & officer liability insurance from which the Company could potentially recover some or all its losses. However, such insurance typically contains an "insured vs. insured" disclaimer that would foreclose a recovery from the insurers if the Individual Defendants sue each other to recover Athira's damages.

**VII.   CLAIMS FOR RELIEF**

**FIRST CLAIM**

**Against the Individual Defendants for Violations of
Section 14(a) of the Exchange Act**

169.    Plaintiff incorporates by reference and realleges each and every allegation set forth above as if fully set forth herein.

170.    Section 14(a) of the Exchange Act, 15 U.S.C. § 78n(a)(1), provides that "[i]t shall be unlawful for any person, by use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 12 of this title [15 U.S.C. § 78l]."

VERIFIED STOCKHOLDER DERIVATIVE
COMPLAINT - 43

Case No. 2:22-cv-497

WEISS LAW
305 Broadway, 7th Floor
New York, New York 10007
Telephone: (212) 682-3025

1    171.    Rule 14a-9, promulgated pursuant to § 14(a) of the Exchange Act, provides that no

2    proxy statement shall contain "any statement which, at the time and in the light of the

3    circumstances under which it is made, is false or misleading with respect to any material fact, or

4    which omits to state any material fact necessary in order to make the statements therein not false

5    or misleading." 17 C.F.R. § 240.14a-9.

6    172.    The 2020 Proxy Statement was materially false and misleading because the

7    Individual Defendants failed to maintain adequate internal controls and conduct the required

8    oversight, allowing the Company to rely improperly on Kawas's published research.  Kawas's

9    purported research was critical to the Company's work to develop a drug candidate to treat

10   Alzheimer's disease.  Athira also failed to implement and maintain an effective system of internal

11   controls to ensure the timely disclosure of truthful, accurate and complete information as required

12   by the securities laws, which has resulted in the Company being named a defendant in the securities

13   fraud class action lawsuits.

14   173.    The misleading information contained in the 2020 Proxy Statement was material to

15   Athira's shareholders in determining whether to elect Kawas, Kosacz, and Yamada to the Board.

16   174.    The material misstatements and omissions in the Proxy Statement damaged the

17   Company.

18   175.    Plaintiff, on behalf of Athira, seeks relief for damages inflicted upon the Company

19   based on the misleading 2020 Proxy Statement in connection with the improper election of certain

20   members of the Board.

21                           **SECOND CLAIM**

22        **Against the Individual Defendants for Breach of Fiduciary Duty**

23   176.    Plaintiff incorporates by reference and realleges each allegation contained above,

24   as though fully set forth herein.

25   177.    The Individual Defendants owed and owe fiduciary duties to Athira.  By reason of

26   their fiduciary relationships, the Individual Defendants specifically owed and owe Athira the

27   highest obligation of good faith and loyalty in the administration of Athira's affairs.  The Board

28   VERIFIED STOCKHOLDER DERIVATIVE        WEISS LAW
     COMPLAINT - 44                          305 Broadway, 7th Floor
                                             New York, New York 10007
     Case No. 2:22-cv-497                    Telephone: (212) 682-3025

1 also had specific fiduciary duties as defined by the Company's corporate governance documents
2 and principles that, had they been discharged in accordance with the Board's obligations, would
3 have prevented the misconduct and consequential harm to Athira alleged herein.

4     178.    The Individual Defendants ignored their obligations under state and federal law.
5 The Individual Defendants failed to make a good faith effort to correct the problems or prevent
6 their recurrence.

7     179.    The Individual Defendants each violated their fiduciary duties to Athira and its
8 stockholders by, among other things, failing to: (1) implement and maintain an effective system
9 of internal controls to ensure that the Company was complying with all laws, rules, and regulations
10 governing Athira's core operations; (2) implement and maintain an effective system of internal
11 controls and corporate governance practices and procedures to monitor the material risks posed to
12 the Company, its stockholders, and customers; and (3) investigate and take action when presented
13 with red flags evidencing that Kawas altered images in published papers referenced in Athira's
14 patents for ATH-1017, its leading drug candidate, and other compounds, and that representations
15 made in public filings with the SEC by Athira, its officers and directors, regarding the Company's
16 core operations and key personnel were false and misleading and omitted material information.
17 As a direct and proximate result of the Individual Defendants' failure to perform their fiduciary
18 obligations, Athira has sustained significant damages, not only monetarily, but also to its corporate
19 image and goodwill.  Such damages include, among other things, the costs of defending and
20 resolving the pending securities class action lawsuits against Athira.

21     180.    As a result of the misconduct alleged herein, the Individual Defendants are liable
22 to the Company.

23 **THIRD CLAIM**

24 **Against the Individual Defendants for Contribution and Indemnification**

25     181.    Plaintiff incorporates by reference and realleges each and every allegation set forth
26 above as if fully set forth herein.

28 VERIFIED STOCKHOLDER DERIVATIVE
COMPLAINT - 45

Case No. 2:22-cv-497

WEISS LAW
305 Broadway, 7th Floor
New York, New York 10007
Telephone: (212) 682-3025

182.    The Company's alleged liability on account of the wrongful acts and practices, as well as related misconduct described above arises, in whole or in part, from the knowing, reckless, disloyal, and/or bad faith acts or omissions of the Individual Defendants.

183.    The Company has suffered significant and substantial injury as a direct result of the Individual Defendants' actions. Plaintiff, on behalf of the Company, seeks relief from the Individual Defendants on theory of contribution and indemnity to the extent that the Company is found liable for the Individual Defendants' actions.

## FOURTH CLAIM

### Against the Individual Defendants for Aiding and Abetting

184.    Plaintiff incorporates by reference and realleges each and every allegation set forth above as if fully set forth herein.

185.    Each of the Individual Defendants has acted and is acting with knowledge of or with reckless, or grossly negligent, disregard to the fact that the Individual Defendants are in breach of their duties to the Company and have participated in such breaches of duties.

186.    In committing the wrongful acts, each of the Individual Defendants have pursued, or joined in the pursuit of, a common course of conduct.  They have acted in concert with and conspired with one another in furtherance of their common plan or design.  In addition to pursuing the wrongful conduct that gives rise to their primary liability, the Individual Defendants also aided and abetted, and/or assisted, each other in breaching their respective duties.

187.    Because the actions described herein occurred under the Board's supervision and authority, each of the Individual Defendants played a direct, necessary, and substantial part in the conspiracy, common enterprise, and/or common course of conduct complained of herein.

188.    Each of the Individual Defendants aided and abetted and rendered substantial assistance in the wrongs complained of herein.

VERIFIED STOCKHOLDER DERIVATIVE
COMPLAINT - 46

Case No. 2:22-cv-497

WEISS LAW
305 Broadway, 7th Floor
New York, New York 10007
Telephone: (212) 682-3025

**FIFTH CLAIM**

**Against the Individual Defendants for Waste of Corporate Assets**

189.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

190.    As a result of the foregoing, and by failing to properly consider the interests of the Company and its public shareholders, Defendants have subjected Athira to substantial liability, irreparably damaged the Company's business and reputation, and wasted corporate assets.

191.    As a result of the waste of corporate assets, the Individual Defendants are each liable to the Company.

192.    Plaintiff on behalf of Athira has no adequate remedy at law.

**VIII.    PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

(a)    Declaring that Plaintiff may maintain this action on behalf of Athira, and that Plaintiff is an adequate representative of the Company;

(b)    Declaring that the Individual Defendants have breached and/or aided and abetted the breach of their fiduciary duties to Athira;

(c)    Declaring that the Defendants violated Section 14(a) of the Exchange Act;

(d)    Determining and awarding to Athira the damages sustained by it as a result of the violations set forth above from each of the Individual Defendants, jointly and severally, together with pre-judgment and post-judgment interest thereon.

(e)    Ordering disgorgement of profits, benefits, and other compensation, including any performance-based or valuation-based compensation, obtained by the Individual Defendants due to their wrongful conduct and breach of their fiduciary duties;

(f)    Awarding Athira restitution from Individual Defendants, and each of them;

(g)    Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and experts' fees, costs, and expenses; and

(h)    Granting such other and further relief as the Court may deem just and proper.

WEISS LAW
305 Broadway, 7th Floor
New York, New York 10007
Telephone: (212) 682-3025

1  Dated: April 14, 2022                    **Yanick Law & Dispute Resolution** PLLC

2                                      By:   */s/ Miles A. Yanick*

3                                            Miles A. Yanick
                                             1325 Fourth Avenue, Suite 1130
4                                            Seattle, WA 98101
                                             Telephone: (206) 455-5924
5                                            Email: myanick@yanicklaw.com

6                                            David C. Katz (*pro hac vice* pending)
7                                            Mark D. Smilow (*pro hac vice* pending)
                                             Joshua M. Rubin (*pro hac vice* pending)
8                                            **WEISS LAW**
                                             305 Broadway, 7th FI
9                                            New York, NY 10007
                                             Telephone:  (212) 682-3025
10                                           Facsimile:  (212) 682-3010
                                             Email: dkatz@weisslawllp.com
11                                                   msmilow@weisslawllp.com
                                                     jrubin@weisslawllp.com
12

13                                           *Counsel for Plaintiff*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28   VERIFIED STOCKHOLDER DERIVATIVE                    WEISS LAW
     COMPLAINT - 48                                     305 Broadway, 7th Floor
                                                        New York, New York 10007
     Case No. 2:22-cv-497                               Telephone: (212) 682-3025

# VERIFICATION

I, Stephen Bushansky, hereby verify that I have held stock in Athira Pharma, Inc. ("Athira" or the "Company") since the Company's initial public offering. As such, I was a stockholder at the time of the transactions complained of in the Verified Stockholder Derivative Complaint ("Complaint"). I am ready, willing, and able to pursue this stockholder derivative action on behalf of Athira. I have reviewed the allegations in the Complaint, and as to those allegations of which I have personal knowledge, I know those allegations to be true, accurate and complete. As to those allegations of which I do not have personal knowledge, I rely on my counsel and their investigation, and for that reason I believe them to be true. Having received a copy of the foregoing complaint, and having reviewed it with my counsel, I hereby authorize its filing.

*Stephen Bushansky*
Stephen Bushansky (Apr 7, 2022 08:47 EDT)
_____
Stephen Bushansky