THE HONORABLE THOMAS S. ZILLY

1

2

3

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
### AT SEATTLE

4

5  STEPHEN BUSHANSKY, derivatively on behalf of ATHIRA PHARMA, INC.,

6                                     Plaintiff,

7           vs.                                          Case No. 2:22-cv-497-TSZ

8  LEEN KAWAS, KELLY A. ROMANO, JOSEPH      **PLAINTIFFS' UNOPPOSED**
   EDELMAN, JOHN M. FLUKE, JR., JAMES A.    **MOTION FOR PRELIMINARY**
9  JOHNSON, BARBARA KOSACZ, and MARK        **APPROVAL OF DERIVATIVE**
   LITTON,                                   **SETTLEMENT**

10                                   Defendants,         **NOTED ON MOTION CALENDAR:**

11          and                                          **MARCH 18, 2024**

12  ATHIRA PHARMA, INC.,

13                                   Nominal Defendant.

14  THOMAS HOULIHAN, derivatively on behalf of

15  ATHIRA PHARMA, INC.,

16                                     Plaintiff,

17          vs.

18  LEEN H. KAWAS, KELLY A. ROMANO,          Case No. 2:22-cv-620-TSZ
    JOSEPH EDELMAN, JOHN M. FLUKE, JR.,
19  JAMES A. JOHNSON, BARBARA KOSACZ,
    MARK LITTON, and KEVIN CHURCH,
20
                                     Defendants,
21
            and
22
    ATHIRA PHARMA, INC.,
23
                                     Nominal Defendant.
24

25

26

27

28  PLAINTIFFS' UNOPPOSED MOTION       **WEISS LAW**
    FOR PRELIMINARY APPROVAL OF        305 Broadway, 7th Floor
    DERIVATIVE SETTLEMENT              New York, New York 10007
                                       Telephone: (212) 682-3025
    LEAD CASE NO. 2:22-cv-497-TSZ

1

2

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................................ii

I.      INTRODUCTION ...................................................................................................... 1

II.     FACTUAL BACKGROUND ..................................................................................... 3

        A.      Summary Of Allegations .............................................................................. 3

        B.      Procedural History ........................................................................................ 5

        C.      Settlement Negotiations ................................................................................ 6

III.    THE SETTLEMENT TERMS.................................................................................... 8

IV.     LEGAL STANDARDS ............................................................................................ 10

V.      THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL ......... 11

        A.      The Settlement Is The Result Of Good-Faith, Arm's-Length Negotiations .............. 11

        B.      The Settlement Is Well Within The Range Of Possible Approval ............... 13

        C.      The Risks And Expenses Of Protracted Litigation Support Settlement .................. 18

VI.     THE SEPARATELY NEGOTIATED FEE AND EXPENSE AMOUNT IS FAIR AND
        REASONABLE ........................................................................................................ 20

VII.    THE PROPOSED NOTICE SATISFIES RULE 23.1 AND AFFORDS DUE PROCESS....... 21

VIII.   PROPOSED SCHEDULE ........................................................................................ 22

IX.     CONCLUSION......................................................................................................... 23

PLAINTIFFS' UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF
DERIVATIVE SETTLEMENT

LEAD CASE NO. 2:22-cv-497-TSZ                    i

**WEISS LAW**
305 Broadway, 7th Floor
New York, New York 10007
Telephone: (212) 682-3025

# TABLE OF AUTHORITIES

**Case**                                                                              **Page(s)**

*Arace v. Thompson*,
   No. 08 Civ. 7905(DC),
   2011 U.S. Dist. LEXIS 93105 (S.D.N.Y. Aug. 17, 2011) ........................................ 22

*Athan v. United States Steel Corp.*,
   523 F. Supp. 3d 960 (E.D. Mich. 2021) ................................................................. 20

*Brooks v. Am. Exp. Indus., Inc.*,
   No. 71 Civ. 5128,
   1977 U.S. Dist. LEXIS 17313 (S.D.N.Y. Feb. 17, 1977) .................................... 12-13

*Churchill Vill., LLC v. Gen. Elec.*,
   361 F.3d 566 (9th Cir. 2004) ................................................................................. 22

*Class Plaintiffs v. City of Seattle*,
   955 F.2d 1268 (9th Cir. 1992) ............................................................................... 10

*Cohn v. Nelson*,
   375 F. Supp. 2d 844 (E.D. Mo. 2005) .............................................................. *passim*

*Copeland v. Lane*,
   No. 5:11-cv-01058-EJD,
   2013 U.S. Dist. LEXIS 65742 (N.D. Cal. May 6, 2013) ....................................... 18

*D'Amato v. Deutsche Bank*,
   236 F.3d 78 (2d Cir. 2001) .................................................................................... 13

*Edmonds v. Getty*,
   524 F. Supp. 2d 1267 (W.D. Wash. 2007) ............................................................ 19

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ......................................................................... 10, 14

*HCL Partners Ltd. P'ship v. Leap Wireless Int'l, Inc.*,
   Lead Case No. 07-cv-2245-MMA,
   2010 U.S. Dist. LEXIS 109409 (S.D. Cal. Oct. 14, 2010) .................................... 13

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983) ............................................................................................... 20

*Hunichen v. Atonomi LLC*,
   No. C19-0615-RAJ-SKV,
   2021 U.S. Dist. LEXIS 239909 (W.D. Wash. Nov. 12, 2021) ......................... 10, 11

*In re AOL Time Warner S'holder Derivative Litig.*,
   Master File No. 02 Civ. 6302(SWK),
   2006 U.S. Dist. LEXIS 63260 (S.D.N.Y. Sept. 6, 2006) ...................................... 20

*In re Apple Computer, Inc. Derivative Litig.*,
   No. C 06-4128 JF(HRL),
   2008 U.S. Dist. LEXIS 108195 (N.D. Cal. Nov. 5, 2008) ..................................... 14

PLAINTIFFS' UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF
DERIVATIVE SETTLEMENT

LEAD CASE NO. 2:22-cv-497-TSZ

**WEISS LAW**
305 Broadway, 7th Floor
New York, New York 10007
Telephone: (212) 682-3025

ii

*In re Apple Inc. Device Performance Litig.*,
   No. 5:18-md-02827-EJD,
   2021 U.S. Dist. LEXIS 50550 (N.D. Cal. Mar. 17, 2021) ...................................... 13

*In re Gen. Tire & Rubber Co. Sec. Litig.*,
   726 F.2d 1075 (6th Cir. 1984) ............................................................................ 21

*In re Healthcare Servs. Grp., Inc. Derivative Litig.*,
   No. 2:20-cv-03426-WB,
   2022 U.S. Dist. LEXIS 134005 (E.D. Pa. July 27, 2022) ...................................... 22

*In re Hewlett-Packard Co. S'holder Derivative Litig.*,
   716 F. App'x 603 (9th Cir. 2017) .................................................................... 14, 22

*In re Intel Corp. Derivative Litig.*,
   Consol. No. 09-867-JJF,
   2010 U.S. Dist. LEXIS 74661 (D. Del. July 22, 2010) ...................................... 19-20

*In re NVIDIA Corp. Derivative Litig.*,
   Master File No. C-06-06110-SBA(JCS),
   2008 U.S. Dist. LEXIS 117351 (N.D. Cal. Dec. 19, 2008) ................................ 10, 14

*In re Online DVD-Rental Antitrust Litig.*,
   779 F.3d 934 (9th Cir. 2015) ............................................................................ 21

*In re OSI Sys., Inc. Derivative Litig.*,
   No. CV-14-2910-MWF,
   2017 U.S. Dist. LEXIS 221033 (C.D. Cal. May 2, 2017) ...................................... 13

*In re Pac. Enters. Sec. Litig.*,
   47 F.3d 373 (9th Cir. 1995) ...................................................... 10, 11, 18, 19

*In re Pfizer Inc. S'holder Derivative Litig.*,
   780 F. Supp. 2d 336 (S.D.N.Y. 2011) ................................................................ 14

*In re Pinterest Derivative Litig.*,
   No. C 20-08331-WHA,
   2022 U.S. Dist. LEXIS 103528 (N.D. Cal. June 9, 2022) ...................................... 13

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
   19 F.3d 1291 (9th Cir. 1994) ............................................................................ 21

*Ingram v. Coca-Cola Co.*,
   200 F.R.D. 685 (N.D. Ga. 2001) ...................................................................... 21

*Johnson v. Hui*,
   752 F. Supp. 909 (N.D. Cal. 1990) .................................................................. 19

*Kamen v. Kemper Fin. Servs. Inc.*,
   500 U.S. 90 (1991) ........................................................................................ 18

*Lane v. Facebook, Inc.*,
   696 F.3d 811 (9th Cir. 2012) ............................................................................ 11

PLAINTIFFS' UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF
DERIVATIVE SETTLEMENT

**WEISS LAW**
305 Broadway, 7th Floor
New York, New York 10007
Telephone: (212) 682-3025

Lead Case No. 2:22-cv-497-TSZ                         iii

*Lewis v. Anderson*,
   692 F.2d 1267 (9th Cir. 1982) ............................................................ 15, 19

*Lewis v. Newman*,
   59 F.R.D. 525 (S.D.N.Y. 1973) ................................................................ 18

*Lloyd v. Gupta*,
   No. 15-cv-04183-MEJ,
   2016 U.S. Dist. LEXIS 96166 (N.D. Cal. July 22, 2016) .................................. 10-11

*Maher v. Zapata Corp.*,
   714 F.2d 436 (5th Cir. 1983) ........................................................ 14, 19, 21

*Mills v. Elec. Auto-Lite Co.*,
   396 U.S. 375 (1970) ................................................................... 14, 20

*Officers for Justice v. Civil Serv. Comm'n*,
   688 F.2d 615 (9th Cir. 1982) ........................................................... 10, 18

*Randall v. Integrated Commc'n Serv.*,
   No. 3:20-cv-05438-DGE,
   2023 U.S. Dist. LEXIS 157658 (W.D. Wash. Sept. 6, 2023) ........................ 11, 13, 21

*Rodriguez v. Evergreen Prof'l Recoveries, Inc.*,
   No. C19-0184-JCC,
   2021 U.S. Dist. LEXIS 15560 (W.D. Wash. Jan. 27, 2021) ................................. 21

*Rodriguez v. West Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) ............................................................. 11

*Satchell v. Fed. Express Corp.*,
   No. C03-2659-SI,
   2007 U.S. Dist. LEXIS 99066 (N.D. Cal. Apr. 13, 2007) ................................... 13

*Spiegel v. Buntrock*,
   571 A.2d 767 (Del. 1990) ................................................................. 18

*Stedman v. Progressive Direct Ins. Co.*,
   No. 2:18-cv-1254,
   2023 U.S. Dist. LEXIS 164860 (W.D. Wash. Sept. 14, 2023) ........................... 10, 21

*U.S. v. McInnes*,
   556 F.2d 436 (9th Cir. 1977) ............................................................. 10

*Villanueva v. Morpho Detection, Inc.*,
   No. 13-cv-05390-HSG,
   2015 U.S. Dist. LEXIS 106183 (N.D. Cal. Aug. 12, 2015) .................................. 11

*Wehlage v. Evergreen at Arvin LLC*,
   No. 4:10-cv-05839-CW,
   2012 U.S. Dist. LEXIS 144152 (N.D. Cal. 2012) .......................................... 21

*Zapata Corp. v. Maldonado*,
   430 A.2d 779 (Del. 1981) ............................................................. 13, 19

PLAINTIFFS' UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF
DERIVATIVE SETTLEMENT

**WEISS LAW**
305 Broadway, 7th Floor
New York, New York 10007
Telephone: (212) 682-3025

Lead Case No. 2:22-cv-497-TSZ                          iv

STATUTES & REGULATIONS

Federal Rules of Civil Procedure

Fed. R. Civ. P. 23.1 ..................................................................................... 3, 11, 18, 21

Securities Exchange Act of 1934

Section 14(a), 15 U.S.C. § 78n(a)(1) .................................................................................. 5

PLAINTIFFS' UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF
DERIVATIVE SETTLEMENT

Lead Case No. 2:22-cv-497-TSZ                    v

**WEISS LAW**
305 Broadway, 7th Floor
New York, New York 10007
Telephone: (212) 682-3025

# I.     INTRODUCTION

Plaintiffs Stephen Bushansky ("Bushansky") and Thomas Houlihan ("Houlihan") are pleased to present for preliminary approval the proposed Settlement as set forth in the Stipulation of Settlement and Release Agreement, dated March 15, 2024 (the "Stipulation" or "Stip.").[1] If approved, the Settlement would fully resolve this consolidated shareholder derivative action brought for the benefit of Athira Pharma, Inc. ("Athira" or the "Company") and two separate litigation demands made upon the Athira Board of Directors ("Board") by Athira shareholders Ali Soofi ("Soofi") and Travis Vrana ("Vrana") alleging similar conduct as the consolidated derivative action.

The Settlement is the product of hard-fought, arm's-length negotiations by experienced and knowledgeable counsel with the assistance of Jed Melnick, Esq. (the "Mediator") at JAMS ADR ("JAMS"), a well-respected neutral with extensive experience mediating complex shareholder disputes. The substantive consideration for the Settlement takes the form of material Governance Reforms carefully tailored to increase the Company's focus and oversight on its operations and public reporting designed to prevent recurrence of the same or similar alleged misconduct and corporate injuries at issue in the Derivative Actions. While the Defendants deny any wrongdoing, Stip. at § III, the Parties agree that the Governance Reforms confer substantial benefits upon, and serve the best interests of, Athira and its stockholders, the value of which falls well within the range that might be approved as fair, reasonable and adequate, particularly in light of the significant costs, risks, delays, and management distraction that would be entailed in any attempt to secure a superior recovery through further litigation. Stip. at 6-7.

Plaintiffs allege that Athira's directors and officers breached their fiduciary duties by failing to disclose that published research related to Athira's then-lead drug candidate included improperly altered study images. When the truth was ultimately disclosed after a Special Committee

---

[1] Unless otherwise defined, capitalized terms will have the same meaning as set forth in the Stipulation attached as Exhibit A to the Declaration of David C. Katz in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Derivative Settlement ("Katz Decl."), all emphasis is added, and internal quotation marks and citations are omitted.

PLAINTIFFS' UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF
DERIVATIVE SETTLEMENT

LEAD CASE NO. 2:22-cv-497-TSZ                    1

WEISS LAW
305 Broadway, 7th Floor
New York, New York 10007
Telephone: (212) 682-3025

investigation, Athira's President and CEO resigned, Athira's stock price dropped substantially, securities class action lawsuits were filed against the Company, subsequently settled for $10 million, subject to Court approval, and the Company's reputation was materially damaged.

Pursuant to the Settlement, Athira will adopt, implement, and maintain for at least five years, a suite of policy commitments and related corporate governance and oversight reforms designed to address and prevent similar alleged misconduct and corporate injury, including, *inter alia*: the creation of a new senior management officer—the Chief Compliance Officer; the creation of a Board-level Compliance Committee; the enhancement of the Audit Committee Charter; the enhancement of the management-level Disclosure Committee Charter; and the enhancement of the Company's newly enacted Compensation Recovery Policy.

The Governance Reforms directly and comprehensively address the alleged lapses in governance, monitoring, internal controls, oversight, and disclosure that Plaintiffs contend permitted the alleged wrongdoing and corporate injury to occur, significantly reducing the likelihood of recurrence and laying the foundation necessary to restore and maintain Athira's reputation and investor confidence in the integrity of Athira's corporate disclosures. The Settlement was approved by the Shareholder Demand & Derivative Lawsuits Committee of Athira's Board of Directors (the "Committee"), with the assistance of independent counsel and in the exercise of its business judgment, and the Athira Board, in the exercise of its business judgment and upon the recommendation of the Committee.

At the preliminary approval stage, the Court need only determine that the proposed Settlement falls within a range that might be found fair, reasonable, and adequate, such that notice may be provided to Current Athira Stockholders and the Settlement Hearing scheduled for consideration of final settlement approval. The Settlement plainly meets this standard. The Settlement guarantees substantial benefits that will confer significant economic value over the course of many years, and is fair and reasonable, particularly balanced against the costs, risks, delay, and disruption that would be entailed in continued litigation against corporate fiduciaries in pursuit of

PLAINTIFFS' UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF
DERIVATIVE SETTLEMENT

Lead Case No. 2:22-cv-497-TSZ                    2

WEISS LAW
305 Broadway, 7th Floor
New York, New York 10007
Telephone: (212) 682-3025

the possibility that a materially better result might be achieved. Moreover, the Settlement process was fair and not collusive. The Settlement is the product of three mediation sessions and additional months of hard-fought negotiations among the parties, each represented by experienced, well-informed counsel, facilitated by a respected neutral familiar with the relevant law and the particular subject matter. The proposed form and manner of notice and the schedule for consideration of final approval meet applicable standards, as they inform Current Athira Stockholders of the Settlement's essential terms and afford a fair opportunity for comment and objection.

Accordingly, for the reasons set forth herein and in the record, Plaintiffs respectfully request that the Court (1) enter the Preliminary Approval Order annexed to the Stipulation as Exhibit A granting preliminary approval of the proposed Settlement as being fair, reasonable, and adequate; (2) approve the form and manner of providing Notice to Current Athira Stockholders annexed to the Stipulation as Exhibits B and C, and find that such Notice constitutes the best notice practicable under the circumstances, constitutes due and sufficient notice of the matters set forth in the Notice to all Persons entitled to receive notice, and fully satisfies the requirements of due process, Fed. R. Civ. P. 23.1, and all other applicable laws and rules; and (3) schedule a Settlement Hearing on a date at least forty-five (45) calendar days after entry of an Order preliminarily approving the Settlement in order to determine: (i) whether the Settlement should be approved as fair, reasonable, and adequate; and (ii) whether a final judgment should be entered that is in substance materially the same as annexed to the Stipulation as Exhibit D, dismissing with prejudice the Derivative Actions.

## II.    FACTUAL BACKGROUND

### A.    Summary Of Allegations

Nominal defendant Athira is a late clinical-stage biopharmaceutical company focused on developing small molecules to treat a range of neurological and other diseases. ¶¶2, 41.[2] Athira is a

---

[2] Unless otherwise noted, all references to "¶__" or "¶¶__" are to the Verified Stockholder Derivative Complaint filed by Plaintiff Stephen Bushansky in Lead Case No. 2:22-cv-497-TSZ on April 14, 2022 (ECF No. 1).

PLAINTIFFS' UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF
DERIVATIVE SETTLEMENT

Lead Case No. 2:22-cv-497-TSZ          3

**WEISS LAW**
305 Broadway, 7th Floor
New York, New York 10007
Telephone: (212) 682-3025

1    Delaware corporation, and its common stock has traded on the Nasdaq Stock Market since the

2    Company's September 18, 2020 Initial Public Offering ("IPO") of common stock. ¶¶3, 16, 45.

3         On June 17, 2021, the Company announced that the Athira Board had formed a Special

4    Committee to review alleged misconduct by Leen Kawas, Ph.D. ("Dr. Kawas"), Athira's President,

5    CEO, and Board member, that occurred when Dr. Kawas was a doctoral student at Washington State

6    University. ¶¶4, 5, 67. The Special Committee review was reported to center on allegations that Dr.

7    Kawas had improperly altered study images in published research related to Athira's then-lead drug

8    candidate known as Dihexa or ATH-1017, a potential treatment for neurological diseases such as

9    Alzheimer's and Parkinson's. ¶¶69-72. Athira's common stock price spiraled down by 39% after

10   these disclosures were made. ¶74.

11        Four months later, on October 21, 2021, Athira announced that its Special Committee

12   concluded that study images were altered in at least four research papers pertaining to Dihexa. ¶¶6,

13   76. The Company also announced that, effective October 18, 2021, Dr. Kawas resigned as Athira's

14   President, CEO, and Board member. ¶¶6, 79.

15        In the wake of these disclosures, securities class action lawsuits were filed in the United

16   States District Court for the Western District of Washington against Athira, Dr. Kawas, certain of

17   the Company's directors and officers, and the IPO's underwriters for alleged material

18   misrepresentations and omissions in registration statements for the Company's IPO and secondary

19   offering of common stock consolidated under the caption *Nacif, et al. v. Athira Pharma Inc., et al.*,

20   No. 2:21-cv-00861-TSZ (W.D. Wash.) (the "Securities Class Action"). ¶¶7, 88. On July 29, 2022,

21   the Court granted in part and denied in part a motion to dismiss in the Securities Class Action. *See*

22   Securities Class Action, ECF No. 89. On February 15, 2024, the Court granted in part and deferred

23   in part a motion for preliminary approval of a proposed settlement of the Securities Class Action on

24   the basis of a payment of $10 million. *Id.*, ECF No. 128.

25

26

27

28   PLAINTIFFS' UNOPPOSED MOTION          WEISS LAW
     FOR PRELIMINARY APPROVAL OF           305 Broadway, 7th Floor
     DERIVATIVE SETTLEMENT                 New York, New York 10007
                                           Telephone: (212) 682-3025
     Lead Case No. 2:22-cv-497-TSZ          4

### B.     Procedural History

On April 14, 2022, Plaintiff Bushansky filed a Verified Stockholder Derivative Complaint on behalf of Athira, captioned *Bushansky v. Kawas, et al.*, Case No. 2:22-cv-497-TSZ (W.D. Wash.) (the "*Bushansky* Action"), asserting claims against defendants Kawas, Kelly A. Romano ("Romano"), Joseph Edelman ("Edelman"), John M. Fluke Jr. ("Fluke"), James A. Johnson ("Johnson"), Barbara Kosacz ("Koscaz"), and Mark Litton ("Litton") for: (i) violations of Section 14(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78n(a)(1) and SEC Rule 14a-9 promulgated thereunder; (ii) breach of fiduciary duty; (iii) contribution and indemnification; (iv) aiding and abetting; and (v) waste of corporate assets. The *Bushansky* Action also sought declaratory relief, costs, and disbursements, and the institution of corporate governance reforms.

On May 6, 2022, Plaintiff Houlihan filed a Verified Stockholder Derivative Complaint on behalf of Athira, captioned *Houlihan v. Kawas, et al.*, Case No. 2:22-cv-620-TSZ (W.D. Wash.) (the "*Houlihan* Action"), asserting claims against defendants Kawas, Romano, Edelman, Fluke, Johnson and Kosacz for: (i) violations of Section 14(a) of the Exchange Act, 15 U.S.C. § 78n(a)(1) and SEC Rule 14a-9 promulgated thereunder; and against defendants Kawas, Romano, Edelman, Fluke, Johnson, Kosacz and Kevin Church for: (ii) breach of fiduciary duty, (iii) gross mismanagement; (iv) breach of the duty of loyalty; (v) contribution; (vi) breach of the duty of candor; and (vii) indemnification. The *Houlihan* Action also sought declaratory relief, costs, and disbursements, and the institution of corporate governance reforms.

On May 18, 2022, Plaintiff Bushansky, Plaintiff Houlihan, and the Defendants filed a stipulated Motion and proposed Order consolidating the *Bushansky* Action and *Houlihan* Action, appointing Co-Lead Counsel, and staying all proceedings and deadlines until the Court decided the motion to dismiss in the related Securities Class Action. On May 26, 2022, the Court entered an Order granting the stipulated motion, consolidating the *Bushansky* Action and *Houlihan* Action for all purposes under Case No. 2:22-cv-497-TSZ, appointing Weiss Law and Slyne Law LLC as

PLAINTIFFS' UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF
DERIVATIVE SETTLEMENT

Lead Case No. 2:22-cv-497-TSZ                5

WEISS LAW
305 Broadway, 7th Floor
New York, New York 10007
Telephone: (212) 682-3025

Plaintiffs' Co-Lead Counsel, and staying the consolidated derivative action until further order of the Court.

On November 17, 2022, Athira stockholder Ali Soofi, served a stockholder litigation demand upon the Athira Board requesting that it investigate and initiate litigation against Defendant Kawas as well as any other responsible Athira directors and/or officers for breach of fiduciary duty, corporate waste, unjust enrichment, contribution, indemnification, and all other appropriate claims.

## C. Settlement Negotiations

In January 2023, Plaintiffs Bushansky and Houlihan, and the Defendants agreed to mediate the claims asserted in the consolidated derivative action and on January 19, 2023, participated in a conference call with JAMS New York to agree on mediation protocols and procedures. On February 9, 2023, counsel for Plaintiffs Bushansky and Houlihan conveyed to Defendants' Counsel a detailed settlement demand, including a suite of proposed corporate governance reforms. On February 14, 2023, Athira's counsel responded by letter to that settlement demand. On February 16, 2023, the parties to the *Bushansky* Action and *Houlihan* Action attended a full-day, in-person mediation session at JAMS in New York with the Mediator, who was concurrently serving as the mediator in the Securities Class Action. The February 16, 2023 mediation session ended without reaching agreement.

On March 20, 2023, counsel for stockholder Ali Soofi served Defendants' Counsel a settlement demand, including a detailed analysis and proposed corporate governance reforms. After Mr. Soofi made and served his settlement demand, Plaintiffs Bushansky and Houlihan, and Ali Soofi agreed to work together cooperatively to ensure the best result for Athira and its stockholders.

On March 31, 2023, the Athira Board formed a Shareholder Demand & Derivative Lawsuits Committee comprised of directors Michael Panzara (Chair) and Grant Pickering, two independent directors who are not members of Athira's management, defendants in the Securities Class Action, or defendants or alleged wrongdoers in the Derivative Actions, and who are not alleged to have been involved in any way in the underlying alleged misconduct. The Committee was delegated the

PLAINTIFFS' UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF
DERIVATIVE SETTLEMENT

Lead Case No. 2:22-cv-497-TSZ                6

WEISS LAW
305 Broadway, 7th Floor
New York, New York 10007
Telephone: (212) 682-3025

responsibility to oversee settlement negotiations of the aforementioned Derivative Actions and to provide a recommendation to the Board with respect thereto.

Plaintiffs Bushansky and Houlihan, and Mr. Soofi, on the one hand, and the Defendants, on the other hand, exchanged several written demands and responses after the first mediation session. When negotiations reached an impasse, they agreed to attend a second mediation session held on May 18, 2023. Plaintiffs Bushansky and Houlihan, and Mr. Soofi, on the one hand, and Defendants, on the other hand, engaged in several hours of frank discussion of the strengths and weaknesses of the claims and defenses at issue in the mediation. Ultimately, with the assistance of the Mediator, these parties reached agreement as to the principal terms of Settlement. On May 24, 2023, a term sheet was executed by Plaintiffs Bushansky and Houlihan, Mr. Soofi, and Defendants, setting forth the Governance Reforms, attached as Exhibits 1-4 to the Stipulation, to be enacted as a result of the proposed Settlement.

Plaintiffs Bushansky and Houlihan, and Mr. Soofi, on the one hand, and Defendants, on the other hand, did not discuss the payment of attorney fees prior to reaching the principal terms of the Settlement and executing the term sheet. Thereafter, Plaintiffs Bushansky and Houlihan, and Mr. Soofi, on the one hand, and Athira, on the other hand, commenced negotiations regarding attorney fees. When those negotiations reached an impasse, they agreed to a third session with the Mediator, which was held on September 11, 2023.

At that mediation session, Plaintiffs Bushansky and Houlihan, and Mr. Soofi, on the one hand, and Athira, on the other hand, negotiated in good faith but did not reach an agreement on the attorneys' fees. Plaintiffs Bushansky and Houlihan, and Mr. Soofi on the one hand, and Athira, on the other hand, continued to negotiate thereafter, with the assistance of the Mediator and ultimately reached an agreement on the Fee and Expense Amount, subject to ¶ V(D) of the Stipulation and approval by the Court. The agreed upon Fee and Expense Amount was approved by the Committee, with the assistance of independent counsel and in the exercise of its business judgment, and the

PLAINTIFFS' UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF
DERIVATIVE SETTLEMENT

Lead Case No. 2:22-cv-497-TSZ                7

WEISS LAW
305 Broadway, 7th Floor
New York, New York 10007
Telephone: (212) 682-3025

Athira Board of Directors, in the exercise of its business judgment and upon the recommendation of the Committee.

## III.    THE SETTLEMENT TERMS

The Settlement commits the Athira Board to the adoption, implementation, and/or maintenance of the Governance Reforms for at least five (5) years. Stip. at ¶ V(B)(1). The Governance Reforms are designed to prevent the reoccurrence of the alleged misconduct at issue in the Derivative Actions, including the decision-making processes and oversight lapses Plaintiffs contend damaged Athira. In sum, Athira shall:

- Create a new senior management officer—the Chief Compliance Officer—to manage and oversee the Company's ethics and compliance program, implement procedures for monitoring and evaluating the program's performance, and communicate with and inform the newly-created Compliance Committee and the Audit Committee regarding progress towards meeting program goals.

- Create a Compliance Committee of the Board of Directors, consisting of at least two independent directors, to oversee compliance with healthcare, legal and regulatory requirements; the safety and effectiveness of the Company's products and product candidates in clinical and pre-clinical development; the integrity of scientific research and accuracy and completeness of the Company's scientific publications; the qualification and performance of candidates in clinical and preclinical development;; and the qualification and performance of contract research and contract manufacturing organizations.

- Enhance the Audit Committee Charter to include oversight responsibilities relating to compliance with applicable law not already delegated to the newly created Compliance Committee, compliance risk analysis responsibilities, annual reporting from the newly-created Chief Compliance Officer

PLAINTIFFS' UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF
DERIVATIVE SETTLEMENT

Lead Case No. 2:22-cv-497-TSZ                    8

WEISS LAW
305 Broadway, 7th Floor
New York, New York 10007
Telephone: (212) 682-3025

concerning the design, implementation, and continuing operation of the Company's Enterprise Risk Management Program, periodic reports concerning risk management aspects of strategic initiatives of the Company and developments affecting the Company's business, operations, and affairs, and quarterly reporting pursuant to an annual agenda that includes substantive reports related to compliance matters; matters of implementation of existing compliance programs; monitoring and adjustment of such programs; the Company's processes for receiving and investigating compliance or ethics-related complaints; exceptions reporting; the allocation of resources to the compliance organization and compliance-related initiatives; and, at least annually, a strategic review of emerging trends (external or specific to the Company) affecting the Company's regulatory compliance and, as appropriate, plans of action to respond to such trends from a preventive compliance standpoint.

- Enhance the management-level Disclosure Committee Charter to require that the Chief Operating Officer, General Counsel and Chief Compliance Officer, Chief Medical Officer, and Chief Scientific Officer be members of the committee and to establish the responsibility of the committee to evaluate the effectiveness of the disclosure controls policies and procedures on at least an annual basis and amend the same as necessary to conform to best practices.

- Enhance the Company's newly enacted Compensation Recovery Policy to include provisions for the recovery of executive compensation in the event of a Retraction of Scientific Results.

Athira, its Board, and the Committee acknowledge that Plaintiffs' efforts, including investigating, preparing, commencing, and prosecuting the Derivative Actions, were a material cause for the adoption, implementation, and maintenance of the Governance Reforms. Further,

PLAINTIFFS' UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF
DERIVATIVE SETTLEMENT

Lead Case No. 2:22-cv-497-TSZ

WEISS LAW
305 Broadway, 7th Floor
New York, New York 10007
Telephone: (212) 682-3025

Athira, its Board, and the Committee acknowledge and agree that the Governance Reforms confer substantial benefits upon, and serve the best interests of, Athira and its stockholders. Stip. at ¶ V (B) (1-2).

## IV.   LEGAL STANDARDS

Federal Rule of Civil Procedure ("Rule") 23.1(c) provides that "[a] derivative action may be settled ... only with the court's approval." There is a strong judicial policy favoring settlement. *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 635 (9th Cir. 1982) ("settlement process [is] favored in the law"); *U.S. v. McInnes*, 556 F.2d 436, 441 (9th Cir. 1977) ("there is an overriding public interest in settling and quieting litigation"); *Stedman v. Progressive Direct Ins. Co.*, No. 2:18-cv-1254, 2023 U.S. Dist. LEXIS 164860, at *7 (W.D. Wash. Sept. 14, 2023). Settlement of shareholder derivative actions is particularly favored because such litigation is "notoriously difficult and unpredictable." *In re NVIDIA Corp. Derivative Litig.*, Master File No. C-06-06110-SBA (JCS), 2008 U.S. Dist. LEXIS 117351, at *7 (N.D. Cal. Dec. 19, 2008).

The approval of a proposed derivative settlement is a two-step process—preliminary approval followed by a final approval hearing. *Hunichen v. Atonomi LLC*, No. C19-0615-RAJ-SKV, 2021 U.S. Dist. LEXIS 239909, at **11-12 (W.D. Wash. Nov. 12, 2021). At the preliminary approval stage, the court's evaluation of proposed settlement terms is "limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable, and adequate to all concerned." *Officers for Justice*, 688 F.2d at 625; *accord Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998); *Hunichen*, 2021 U.S. Dist. LEXIS 239909, at *3 (holding that Court need only determine whether a proposed settlement is "within the range of possible approval" as fair, reasonable, and adequate and that notice should be sent to shareholders); *Lloyd v. Gupta*, No. 15-cv-04183-MEJ, 2016 U.S. Dist. LEXIS 96166, at *11 (N.D. Cal. July 22, 2016) (factors for preliminary approval include consideration of the nature of the settlement process

PLAINTIFFS' UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF
DERIVATIVE SETTLEMENT

Lead Case No. 2:22-cv-497-TSZ                    10

**WEISS LAW**
305 Broadway, 7th Floor
New York, New York 10007
Telephone: (212) 682-3025

and whether the terms of the settlement are in the best interests of the company and its shareholders).

"Preliminary approval amounts to a finding that the terms of the proposed settlement warrant consideration by [Current Athira Stockholders] and a full examination at a final hearing." *Hunichen*, 2021 U.S. Dist. LEXIS 239909, at *3.

Following preliminary approval and notice, the Court reviews the fairness of the settlement at a final fairness hearing and, if appropriate, renders a finding that the settlement is "fair, reasonable, and adequate…." Fed. R. Civ. P. 23(e)(2); *see also Lane v. Facebook, Inc.*, 696 F.3d 811, 818 (9th Cir. 2012) .

## V.    THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL

### A.    The Settlement Is The Result Of Good-Faith, Arm's-Length Negotiations

Settlements achieved through extensive arm's-length negotiations conducted by experienced, well-informed counsel enjoy a "presumption of fairness." *Randall v. Integrated Commc'n Serv.*, No. 3:20-cv-05438-DGE, 2023 U.S. Dist. LEXIS 157658, at *10 (W.D. Wash. Sept. 6, 2023); *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution …."); *Villanueva v. Morpho Detection, Inc.*, No. 13-cv-05390-HSG, 2015 U.S. Dist. LEXIS 106183, at *14 (N.D. Cal. Aug. 12, 2015). Significant weight is accorded to the parties' belief that the litigation should be settled on the proposed terms, since "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *Pac. Enters.*, 47 F.3d at 378.

Here, the Settlement was negotiated by parties with a firm understanding of the strengths and weaknesses of the claims and defenses, and was reached after many months of hard-fought negotiations, including three mediation sessions with an experienced neutral. Stip. at 4-6. Each of the settling Parties was represented by zealous and able counsel with extensive experience in complex derivative litigation who were fully informed regarding the facts and the law applicable to the core claims and defenses.

PLAINTIFFS' UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF
DERIVATIVE SETTLEMENT

Lead Case No. 2:22-cv-497-TSZ                           11

WEISS LAW
305 Broadway, 7th Floor
New York, New York 10007
Telephone: (212) 682-3025

Plaintiffs' Counsel have thoroughly considered the facts and law underlying the Derivative Actions and have conducted a substantial investigation relating to the claims and the underlying events alleged in the Derivative Actions including, *inter alia*, (i) reviewing and analyzing the Company's filings with the Securities and Exchange Commission; (ii) reviewing and analyzing press releases, announcements, transcripts of conference calls with financial analysts and investors, news articles, media reports, and other publicly available information concerning matters alleged in the Derivative Actions; (iii) reviewing and analyzing documents produced by Athira pursuant to a books-and-records demand under Section 220 of the Delaware General Corporation Law and a confidentiality agreement consisting of Athira board minutes and related materials concerning the facts and circumstances at issue; (iv) reviewing and analyzing the pleadings and other papers filed in the Securities Class Action; (v) reviewing and analyzing the Company's Corporate Governance Guidelines, Code of Business Conduct. and Ethics, and the charters of the Audit Committee and the Nominating and Corporate Governance Committee of Athira's Board of Directors; (vi) researching relevant information available from Washington State University, the U.S. Patent and Trademark Office, and the National Institute of Health concerning the facts and circumstances at issue; (vii) researching, drafting, and filing derivative complaints and preparing and serving a books-and-records inspection demand and litigation demands; (viii) researching the applicable law with respect to the claims asserted in the Derivative Actions and the potential defenses thereto; (ix) preparing detailed settlement demands; and (x) engaging in substantive, protracted settlement discussions with Defendants' counsel under the auspices of the Mediator. *See* Stip. at 5-6.

The Board, including each of its independent, non-employee directors, as well as the members of the Committee, has determined that the Settlement is in the best interests of Athira and its stockholders, and unanimously approved the Settlement. Stip. at § IV. The Board's decision warrants substantial deference. *See Brooks v. Am. Exp. Indus., Inc.*, No. 71 Civ. 5128, 1977 U.S. Dist. LEXIS 17313, at *10 (S.D.N.Y. Feb. 17, 1977) ("[T]he decision of the [] board to approve this

PLAINTIFFS' UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF
DERIVATIVE SETTLEMENT

Lead Case No. 2:22-cv-497-TSZ                    12

**WEISS LAW**
305 Broadway, 7th Floor
New York, New York 10007
Telephone: (212) 682-3025

settlement is appropriately afforded certain deference; it is a business judgment with presumptive validity."); *see generally Zapata Corp. v. Maldonado*, 430 A.2d 779, 782 (Del. 1981).

Moreover, the negotiations were structured to eliminate potential conflicts of interest and to ensure fairness. Athira was represented by experienced counsel at every phase of the negotiations facilitated by an experienced private mediator familiar with the relevant law and the specific subject matter, and attorneys' fees were not addressed until the Parties had reached agreement on the substantive consideration for the Settlement. *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) ("mediator's involvement ... helps to ensure that the proceedings were free of collusion"); *Randall,* 2023 U.S. Dist. LEXIS 157658, at *10 (involvement of an experienced mediator supports a finding of fairness); *In re Apple Inc. Device Performance Litig.*, No. 5:18-md-02827-EJD, 2021 U.S. Dist. LEXIS 50550, at *44 (N.D. Cal. Mar. 17, 2021) ("extensive arm's-length negotiations between experienced counsel, including several in-person mediation sessions and additional negotiations facilitated by" a mediator rules out collusion); *HCL Partners Ltd. P'ship v. Leap Wireless Int'l, Inc.*, Lead Case No. 07-cv-2245-MMA, 2010 U.S. Dist. LEXIS 109409, at **7-8 (S.D. Cal. Oct. 14, 2010) ("negotiations for several months ... and the active involvement of the … mediator ... weighs considerably in favor of concluding this is not a collusive settlement"); *Satchell v. Fed. Express Corp.*, No. C03-2659-SI, 2007 U.S. Dist. LEXIS 99066, at *17 (N.D. Cal. Apr. 13, 2007) ("assistance of an experienced mediator … confirms that the settlement is non-collusive").

## B.     The Settlement Is Well Within The Range Of Possible Approval

"The principal factor to be considered in determining the fairness of a settlement concluding a shareholders' derivative action is the extent of the benefit to be derived from the proposed settlement by the corporation, the real party in interest." *In re Pinterest Derivative Litig.,* No. C 20-08331-WHA, 2022 U.S. Dist. LEXIS 103528, at *6 (N.D. Cal. June 9, 2022)*; In re OSI Sys., Inc. Derivative Litig.*, No. CV-14-2910-MWF, 2017 U.S. Dist. LEXIS 221033, at **5-6 (C.D. Cal. May 2, 2017). Courts may weigh a variety of other factors, including: "the strength of the plaintiffs' case, the risk, expense, complexity, and likely duration of further litigation, the amount offered in

PLAINTIFFS' UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF
DERIVATIVE SETTLEMENT

Lead Case No. 2:22-cv-497-TSZ                    13

WEISS LAW
305 Broadway, 7th Floor
New York, New York 10007
Telephone: (212) 682-3025

settlement, the stage of the proceedings, the experience and views of counsel, and the reaction of class members to the proposed settlement." *In re Hewlett-Packard Co. S'holder Derivative Litig.*, 716 F. App'x 603, 605 (9th Cir. 2017); *Hanlon*, 150 F.3d at 1026.

As the United States Supreme Court has held, "a corporation may receive a 'substantial benefit'" from "corporate therapeutics" that "furnish a benefit to all stockholders," "regardless of whether the benefit is pecuniary in nature." *Mills v. Elec. Auto-Lite Co.,* 396 U.S. 375, 395-96 (1970). In fact, "the effects of the suit on the functioning of the corporation may have a substantially greater economic impact on it, both long- and short-term, than the dollar amount of any likely judgment in its favor...." *Maher v. Zapata Corp.*, 714 F.2d 436, 461 (5th Cir. 1983); *see also NVIDIA*, 2008 U.S. Dist. LEXIS 117351, at *10 ("[S]trong corporate governance is fundamental to the economic well-being and success of a corporation."); *Cohn v. Nelson*, 375 F. Supp. 2d 844, 853 (E.D. Mo. 2005) ("Courts have recognized that corporate governance reforms ... provide valuable benefits to public companies."). Courts routinely approve settlements where corporate governance reforms are designed effectively to prevent the same or similar alleged wrongdoing that precipitated the litigation. *See, e.g.*, *In re Apple Computer, Inc. Derivative Litig.,* No. C 06-4128 JF (HRL), 2008 U.S. Dist. LEXIS 108195, at *10 (N.D. Cal. Nov. 5, 2008); *Lewis v. Anderson*, 692 F.2d 1267, 1271 (9th Cir. 1982) (finding corporate governance reforms "sufficiently beneficial" to warrant settlement approval and fee award); *In re Pfizer Inc. S'holder Derivative Litig.*, 780 F. Supp. 2d 336, 342 (S.D.N.Y. 2011) (approving settlement where therapeutics "significantly improved institutional structure for detecting and rectifying the types of wrongdoing that have, in recent years, caused extensive harm to the company").

The proposed Settlement provides material reforms to Athira's corporate policies directly aimed at strengthening internal controls and governance practices so that, among other things, the Board and the Company's executive officers may adequately oversee and monitor Athira's operations and public reporting, including the research, development, and production of Athira's drug candidates to ensure scientific integrity and accuracy and compliance with all ethical, legal,

PLAINTIFFS' UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF
DERIVATIVE SETTLEMENT

Lead Case No. 2:22-cv-497-TSZ                    14

WEISS LAW
305 Broadway, 7th Floor
New York, New York 10007
Telephone: (212) 682-3025

1 and regulatory requirements and thereby avoid further damage as resulted from the alleged

2 misconduct in the Derivative Actions.

3       Starting at the top, the newly created Chief Compliance Officer will manage and oversee the

4 Company's ethics and compliance program, implement procedures for monitoring and evaluating

5 the program's performance, and communicate with and inform the Compliance Committee and

6 Audit Committee regarding progress toward meeting program goals, providing a new layer of

7 controls and governance to help ensure Athira's compliance with legal, regulatory, and ethical

8 requirements.

9       The creation of a Board-level Compliance Committee will assist in monitoring the

10 Company's scientific research activities, including the development of its product candidates in

11 clinical and preclinical development, and compliance with healthcare legal and regulatory

12 requirements. The Compliance Committee will be well-positioned to provide this critical assistance

13 since it will be composed of directors that are familiar with legal and regulatory requirements related

14 to drug development and that understand, and are thus able to evaluate, the Company's fundamental

15 scientific research. The compliance risk analysis to be performed by the Compliance Committee will

16 help ensure that risks like those at issue in the Derivative Actions are elevated to the appropriate

17 personnel, assessed carefully and properly, and escalated to the Company's executive officers and

18 Board. The Compliance Committee's reporting to the full Board ensures that all of the Company's

19 directors receive the highly material information necessary to effectively oversee and monitor

20 Athira's compliance issues.

21       The vigorous oversight of the Compliance Committee, with regular reporting from

22 management, the Chief Medical Officer, and Chief Compliance Officer on critical matters, will not

23 only help to prevent the recurrence of the alleged misconduct at issue here, but will lay the

24 groundwork for increased investor confidence by making clear that the Company will take swift and

25 decisive action when faced with circumstances like those at issue in the Derivative Actions. Further,

26 the formation of a vigorous, well-staffed Compliance Committee, as well as the creation of the Chief

27

28 PLAINTIFFS' UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF
DERIVATIVE SETTLEMENT

**WEISS LAW**
305 Broadway, 7th Floor
New York, New York 10007
Telephone: (212) 682-3025

1  Compliance Officer position, will signal Athira's commitment to scientific integrity and accuracy in

2  reporting, as well as compliance with legal, regulatory, and ethical obligations.

3      The Audit Committee's new obligation to interface with the newly created Compliance

4  Committee and Chief Compliance Officer ensures that the Audit Committee will be able to

5  appropriately oversee and monitor material risks facing the Company. The amendment of the Audit

6  Committee's Charter to require that the committee, at least annually, conduct a strategic review of

7  emerging trends affecting the Company's regulatory compliance establishes a robust framework for

8  Athira to identify issues and take any related responsive action needed.

9      The Governance Reforms substantially enhance the duties of Athira's management-level

10  Disclosure Committee to include increased oversight and monitoring of disclosures concerning the

11  Company's drug research and development program. The Disclosure Committee's obligation to

12  review public statements regarding the Company's research in consultation with Athira's Chief

13  Medical Officer and Chief Scientific Officer will help to guarantee the full disclosure of all material

14  information regarding the Company's research and development of drug candidates.

15      Finally, the Governance Reforms provide for the addition of provisions in the Company's

16  new Compensation Recovery Policy relating to the recovery of executive compensation in the event

17  of any future Retraction of Scientific Results (as defined in Exhibit 4 to the Stipulation). These

18  provisions not only provide a potent tool with which to deter future misconduct, but also ensure a

19  robust mechanism to recoup benefits from Athira executives whose misconduct causes economic

20  and reputational harm to the Company in the future.

21      This comprehensive set of Reforms will make it "far less likely [that the corporation will]

22  become subject to long and costly securities litigation in the future, as well as prosecution or

23  investigation by regulators or prosecutors." *Cohn*, 375 F. Supp. 2d at 853. Indeed, the Governance

24  Reforms confer further economic value upon Athira and its stockholders by enacting more rigorous,

25  independent, and effective oversight, which will improve corporate decision-making and execution

26  of key corporate strategies; ensure accurate disclosures; and reduce the costs associated with failure

27

28  PLAINTIFFS' UNOPPOSED MOTION
    FOR PRELIMINARY APPROVAL OF
    DERIVATIVE SETTLEMENT

    Lead Case No. 2:22-cv-497-TSZ                    16

    WEISS LAW
    305 Broadway, 7th Floor
    New York, New York 10007
    Telephone: (212) 682-3025

to comply with disclosure and other legal or regulatory requirements. Moreover, the Governance Reforms confer economic value by laying the foundation necessary to enhance investor confidence in the accuracy of the Company's public disclosures, the integrity of its management, and the independence and effectiveness of the Company's corporate governance and Board oversight and monitoring. Indeed, research by academics and leading business advisors confirms what directors of leading corporations and institutional investors know from experience: Investors pay a premium for stock in companies with strong corporate governance relative to peer companies perceived to have weaker governance because strong governance correlates with long-term value creation.[3]

In sum, the Parties agree that the Governance Reforms provide a substantial benefit to Athira and its stockholders. Athira has agreed to maintain the Governance Reforms for a minimum of five years, which provides ample time to ensure that the Governance Reforms become embedded in the Company's policies, practices, and corporate culture, thus protecting against discontinuation of these Governance Reforms following the five-year period. *See Cohn*, 375 F. Supp. 2d at 850 (finding that corporate governance enhancements committed for at least three years will "provide meaningful ways of avoiding the problems [the company] experienced in the recent past").

---

[3] *See* Katz Decl., Ex. 1 (P. Gompers, J. Ishii & A. Metrick, *Corporate Governance and Equity Prices*, Quarterly Journal of Economics, Vol. 118, No. 1, pp. 107-155, February 2003); *id.,* Ex. 2 (Brown, L. D., Ph.D., & Caylor, M. L., The Correlation between Corporate Governance and Company Performance, Institutional Shareholder Services (2004)); *id.*, Ex. 3 (V. Cunat, M. Gine & M. Guadalupe, *The Vote Is Cast: The Effect of Corporate Governance on Shareholder Value,* Journal of Finance, American Finance Association, vol. 67(5), pp. 1943-1977 (Oct. 2012)). *id.*, Ex. 4 (Lucian A. Bebchuk, Assaf Hamdani, *The Elusive Quest for Global Governance Standards*, 157 U. Pa. L. Rev. 1263, 1266 (2009) ("There is now widespread [acceptance] that adequate investor protection can substantially affect not only the value of public firms and their performance but also the development of capital markets and the growth of the economy as a whole.")); *id.*, Ex. 5 (Robert Adamson*, Corporate Governance, Risk Management and Corporate Social Responsibility in Emerging Markets: A Symbiotic Relationship*, Corporate Governance & Risk Management Blog, Simon Fraser University, Beedie School of Business (Mar. 22, 2011) ("Investors, particularly large institutional investors, are … focused on corporate governance[.]… Paying attention to corporate governance issues is becoming an important part of investment decisions[.]")).

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF DERIVATIVE SETTLEMENT

Lead Case No. 2:22-cv-497-TSZ                    17

WEISS LAW
305 Broadway, 7th Floor
New York, New York 10007
Telephone: (212) 682-3025

### C. The Risks And Expenses Of Protracted Litigation Support Settlement

In weighing the Settlement's benefits, courts recognize the limited utility of speculation about the possibility that further litigation might yield a materially better result. "[T]he very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'" *Officers for Justice,* 688 F.2d at 624. "The proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators." *Id*. "In assessing the Settlement, this Court must balance the benefits accorded to [the Company] and its stockholders, and the immediacy and certainty of a substantial recovery for them, against the continuing risks of litigation." *See Cohn*, 375 F. Supp. 2d at 855.

Here, the Settlement's guarantee of benefits described herein far outweighs the possibility that meaningfully superior benefits might be achieved through further litigation, particularly in light of the substantial costs, delays, and management distractions continued litigation would entail, and the substantial risk that further litigation would forfeit the Settlement's benefits and result in no recovery whatsoever.

Although Plaintiffs believe the derivative claims are meritorious, the risks of continued prosecution of the Derivative Actions are substantial. "[T]he odds of winning [a] derivative lawsuit [a]re extremely small." *Pac. Enters.*, 47 F.3d at 378; *Cohn*, 375 F. Supp. 2d at 852; *Lewis v. Newman*, 59 F.R.D. 525, 528 (S.D.N.Y. 1973). The risks begin at the pleadings stage, where demand futility must be pled with particularity as to a majority of Athira's directors. *See* Fed. R. Civ. P. 23.1. The demand futility requirement is satisfied only under "extraordinary conditions …." *Kamen v. Kemper Fin. Servs. Inc.*, 500 U.S. 90, 96 (1991).[4]

---

[4] The Demand faces an even tougher hurdle, because a board that "reject[s] the demand is entitled to the presumption of the business judgment rule …." *Copeland v. Lane*, No. 5:11-cv-01058-EJD, 2013 U.S. Dist. LEXIS 65742, at *23 (N.D. Cal. May 6, 2013); *accord Spiegel v. Buntrock*, 571 A.2d 767, 774 (Del. 1990) (where demand is made, only the decision-making process is in issue, not the merits of the decision, and courts presume the directors "acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company").

PLAINTIFFS' UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF
DERIVATIVE SETTLEMENT

Lead Case No. 2:22-cv-497-TSZ                    18

**WEISS LAW**
305 Broadway, 7th Floor
New York, New York 10007
Telephone: (212) 682-3025

Even if Plaintiffs plead demand futility successfully, the Board here has appointed a Committee, which could, after due and sufficient investigation, determine whether to permit plaintiffs to prosecute the claims or to terminate the litigation. *See, e.g.*, *Edmonds v. Getty*, 524 F. Supp. 2d 1267, 1269 (W.D. Wash. 2007); *Johnson v. Hui*, 752 F. Supp. 909, 913-14 (N.D. Cal. 1990); *accord Zapata*, 430 A.2d at 786 ("We do not think that the interest taint of the board majority is per se a legal bar to the delegation of the board's power to an independent committee composed of disinterested board members … [that may] properly act for the corporation to move to dismiss derivative litigation ….").

If Plaintiffs defeat the recommendation of a Special Litigation Committee, the challenges remain daunting, including, *inter alia*, (i) building a circumstantial case for liability based upon thousands of complex business and financial documents; (ii) proving actual damages in a battle of the experts; (iii) overcoming motions for summary adjudication; (iv) securing a favorable judgment at trial through circumstantial evidence comprised of complex corporate documents and the testimony of predominantly hostile percipient witnesses and contested expert testimony; (v) maintaining that judgment through post-trial motions and appeals; and (vi) enforcing any judgment as might be obtained. These challenges are amplified in shareholder derivative litigation, making it "notoriously difficult and unpredictable." *Maher*, 714 F.2d at 455; *Pac. Enters.*, 47 F.3d at 378 ("derivative lawsuits are rarely successful"). The pre-trial discovery required to overcome these challenges would be exceedingly costly, complex, and time-consuming, encompassing an enormous volume of documents, depositions of myriad fact witnesses, and preparation of expert reports and expert depositions. Moreover, each step of the way, the Defendants would continue in their vigorous defense with the assistance of their highly experienced counsel, Wilson Sonsini, Goodrich & Rosati, P.C., Perkins Coie LLP, and Davis Wright Tremaine LLP.

The Settlement's guarantee of the implementation and maintenance of material Governance Reforms with substantial long-term economic value well demonstrate that the Settlement falls within the range of reasonableness and should be preliminarily approved. *See In re Intel Corp. Derivative*

PLAINTIFFS' UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF
DERIVATIVE SETTLEMENT

Lead Case No. 2:22-cv-497-TSZ                    19

WEISS LAW
305 Broadway, 7th Floor
New York, New York 10007
Telephone: (212) 682-3025

*Litig.*, Consol. No. 09-867-JJF, 2010 U.S. Dist. LEXIS 74661, at **6-7 (D. Del. July 22, 2010) (governance benefits "outweigh the speculative potential of any monetary payment from the relevant insurance policies"); *In re AOL Time Warner S'holder Derivative Litig.*, Master File No. 02 Civ. 6302 (SWK), 2006 U.S. Dist. LEXIS 63260, at *16 (S.D.N.Y. Sept. 6, 2006) (settlement ensures prophylaxis following corporate injury and permits management to restore full attention to business); *Athan v. United States Steel Corp.*, 523 F. Supp. 3d 960, 967-68 (E.D. Mich. 2021) (settlement "fair and reasonable … in relation to the potential risks and uncertain recovery").

## VI.   THE SEPARATELY NEGOTIATED FEE AND EXPENSE AMOUNT IS FAIR AND REASONABLE

Only after negotiating and executing an agreement on the principal terms of the proposed Settlement did Plaintiffs Bushansky and Houlihan, and Mr. Soofi, on the one hand, and Athira, on the other hand, begin to negotiate the amount of attorneys' fees and expenses to be paid to Plaintiffs' Counsel. Stip. at ¶ V(D) (1). As a result of those arm's-length negotiations, Athira has agreed that Plaintiffs' Counsel be paid the Fee and Expense Amount in recognition of the substantial benefits conferred upon the Company. While the Court need not address the agreed Fee and Expense Amount until final approval, it bears mention that the United States Supreme Court has endorsed this type of consensual resolution of attorneys' fees issues in these kinds of cases as the ideal toward which litigants should strive. *See, e.g., Hensley v. Eckerhar*t, 461 U.S. 424, 437 (1983) (negotiated fees strongly preferred) ("[a] request for attorney's fees should not result in a second major litigation"); *Mills,* 396 U.S. at 395 (holding that, under the "substantial benefit" doctrine, counsel who prosecute a shareholders' derivative case which confers benefits on the corporation are entitled to an award of attorneys' fees and costs). The decisions of courts within this District are in accord. *See, e.g.*, *In re Zillow Grp. Inc.*, No. 2:17-cv-01568 (W.D. Wash. Oct. 23, 2017)*, ECF No. 114, at ¶ 11; *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Sinegal, et al.*, No. 2:08-cv-01450-TSZ (W.D. Wash. June 10, 2011), ECF No, 101, at ¶ 10; *In re F5 Networks, Inc. Derivative Litigation*, No. 2:06-cv-00794 (W.D. Wash. June 8, 2006), ECF No. 152, at ¶ 8.

PLAINTIFFS' UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF
DERIVATIVE SETTLEMENT

Lead Case No. 2:22-cv-497-TSZ                    20

WEISS LAW
305 Broadway, 7th Floor
New York, New York 10007
Telephone: (212) 682-3025

Further, the settlement process described above demonstrates the absence of any collusion. *See* Stip. at 3-5. When, as here, there is no evidence of collusion and no detriment to the parties, the Court "should give substantial weight to a negotiated fee amount ...." *Wehlage v. Evergreen at Arvin LLC*, No. 4:10-cv-05839-CW, 2012 U.S. Dist. LEXIS 144152, at *6 (N.D. Cal. 2012); *Ingram v. Coca-Cola Co.,* 200 F.R.D. 685, 695 (N.D. Ga. 2001). The Court is not being called upon to fashion a fee and expense award; rather, it is being asked to determine whether the Fee and Expense Amount agreed to by well-represented parties at arm's-length, and with the assistance of and pursuant to a recommendation by an experienced Mediator, falls within the range of reasonableness. *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1296 (9th Cir. 1994); *Rodriguez v. Evergreen Prof'l Recoveries, Inc.*, No. C19-0184-JCC, 2021 U.S. Dist. LEXIS 15560, at *3 (W.D. Wash. Jan. 27, 2021). Accordingly, Plaintiffs respectfully submit that the separately negotiated Fee and Expense Amount is fair and reasonable given the substantial benefits conferred by the Derivative Actions.

Plaintiffs' Counsel further submit that the Service Awards of $3,000 to each Plaintiff to be drawn from the Fee and Expense Amount should be approved. *See In re Online DVD-Rental Antitrust Litig.,* 779 F.3d 934, 947-48 (9th Cir. 2015); *Stedman,* 2023 U.S. Dist. LEXIS 164860, at **13-14 (service award of $5,000 per plaintiff approved); *Randall,* 2023 U.S. Dist. LEXIS 157658, at **11-12.

## VII.   THE PROPOSED NOTICE SATISFIES RULE 23.1 AND AFFORDS DUE PROCESS

Rule 23.1(c) accords "'wide discretion to the District Court as to the form and content of the notice'" of a derivative settlement to shareholders. *In re Gen. Tire & Rubber Co. Sec. Litig.*, 726 F.2d 1075, 1086 (6th Cir. 1984); *Maher*, 714 F.2d at 450-51. The Stipulation provides that Defendants shall within fourteen (14) business days of the Court's entry of the Preliminary Approval Order: (a) cause a press release to be issued that contains the contents of the Summary Notice; (b) file a Form 8-K with the U.S. Securities and Exchange Commission with a copy of the Summary Notice as an exhibit and a link to a copy of the Stipulation and Long Form Notice, which shall be

PLAINTIFFS' UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF
DERIVATIVE SETTLEMENT

Lead Case No. 2:22-cv-497-TSZ                    21

WEISS LAW
305 Broadway, 7th Floor
New York, New York 10007
Telephone: (212) 682-3025

posted on Athira's Investor Relations webpage through the Effective Date of the Settlement; and (c) cause a copy of the Summary Notice to be published one time in *Investor's Business Daily*. *In re Hewlett-Packard*, 716 F. App'x at 608 (affirming notice procedures which included publication, filing a Form 8-K with the SEC, and posting on the company's website); *In re Healthcare Servs. Grp., Inc. Derivative Litig.*, No. 2:20-cv-03426-WB, 2022 U.S. Dist. LEXIS 134005, at *31 (E.D. Pa. July 27, 2022) (notice provided by filing a Form 8-K with the SEC and posting on the Company's investor relations webpage held to be adequate to satisfy due process); *Arace v. Thompson*, No. 08 Civ. 7905 (DC), 2011 U.S. Dist. LEXIS 93105, at **10-11 (S.D.N.Y. Aug. 17, 2011) (finding notice published in *IBD* adequate to place absent shareholders on constructive notice of the settlement).

"Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004). Here, the proposed Notice is accurate and informative. The Notice provides information on the terms and provisions of the Settlement, including the Fee and Expense Amount and Service Awards; the benefits the Settlement provides to the Company and its stockholders; the date, time, and place of the Settlement Hearing; the procedure and deadlines for objecting; and how and from whom to request more information.

## VIII.  PROPOSED SCHEDULE

As part of the Preliminary Approval Order, Plaintiffs propose the following schedule:

| Event. | Timing. |
| --- | --- |
| Athira posts the Long Form Notice and Stipulation on its Investor Relations webpage | Within 14 business days after entry of the Preliminary Approval Order |
| Athira issues a press release announcing the Settlement and referring Current Athira Stockholders to its Investor Relations webpage | Within 14 business days after entry of the Preliminary Approval Order |
| Athira files with the SEC a Current Report on Form 8-K attaching the press release announcing the Settlement | Promptly after issuing the press release announcing the Settlement |
| Athira causes the Summary Notice to be published once in *Investor's Business Daily* | Within 14 business days after entry of the Preliminary Approval Order |

PLAINTIFFS' UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF
DERIVATIVE SETTLEMENT

Lead Case No. 2:22-cv-497-TSZ                    22

WEISS LAW
305 Broadway, 7th Floor
New York, New York 10007
Telephone: (212) 682-3025

| | |
|---|---|
| Last day for counsel for Athira to file with the Court an appropriate affidavit or declaration with respect to posting and publishing of the Long Form Notice and Summary Notice in the time and manner specified in the Preliminary Approval Order | At least 21 calendar days prior to Settlement Hearing |
| Filing of all papers in support of the Settlement, including the Fee and Expense Amount and Service Awards | 21 calendar days prior to the Settlement Hearing |
| Last day for Current Athira Stockholders to object to the Settlement | 14 calendar days prior to the Settlement Hearing |
| Filing of all reply papers in support of the Settlement, including responses to objections, if any | 7 calendar days prior to the Settlement Hearing |
| Settlement Hearing | At least 45 days after entry of the Preliminary Approval Order |

## IX.    CONCLUSION

Plaintiffs respectfully submit that the Court should preliminarily approve the Settlement, schedule the Settlement Hearing, and authorize the dissemination of Notice to Current Athira Stockholders. Plaintiffs Bushansky and Houlihan have conferred with counsel for Defendants regarding this Motion, and they have informed Plaintiffs Bushansky and Houlihan that the Motion is unopposed.

Dated: March 18, 2024

WEISS LAW

By: Joshua M. Rubin
David C. Katz
305 Broadway, 7th Fl
New York, NY 10007
Telephone: (212) 682-3025
Email: dkatz@weisslawllp.com
        jrubin@weisslawllp.com

Patrick Slyne
**SLYNE LAW LLC**
800 Westchester Avenue, N641
Rye Brook, NY 10573
Telephone: (914) 279-7000
Email: patrick.slyne@slynelaw.com

*Co-Lead Counsel for Plaintiffs*

PLAINTIFFS' UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF
DERIVATIVE SETTLEMENT

Lead Case No. 2:22-cv-497-TSZ

WEISS LAW
305 Broadway, 7th Floor
New York, New York 10007
Telephone: (212) 682-3025

23

Miles A. Yanick
**Yanick Law & Dispute Resolution PLLC**
1325 Fourth Avenue, Suite 1130
Seattle, WA 98101
Telephone: (206) 455-5924
Email: myanick@yanicklaw.com

*Local Counsel*

PLAINTIFFS' UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF
DERIVATIVE SETTLEMENT

Lead Case No. 2:22-cv-497-TSZ                    24

**WEISS LAW**
305 Broadway, 7th Floor
New York, New York 10007
Telephone: (212) 682-3025