THE HONORABLE THOMAS S. ZILLY

1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

9
10

STEPHEN BUSHANSKY, derivatively on behalf
of ATHIRA PHARMA, INC.,

11

Plaintiff,

12

vs.

13

LEEN KAWAS, KELLY A. ROMANO, JOSEPH
EDELMAN, JOHN M. FLUKE, JR., JAMES A.
JOHNSON, BARBARA KOSACZ, and MARK
LITTON,

14
15
16

Defendants,

17

and

18

ATHIRA PHARMA, INC.,

19

Nominal Defendant.

20

Case No. 2:22-cv-497-TSZ

**PLAINTIFFS' UNOPPOSED**
**MOTION FOR FINAL APPROVAL**
**OF DERIVATIVE SETTLEMENT**

**NOTED ON MOTION CALENDAR:**
**JULY 19, 2024**

21
22
23
24
25
26
27
28

PLAINTIFFS' UNOPPOSED MOTION FOR
FINAL APPROVAL OF DERIVATIVE
SETTLEMENT

Lead Case No. 2:22-cv-497-TSZ

**WEISS LAW**
305 Broadway, 7th Floor
New York, New York 10007
Telephone: (212) 682-3025

1

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

THOMAS HOULIHAN, derivatively on behalf of
ATHIRA PHARMA, INC.,

                      Plaintiff,

      vs.

LEEN H. KAWAS, KELLY A. ROMANO,
JOSEPH EDELMAN, JOHN M. FLUKE, JR.,
JAMES A. JOHNSON, BARBARA KOSACZ,
MARK LITTON, and KEVIN CHURCH,

                Defendants,

      and

ATHIRA PHARMA, INC.,

              Nominal Defendant.

Case No. 2:22-cv-620-TSZ

PLAINTIFFS' UNOPPOSED MOTION FOR
FINAL APPROVAL OF DERIVATIVE
SETTLEMENT

Lead Case No. 2:22-cv-497-TSZ

**WEISS LAW**
305 Broadway, 7th Floor
New York, New York 10007
Telephone: (212) 682-3025

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES...................................................................................................ii

I.      INTRODUCTION ...................................................................................................1

II.     THE ALLEGATIONS, PROCEDURAL HISTORY, SETTLEMENT
        NEGOTIATIONS, AND SETTLEMENT CONSIDERATION ...........................5

III.    STANDARDS GOVERNING FINAL APPROVAL ...........................................6

IV.     THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE..............8

        A.      The Settlement Merits A Presumption Of Fairness Because It Was
                Negotiated At Arm's-Length By Experienced, Well-Informed
                Counsel With The Assistance Of A Respected Mediator ........................8

        B.      Plaintiffs' Decision To Settle Is Well-Informed And Entitled To
                Significant Weight...................................................................................9

        C.      The Substantial Settlement Benefits Merit Final Approval ..................10

        D.      The Strength Of Plaintiffs' Case Weighed Against The Substantial
                Risks, Expense, Complexity And Likely Duration Of Further
                Litigation Supports Final Approval Of The Settlement.........................14

        E.      The Board's Decision To Approve The Settlement Warrants
                Deference.............................................................................................16

        F.      The Lack Of Objections Supports Approval Of The Settlement, As
                Well As The Fee And Expense Amount.................................................17

V.      CONCLUSION......................................................................................................18

PLAINTIFFS' UNOPPOSED MOTION FOR          **WEISS LAW**
FINAL APPROVAL OF DERIVATIVE             305 Broadway, 7th Floor
SETTLEMENT                               New York, New York 10007
                                         Telephone: (212) 682-3025

Lead Case No. 2:22-cv-497-TSZ

i

# TABLE OF AUTHORITIES

**Case**                                                                 **Page(s)**

*Berkey Photo, Inc. v. Eastman Kodak Co.*,
   603 F.2d 263 (2d Cir. 1979) ........................................................ 16

*Brooks v. Am. Exp. Indus., Inc.*,
   No. 71 Civ. 5128,
   1977 U.S. Dist. LEXIS 17313 (S.D.N.Y. Feb. 17, 1977) ...................... 17

*Bushansky v. Kawas*,
   No. C22-0497-TSZ,
   2024 U.S. Dist. LEXIS 81444 (W.D. Wash. May 3, 2024) .................... 7

*Cohn v. Nelson*,
   375 F. Supp. 2d 844 (E.D. Mo. 2005) ................................. 11, 12, 13, 14

*Daubert v. Merrell Dow Pharm., Inc.*,
   509 U.S. 579 (1993) .................................................................. 16

*D'Amato v. Deutsche Bank*,
   236 F.3d 78 (2d Cir. 2001) ........................................................... 9

*Fossett v. Brady Corp.*,
   No. ED CV 16-2572 PA (SPx),
   2021 U.S. Dist. LEXIS 56132 (C.D. Cal. Mar. 23, 2021) ...................... 18

*Four in One Co. v. S.K. Foods, L.P.*,
   No. 2:08-cv-3017-KJM-EFB,
   2014 U.S. Dist. LEXIS 113084 (E.D. Cal. Aug. 13, 2014) .................... 16

*Garner v. State Farm Mut. Auto. Ins. Co.*,
   No. 08-1365,
   2010 U.S. Dist. LEXIS 49477 (N.D. Cal. Apr. 22, 2010) ...................... 9

*Gracht de Rommerswael v. Auerbach*,
   No. SACV-18-00236-AG,
   2019 U.S. Dist. LEXIS 224924 (C.D. Cal. Jan. 7, 2019) ...................... 8

*In re AOL Time Warner S'holder Derivative Litig.*,
   No. 02CIV6302,
   2006 U.S. Dist. LEXIS 63260 (S.D.N.Y. Sept. 6, 2006) ...................... 12

*In re Apollo Grp., Inc. Sec. Litig.*,
   No. 04-2147,
   2008 U.S. Dist. LEXIS 61995 (D. Ariz. Aug. 4, 2008) ........................ 16

*In re Apple Computer, Inc. Derivative Litig.*,
   No. C06-4128,
   2008 U.S. Dist. LEXIS 108195 (N.D. Cal. Nov. 5, 2008) ...................... 11

*In re Caremark Int'l. Inc. Derivative Litig.*,
   698 A.2d 959 (Del. Ch. 1996) ..................................................... 15

PLAINTIFFS' UNOPPOSED MOTION FOR
FINAL APPROVAL OF DERIVATIVE
SETTLEMENT

Lead Case No. 2:22-cv-497-TSZ

**WEISS LAW**
305 Broadway, 7th Floor
New York, New York 10007
Telephone: (212) 682-3025

ii

*In re Emerson Radio S'holder Derivative Litig.*,
   No. 3392-VCL,
   2011 U.S. Dist. LEXIS 50 (Del. Ch. Mar. 28, 2011) ................................................. 13

*In re Hyundai & Kia Fuel Econ. Litig.*,
   926 F.3d 539 (9th Cir. 2019) ....................................................................................... 6

*In re Lloyd's Am. Tr. Fund Litig.*,
   No. 96CIV1262,
   2002 U.S. Dist. LEXIS 22663 (S.D.N.Y. Nov. 26, 2002) ......................................... 16

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000) ..................................................................................... 10

*In re MRV Commc'ns, Inc. Derivative Litig.*,
   Case No. CV 08-03800 GAF,
   2013 U.S. Dist. LEXIS 86295 (C.D. Cal. June 6, 2013) .......................... 7, 8, 10, 18

*In re NVIDIA Corp. Deriv. Litig.*,
   No. C-06-06110-SBA,
   2008 U.S. Dist. LEXIS 117531 (N.D. Cal. Dec. 19, 2008) ......................................... 6

*In re NVIDIA Corp. Deriv. Litig.*,
   No. C-06-06110-SBA**,**
   2009 U.S. Dist. LEXIS 24973 (N.D. Cal. Mar. 18, 2009)...................................... 7, 8, 9

*In re OSI Sys., Inc. Derivative Litig.*,
   No. CV142910,
   2017 U.S. Dist. LEXIS 221033 (C.D. Cal. May 2, 2017) .......................................... 11

*In re Pac. Enters. Sec. Litig.*,
   47 F.3d 373 (9th Cir. 1996)..................................................................................... 7, 14

*In re Pfizer Inc., S'holder Derivative Litig.*,
   780 F. Supp. 2d 336 (S.D.N.Y. 2011) ....................................................................... 12

*In re Rambus Inc. Derivative Litig.*,
   Case No. C 06-3513 JF (HRL),
   2009 U.S. Dist. LEXIS 131845 (N.D. Cal. Jan. 20, 2009) ........................................ 18

*In re Walt Disney Co. Derivative Litig.*,
   907 A.2d 693 (Del. Ch. 2005) ................................................................................... 15

*In re Wells Fargo & Co. S'holder Deriv. Litig.*,
   445 F. Supp. 3d 508 (N.D. Cal. 2020) ....................................................................... 18

*In re Xoma Corp. Sec. Litig.,*
   No. C-91-2252-THE,
   1992 U.S. Dist. LEXIS 10502 (N.D. Cal. July 10, 1992) ........................................... 6

*Kamen v. Kemper Fin. Servs. Inc.*,
   500 U.S. 90 (1991) .................................................................................................... 15

PLAINTIFFS' UNOPPOSED MOTION FOR
FINAL APPROVAL OF DERIVATIVE
SETTLEMENT

**WEISS LAW**
305 Broadway, 7th Floor
New York, New York 10007
Telephone: (212) 682-3025

Lead Case No. 2:22-cv-497-TSZ

*Lewis v. Anderson,*
    692 F.2d 1267 (9th Cir. 1982) ...................................................................... 11

*Lunsford v. Woodforest Nat'l Bank,*
    No. 1:12-cv-103-CAP,
    2014 U.S. Dist. LEXIS 200716 (N.D. Ga. May 19, 2014) ........................ 17

*Maher v. Zapata Corp.,*
    714 F.2d 436 (5th Cir. 1983) ............................................................ 6, 12, 14

*Mills v. Elec. Auto-Lite Co.,*
    396 U.S. 375 (1970) ................................................................................ 11, 12

*Officers for Just. v. Civil Serv. Comm'n,*
    688 F.2d 615 (9th Cir. 1982) ................................................................ *passim*

*Peterson v. BSH Home Appliances Corp.,*
    No. 2:23-cv-00543-RAJ,
    2024 U.S. Dist. LEXIS 105624 (W.D. Wash. June 13, 2024) ............... 17-18

*Rodriguez v. W. Publ 'g Corp.,*
    563 F.3d 948 (9th Cir. 2009)......................................................................... 8

*Ryan ex rel. Maxim Integrated Prods. v. Gifford,*
    Civil Action No. 2213-CC,
    2009 Del. Ch. LEXIS 1 (Del. Ch. Jan. 2, 2009) ...................................... 18

*U.S. v. McInnes,*
    556 F.2d 436 (9th Cir. 1977) ........................................................................ 6

*Unite Nat'l Ret. Fund v. Watts,*
    No. 04CV3603,
    2005 U.S. Dist. LEXIS 26246 (D.N.J. Oct. 28, 2005) ............................. 12

*Unitrin, Inc. v. Am. Gen. Corp.,*
    651 A.2d 1361 (Del. 1995) ......................................................................... 17

*Villanueva v. Morpho Detection, Inc.,*
    No. 13-cv-05390-HSG,
    2015 U.S. Dist. LEXIS 106183 (N.D. Cal. Aug. 12, 2015) ....................... 8

*Zapata Corp. v. Maldonado,*
    430 A.2d 779 (Del. 1981) ........................................................................... 17

*Zografos v. Qwest Commc'ns Co., LLC,*
    Case No. 6:00-cv-06201-AA,
    2013 U.S. Dist. LEXIS 99573 (D. Or. July 11, 2013)............................... 18

**Miscellaneous**

Lawrence D. Brown & Marcus L. Caylor,
    *The Correlation Between Corporate Governance and Company Performance,*
    I.S.S. (2004)...............................................................................................13

PLAINTIFFS' UNOPPOSED MOTION FOR
FINAL APPROVAL OF DERIVATIVE
SETTLEMENT

Lead Case No. 2:22-cv-497-TSZ

**WEISS LAW**
305 Broadway, 7th Floor
New York, New York 10007
Telephone: (212) 682-3025

iv

McKinsey & Company,
*McKinsey & Company Investor Opinion Survey,*
(June 2000) ................................................................................................................ 14

**Statutes & Regulations**

Fed. R. Civ. P. 12(b)(6) ............................................................................................. 15

Federal Rule of Civil Procedure 23.1 .................................................................. 5, 6, 7

PLAINTIFFS' UNOPPOSED MOTION FOR
FINAL APPROVAL OF DERIVATIVE
SETTLEMENT

Lead Case No. 2:22-cv-497-TSZ

**WEISS LAW**
305 Broadway, 7th Floor
New York, New York 10007
Telephone: (212) 682-3025

## I. INTRODUCTION

Plaintiffs Stephen Bushansky ("Bushansky") and Thomas Houlihan ("Houlihan") are pleased to present the Settlement[1] of the claims asserted in this consolidated stockholder derivative action brought for the benefit of Athira Pharma, Inc. ("Athira" or the "Company"), as well as in two separate litigation demands made upon the Company's Board of Directors (the "Board") by Athira stockholders Ali Soofi ("Soofi") and Travis Vrana ("Vrana") alleging conduct similar to that alleged in the consolidated derivative action. Stip. at 3 and 10-11.

Athira is a late clinical-stage biopharmaceutical company focused on developing small molecules engineered to restore neuronal health and slow neurodegeneration. Stip. at 2. Plaintiffs allege that Dr. Leen Kawas ("Kawas"), co-authored scientific research papers with improperly manipulated study images pertaining to a chemical compound known as Dihexa that Athira was seeking to commercialize as a drug treatment for a range of neurological diseases. Stip. at 2-3; *Bushansky* Compl. at ¶¶69-73; *Houlihan* Compl. at ¶¶4, 71, 79, 89, 95. In June 2021, Athira announced the formation of a Special Committee of independent directors to investigate reports that Dihexa study images had been manipulated. *Bushansky* Compl. at ¶67; *Houlihan* Compl. at ¶115. In October 2021, the Special Committee announced that Kawas's dissertation, and at least four published research papers pertaining to Dihexa, contained altered images. *Bushansky* Compl. at ¶76; *Houlihan* Compl. at ¶¶133-34. In the wake of these disclosures, Kawas resigned, the Company's stock price dropped substantially, and investors brought securities class actions lawsuits, consolidated under the caption *Nacif, et al. v. Athira Pharma Inc., et al.*, Case No. 2:21-cv-00861-TSZ (W.D. Wash.) (the "Securities Class Action"), alleging that the Company, its executive officers

---

[1] Unless otherwise defined, capitalized terms will have the same meaning as set forth in the Stipulation of Settlement and Release Agreement (the "Stipulation" or "Stip") attached as Exhibit A to the Declaration of David C. Katz in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Derivative Settlement (ECF No. 18), all emphasis is added, and internal quotation marks and citations are omitted.

PLAINTIFFS' UNOPPOSED MOTION FOR
FINAL APPROVAL OF DERIVATIVE
SETTLEMENT

Lead Case No. 2:22-cv-497-TSZ

**WEISS LAW**
305 Broadway, 7th Floor
New York, New York 10007
Telephone: (212) 682-3025

1

and directors made materially false and misleading statements and omissions that they relied upon to their detriment. *Bushansky* Compl. at ¶¶74, 79, 88-89; *Houlihan* Compl. at ¶¶25, 129-32. The Company has since agreed to settle the Securities Class Action for $10 million.

The Settlement commits the Board to implement and maintain for five years corporate governance and oversight reforms (the "Governance Reforms") carefully tailored to address and prevent recurrence of similar misconduct and corporate injury as alleged by Plaintiffs through:

(i) Compliance Committee: creating a Compliance Committee of the Board of Directors, consisting of at least two independent directors, to oversee compliance with healthcare, legal and regulatory requirements; the safety and effectiveness of the Company's products and product candidates in clinical and pre-clinical development; the integrity of scientific research and accuracy and completeness of the Company's scientific publications; the qualification and performance of candidates in clinical and preclinical development; and the qualification and performance of contract research and contract manufacturing organizations;

(ii) Chief Compliance Officer: creating a new senior management officer—the Chief Compliance Officer—to manage and oversee the Company's ethics and compliance program, implement procedures for monitoring and evaluating the program's performance, and communicate with and inform the newly-created Compliance Committee and the Audit Committee regarding progress towards meeting program goals;

(iii) Improvements to Audit Committee Charter: improving  the Audit Committee Charter to include oversight responsibilities relating to compliance with applicable law not already delegated to the newly created Compliance Committee, compliance risk analysis responsibilities, annual reporting from the newly-created Chief Compliance Officer concerning the design, implementation, and continuing operation

PLAINTIFFS' UNOPPOSED MOTION FOR
FINAL APPROVAL OF DERIVATIVE
SETTLEMENT

Lead Case No. 2:22-cv-497-TSZ

**WEISS LAW**
305 Broadway, 7th Floor
New York, New York 10007
Telephone: (212) 682-3025

2

of the Company's Enterprise Risk Management Program, periodic reports concerning risk management aspects of strategic initiatives of the Company and developments affecting the Company's business, operations, and affairs, and quarterly reporting pursuant to an annual agenda that includes substantive reports related to compliance matters; matters of implementation of existing compliance programs; monitoring and adjustment of such programs; the Company's processes for receiving and investigating compliance or ethics-related complaints; exceptions reporting; the allocation of resources to the compliance organization and compliance-related initiatives; and, at least annually, a strategic review of emerging trends (external or specific to the Company) affecting the Company's regulatory compliance and, as appropriate, plans of action to respond to such trends from a preventive compliance standpoint;

(iv) Improvements to Disclosure Committee Charter: improving the management-level Disclosure Committee Charter to require that the Chief Operating Officer, General Counsel and Chief Compliance Officer, Chief Medical Officer, and Chief Scientific Officer be members of the committee and to establish the responsibility of the committee to evaluate the effectiveness of the disclosure controls policies and procedures on at least an annual basis and amend the same as necessary to conform to best practices; and

(v) Improving the Company's newly enacted Compensation Recovery Policy to include provisions for the recovery of executive compensation in the event of a Retraction of Scientific Results.

Stip. at ¶V(B)(1) and Exhibits 1-4.

These Governance Reforms confer significant economic value by laying the foundation necessary to improve investor confidence in the accuracy of the Company's public disclosures, the

PLAINTIFFS' UNOPPOSED MOTION FOR
FINAL APPROVAL OF DERIVATIVE
SETTLEMENT

Lead Case No. 2:22-cv-497-TSZ

**WEISS LAW**
305 Broadway, 7th Floor
New York, New York 10007
Telephone: (212) 682-3025

3

integrity of its management, and the independence and effectiveness of the Company's corporate governance and Board oversight and monitoring. Weighed against the significant risks, uncertainties, and delays that would be entailed in any attempt to improve the Settlement benefit with further litigation, the Settlement is substantively fair, reasonable and adequate, meriting final approval. Stip. at 6-7.

The Settlement was reached only after extensive arm's-length negotiations by experienced well-informed counsel[2] representing all Parties after substantial investigation with the assistance of Mr. Jed D. Melnick, Esq., an experienced neutral[3] who separately served as mediator for the Securities Class Action (the "Mediator") (Stip. at 4-5; Melnick Decl. at ¶3), and as such warrants the presumption of fairness that such mediated compromises are typically afforded.

In an exercise of its business judgment, a Shareholder Demand & Derivative Lawsuits Committee (the "Committee") of independent directors appointed by the Board to oversee settlement negotiations of the Derivative Actions and to provide a recommendation to the Board with respect thereto, advised by independent outside legal counsel, considered and then recommended the proposed Settlement to the Board. Stip. at §IV. The Board reviewed the proposed Settlement and the Committee's recommendation and in an exercise of its independent business judgment issued a resolution that the Settlement and its terms provide a substantial benefit to, and are in the best interests of, the Company and its stockholders. Stip. at §§IV, V(B)(2) and V(D)(1). The Board agreed to enact the Governance Reforms within sixty (60) days of entry of a Judgment approving the Settlement of the Derivative Actions. Stip. at § V(B)(1).

---

[2] *See* Declaration of Plaintiffs' Co-Lead Counsel in Support of Plaintiffs' Unopposed Motion for Approval of Attorneys' Fees and Expenses and Service Awards to Plaintiffs (ECF No. 23) and its exhibits (ECF Nos. 23-1 through 23-5).

[3] *See* Declaration of Jed D. Melnick in Support of Plaintiffs' Unopposed Motion for Final Approval of Derivative Settlement ("Melnick Decl.") at ¶1.

PLAINTIFFS' UNOPPOSED MOTION FOR
FINAL APPROVAL OF DERIVATIVE
SETTLEMENT

Lead Case No. 2:22-cv-497-TSZ

**WEISS LAW**
305 Broadway, 7th Floor
New York, New York 10007
Telephone: (212) 682-3025

4

The Court preliminarily approved the Settlement on May 3, 2024. *See* Preliminary Approval Order at 7 (ECF No. 21). With regard to the proposed Settlement, the Court found, among other things, that the requisite indicia of procedural and substantive fairness are present and that the proposed Settlement appears to be fair, reasonable, and adequate. *See* ECF No. 21 at 7.

Athira caused Notice of the Settlement to be disseminated in the time and manner approved by the Court in the Preliminary Approval Order as consistent with the requirements of Rule 23.1 and due process standards. *See* ECF No. 21 at 8, ECF Nos. 21-1 and 21-2; and Declaration of Gregory L. Watts Regarding Athira Pharma, Inc.'s Compliance with Settlement Notice Requirements, at ¶7 ("Watts Decl.") (ECF No. 24).

The Notice advised all Current Athira Stockholders of the Settlement, its terms, the Final Approval Hearing, the mutual releases that would be made upon entry of the Judgment, the Fee and Expense Amount, as well as the Service Awards to be drawn therefrom, and the time and manner in which written objections, if any, should be made. To date, no objections have been received by Plaintiffs' Counsel. *See* Declaration of David C. Katz and Patrick Slyne in Support of Plaintiffs' Unopposed Motion for Final Approval of Derivative Settlement ("Lead Counsel Decl.") at ¶¶7, 22, 49.

## II.    THE ALLEGATIONS, PROCEDURAL HISTORY, SETTLEMENT NEGOTIATIONS, AND SETTLEMENT CONSIDERATION

A summary of the allegations, procedural history, investigation, settlement negotiation, and settlement consideration of the Derivative Actions is set forth in the Stipulation, Plaintiffs' Unopposed Motion for Preliminary Approval of Derivative Settlement (ECF No. 17) and accompanying Declaration of David C. Katz in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Derivative Settlement ("Katz Decl.") (ECF No. 18) and Plaintiffs' Unopposed Motion for Approval of Attorneys' Fees and Expenses and Service Awards to Plaintiffs (ECF No. 22) and accompanying Lead Counsel Declaration.

PLAINTIFFS' UNOPPOSED MOTION FOR
FINAL APPROVAL OF DERIVATIVE
SETTLEMENT

Lead Case No. 2:22-cv-497-TSZ

**WEISS LAW**
305 Broadway, 7th Floor
New York, New York 10007
Telephone: (212) 682-3025

5

1  To avoid burdening the Court with repeating matters already considered, Plaintiffs incorporate

2  those filings herewith and respectfully refer the Court to them for a more thorough description of: (i) a

3  factual background and summary of the derivative allegations: *See* ECF No. 17 at §II(A); (ii) the

4  procedural history of the Derivative Actions; *See* ECF No. 17 at §II(B); (iii) Plaintiffs' Counsels'

5  investigation (ECF No. 17 at §V(A); Stip. at §II; (iv) the Parties' Settlement negotiations and process;

6  (ECF No. 17 at §§ II(C) and V(A)-(B); and (v) the substantive consideration for the Settlement. (ECF

7  No. 17 at §V(B); Stip. at §V(B)).

8  **III.     STANDARDS GOVERNING FINAL APPROVAL**

9  Federal Rule of Civil Procedure 23.1(c) provides that "[a] derivative action may be settled ...

10  only with the court's approval." The Court's evaluation of the Settlement should be guided by the

11  "strong judicial policy that favors settlements" in complex cases, especially derivative actions. *In re*

12  *Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019) (*en banc*) (quoting *Allen v.*

13  *Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015)); *Officers for Just. v. Civil Serv. Comm'n*, 688 F.2d 615,

14  635 (9th Cir. 1982) ("settlement process [is] favored in the law"); *U.S. v. McInnes*, 556 F.2d 436,

15  441 (9th Cir. 1977) ("there is an overriding public interest in settling and quieting litigation"); *In re*

16  *NVIDIA Corp. Deriv. Litig.*, No. C-06-06110-SBA, 2008 U.S. Dist. LEXIS 117531, at *7 (N.D. Cal.

17  Dec. 19, 2008) ("Because shareholder derivative actions are 'notoriously difficult and unpredictable

18  ... settlements are favored.'") (omission in original); *In re Xoma Corp. Sec. Litig.*, No. C-91-2252-

19  THE, 1992 U.S. Dist. LEXIS 10502, at **3-4 (N.D. Cal. July 10, 1992) ("The law favors settlement

20  of cases and quieting of litigation, particularly in complex class actions and derivative litigation.").

21  "Settlements of shareholder derivative actions are particularly favored because such litigation is

22  'notoriously difficult and unpredictable[.]'" *Maher v. Zapata Corp.*, 714 F.2d 436, 455 (5th Cir.

23  1983).

24  In its Preliminary Approval Order, pending the outcome of a hearing on final approval, the

25  Court found the proposed Settlement to be fair, reasonable, and adequate, concluded that the

26

27  PLAINTIFFS' UNOPPOSED MOTION FOR
   FINAL APPROVAL OF DERIVATIVE
28  SETTLEMENT

   Lead Case No. 2:22-cv-497-TSZ

**WEISS LAW**
305 Broadway, 7th Floor
New York, New York 10007
Telephone: (212) 682-3025

1   corporate governance reforms on which the parties have agreed would immediately benefit Athira,

2   and held that the proposed Notice with the changes indicated in the versions attached to the Order

3   as Exhibits 1 and 2 satisfied Rule 23.1 and met due process standards. ECF No. 21 at 7-8. The Notice

4   was disseminated as required and, to date (ECF No. 24 at ¶¶3-6), no Athira stockholders have

5   objected to the proposed Settlement, or any aspect thereof. *See* Lead Counsel Decl. ¶¶7, 22, 48, 49.

6       "Within the Ninth Circuit, the 'proper legal standard' to apply under Rule 23.1(c) is whether

7   the settlement is fair, reasonable, and adequate to the nominal defendant, *i.e.*, the entity in which the

8   derivative plaintiffs are shareholders." *Bushansky v. Kawas*, No. C22-0497-TSZ**,** 2024 U.S. Dist.

9   LEXIS 81444, at *3 (W.D. Wash. May 3, 2024) (citing *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373,

10  377-78 (9th Cir. 1996); *see also In re MRV Commc'ns Inc. Deriv. Litig.*, No. CV-08-03800-GAF**,**

11  2013 U.S. Dist. LEXIS 86295, at **7-9 (C.D. Cal. June 6, 2013). The Ninth Circuit considers the

12  following factors in evaluating the fairness of a derivative settlement: (1) the strength of the

13  plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the

14  amount offered in settlement; (4) the extent of discovery completed and the stage of the proceedings;

15  (5) the experience and views of counsel; and (6) the reaction of the stockholders to the proposed

16  settlement. *In re NVIDIA Corp. Deriv. Litig.*, No. C-06-06110-SBA**,** 2009 U.S. Dist. LEXIS 24973,

17  at **8-9 (N.D. Cal. Mar. 18, 2009) (quoting *Officers for Just.*, 688 F.3d at 625); *MRV Commc'ns*,

18  2013 U.S. Dist. LEXIS 86295, at *8. "[These] factors are not exclusive, and one factor may deserve

19  more weight than the others depending on the circumstances. In some instances, one factor alone

20  may prove determinative in finding sufficient grounds for court approval." *MRV Commc'ns*, 2013

21  U.S. Dist. LEXIS 86295, at *9.

22

23

24

25

26

27  PLAINTIFFS' UNOPPOSED MOTION FOR              **WEISS LAW**
    FINAL APPROVAL OF DERIVATIVE                 305 Broadway, 7th Floor
28  SETTLEMENT                                   New York, New York 10007
                                                 Telephone: (212) 682-3025
    Lead Case No. 2:22-cv-497-TSZ

                                          7

**IV.    THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE**

**A.    The Settlement Merits A Presumption Of Fairness Because It Was Negotiated At Arm's-Length By Experienced, Well-Informed Counsel With The Assistance Of A Respected Mediator**

Courts evaluate derivative settlements without reaching "ultimate conclusions on the contested issues of fact and law that underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful litigation that induce consensual settlements." *NVIDIA*, 2009 U.S. Dist. LEXIS 24973, at *8; *Officers for Just.*, 688 F.3d at 625. Therefore, in exercising its discretion, "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Just.*, 688 F.2d at 625.

Courts within the Ninth Circuit "put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution …." *Rodriguez v. W. Publ 'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009). Settlements achieved through extensive arm's-length negotiations conducted by experienced, well-informed counsel enjoy a "presumption of fairness." *Villanueva v. Morpho Detection, Inc.*, No. 13-cv-05390-HSG, 2015 U.S. Dist. LEXIS 106183, at **14-15 (N.D. Cal. Aug. 12, 2015); *Van der Gracht de Rommerswael v. Auerbach*, No. SACV-18-00236-AG, 2019 U.S. Dist. LEXIS 224924, at **9-10 (C.D. Cal. Jan. 7, 2019) ("strong presumption of fairness" attached to settlement that "was the product of arms-length negotiations between experienced and well-informed counsel"); *MRV Commc'ns,* 2013 U.S. Dist. LEXIS 86295, at *9 ("The involvement of experienced [ ] counsel and the fact that the settlement agreement was reached in arm's length negotiations … create a presumption that the agreement is fair.").

Plaintiffs' Counsel include nationally recognized leaders in stockholder litigation, and as discussed in section IV(B), below, their decision to settle on the terms set forth in the Stipulation

PLAINTIFFS' UNOPPOSED MOTION FOR
FINAL APPROVAL OF DERIVATIVE
SETTLEMENT

Lead Case No. 2:22-cv-497-TSZ

**WEISS LAW**
305 Broadway, 7th Floor
New York, New York 10007
Telephone: (212) 682-3025

was well-informed. Lead Counsel Decl. §III(C); Melnick Decl. at ¶7. Likewise, at all times, Athira, the Individual Defendants, the Board, and the Committee were represented by highly experienced counsel. Lead Counsel Decl. ¶35; Melnick Decl. at ¶7. Mr. Melnick's role as mediator further demonstrates the arm's-length nature of the settlement negotiations. *NVIDIA*, 2009 U.S. Dist. LEXIS 24973, at **10-11 (approving settlement where "the parties engaged in significant negotiations, including at least four formal mediation sessions, and the parties were assisted by an experienced mediator in reaching the Settlement," which "weighs considerably against any inference of a collusive settlement"); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) ("mediator's involvement … helps to ensure that the proceedings were free of collusion"); *see also* Melnick Decl. at ¶2.

The Settlement presented here is the result of months of hard-fought, arm's-length negotiations among experienced, well-informed counsel following their substantial investigation of the claims, defenses and remedial measures, with the assistance of a highly regarded neutral. *See* § II, above; Melnick Decl. at ¶¶7-8. There is not the slightest hint of collusion because there is none. Accordingly, the proposed Settlement merits a strong presumption of fairness and reasonableness. *Officers for Just.*, 688 F.2d at 625; *Garner v. State Farm Mut. Auto. Ins. Co.*, No. 08-1365, 2010 U.S. Dist. LEXIS 49477, at *35 (N.D. Cal. Apr. 22, 2010) (where "a settlement is the product of arms-length negotiations conducted by capable and experienced counsel, the court begins its analysis with a presumption that the settlement is fair and reasonable").

## B. Plaintiffs' Decision To Settle Is Well-Informed And Entitled To Significant Weight

The stage of the proceedings and the amount of discovery completed is another factor that courts consider in determining the fairness, reasonableness, and adequacy of a settlement. *NVIDIA*, 2009 U.S. Dist. LEXIS 24973, at *9. Ninth Circuit law is clear that "'formal discovery is not a necessary ticket to the bargaining table' where the parties have sufficient information to make an

PLAINTIFFS' UNOPPOSED MOTION FOR
FINAL APPROVAL OF DERIVATIVE
SETTLEMENT

Lead Case No. 2:22-cv-497-TSZ

**WEISS LAW**
305 Broadway, 7th Floor
New York, New York 10007
Telephone: (212) 682-3025

informed decision about settlement." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000); *MRV Commc'ns*, 2013 U.S. Dist. LEXIS 86295, at *14.

Plaintiffs' Counsel completed substantial investigations. *See* Stip. at 5-6; ECF No. 17 at 11-12; Lead Counsel Decl. at ¶¶33-34. Plaintiffs' Counsel obtained books-and-records through a formal document demand made by Athira stockholder Soofi pursuant to Section 220 of the Delaware Corporation Law. Plaintiffs' Counsel thoroughly considered the facts and law underlying the Derivative Actions going into the Settlement negotiations, and they continued to investigate and learn more during the substantive settlement exchanges with defense counsel at the mediation sessions and thereafter regarding the relative strength of the claims and defenses; the state of Athira's corporate governance, internal controls and management structure; and a myriad other matters bearing on the settlement negotiations and evaluation of the proposed Settlement's terms. Lead Counsel Decl. at ¶¶33-34; Melnick Decl. at ¶¶3-6.

As a result, Plaintiffs' Counsel had a clear understanding of the potential risks and rewards of pursuing further litigation; how Athira and its stockholders' interests would be impacted across the broad range of possible litigation scenarios and outcomes; and the remedial measures that would be necessary to prevent the Company from suffering the consequences of similar alleged wrongdoing in the future, and to restore its credibility with investors and capital markets. Plaintiffs' Counsel's determination that the substantial benefits guaranteed by the Settlement far outweigh the value of any probable risk-adjusted monetary recovery that might be secured through further litigation is thoroughly informed by their comprehensive review of the facts, circumstances, and law, as well as their decades of experience litigating and resolving dozens of derivative actions of similar magnitude and complexity.

## C.     The Substantial Settlement Benefits Merit Final Approval

"The principal factor to be considered in determining the fairness of a settlement concluding a shareholders' derivative action is the extent of the benefit to be derived from the proposed

PLAINTIFFS' UNOPPOSED MOTION FOR
FINAL APPROVAL OF DERIVATIVE
SETTLEMENT

Lead Case No. 2:22-cv-497-TSZ

**WEISS LAW**
305 Broadway, 7th Floor
New York, New York 10007
Telephone: (212) 682-3025

settlement by the corporation, the real party in interest." *In re OSI Sys., Inc. Derivative Litig.*, No. CV142910, 2017 U.S. Dist. LEXIS 221033, at *6 (C.D. Cal. May 2, 2017); *see also In re Apple Computer, Inc. Derivative Litig.*, No. C06-4128, 2008 U.S. Dist. LEXIS 108195, at **8-9 (N.D. Cal. Nov. 5, 2008).

The Settlement guarantees Athira and its stockholders the benefits of a suite of corporate governance, operational oversight, and internal control reforms carefully devised to establish a framework to substantially reduce the likelihood that the Company will suffer the damaging consequences of similar alleged misconduct going forward and lays a necessary foundation for restoring the confidence of investors and financial markets. *See* Stip. at 7 and Exhibits 1-4. The economic value of these benefits is real and substantial, demonstrating the merit of the Settlement. Lead Counsel Decl. at ¶39; Declaration of Thomas Houlihan in Support of Plaintiffs' Unopposed Motion for Final Approval of Derivative Settlement ("Houlihan Decl.")at ¶¶14-18; Declaration of Stephen Bushansky in Support of Plaintiffs' Unopposed Motion for Final Approval of Derivative Settlement ("Bushansky Decl.") at ¶¶9-13; Declaration of Ali Soofi in Support of Plaintiffs' Unopposed Motion for Final Approval of Derivative Settlement ("Soofi Decl.")at ¶¶9-13; Declaration of Travis Vrana in Support of Plaintiffs' Unopposed Motion for Final Approval of Derivative Settlement ("Vrana Decl.") ¶¶10-14;  Melnick Decl. at ¶6.

Courts routinely recognize that "a corporation may receive a 'substantial benefit' from a derivative suit … regardless of whether the benefit is pecuniary in nature." *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 395 (1970); *Lewis v. Anderson*, 692 F.2d 1267, 1271 (9th Cir. 1982) (citing *Fletcher v. A. J. Indus., Inc.*, 266 Cal. App. 2d 313, 324 (1968) (approving non-pecuniary settlement benefits)). While difficult to quantify in precise monetary terms, courts widely recognize the substantial economic value of corporate governance and board oversight reforms tailored to address the specific oversight and controls lapses that led to or permitted the alleged wrongdoing. *See Cohn v. Nelson*, 375 F. Supp. 2d 844, 853 (E.D. Mo. 2005) ("Courts have recognized that corporate governance

PLAINTIFFS' UNOPPOSED MOTION FOR
FINAL APPROVAL OF DERIVATIVE
SETTLEMENT

Lead Case No. 2:22-cv-497-TSZ

**WEISS LAW**
305 Broadway, 7th Floor
New York, New York 10007
Telephone: (212) 682-3025

reforms such as those achieved here provide valuable benefits to public companies."); *In re AOL Time Warner S'holder Derivative Litig.*, No. 02CIV6302, 2006 U.S. Dist. LEXIS 63260, at \**12-13 (S.D.N.Y. Sept. 6, 2006) (non-monetary benefits alone can be "substantial enough to merit approval" of a settlement).

Among other benefits, such reforms make it "far less likely [that the corporation will] become subject to long and costly securities litigation in the future, as well as prosecution or investigation by regulators and prosecutors." *Cohn*, 375 F. Supp. 2d at 853; *Mills*, 396 U.S. at 396 (substantial benefit conferred where the relief "accomplishes a result which corrects or prevents an abuse which would be prejudicial to the rights and interests of the corporation or affect the enjoyment or protection of an essential right to stockholders' interest"); *In re Pfizer Inc., S'holder Derivative Litig.*, 780 F. Supp. 2d 336, 342 (S.D.N.Y. 2011) (approving derivative settlement where corporate benefits included "a significantly improved institutional structure for detecting and rectifying the types of wrongdoing that have, in recent years, caused extensive harm to the company"); *Unite Nat'l Ret. Fund v. Watts*, No. 04CV3603, 2005 U.S. Dist. LEXIS 26246, at \*9, \*18 (D.N.J. Oct. 28, 2005) (non-monetary benefits support settlement where "the relief is intended to prevent future harm") ("the great benefit conferred … as a result of the new corporate governance principles provided for in the settlement agreement ... will serve to prevent and protect [the nominal defendant] from the reoccurrence of certain alleged wrongdoings").

In fact, the real, long-term economic value of such reforms can far outweigh any likely monetary recovery. *See Maher*, 714 F.2d at 461 ("the effects of the suit on the functioning of the corporation may have a substantially greater economic impact on it, both long- and short-term, than the dollar amount of any likely judgment in its favor"); *Cohn*, 375 F. Supp. 2d at 853 (corporate governance reforms "achieved independently of any monetary benefits … are even more worthwhile"). The Governance Reforms deliver real, lasting, and substantial economic value upon Athira and its stockholders in several ways:

PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF DERIVATIVE SETTLEMENT

Lead Case No. 2:22-cv-497-TSZ

**WEISS LAW**
305 Broadway, 7th Floor
New York, New York 10007
Telephone: (212) 682-3025

*First*, the Governance Reforms are specifically targeted at the alleged misconduct at the core of the Derivative Actions. They are designed to substantially reduce the likelihood that the alleged oversight and disclosure failures at issue in the Derivative Actions will recur and that Athira and its stockholders will suffer the potential loss of market value, investor confidence and legal and/or regulatory exposure stemming from similar allegations in the future. While the value of preventing future alleged missteps cannot be determined with precision, the significant harm the Company would suffer if faced with further securities fraud class actions, and/or regulatory actions, suggests that the value of the Governance Reforms is substantial. *See, e.g., In re Emerson Radio S'holder Derivative Litig.*, No. 3392-VCL, 2011 U.S. Dist. LEXIS 50, at **16-17 (Del. Ch. Mar. 28, 2011) (in approving derivative settlement, quantifying benefit of therapeutics intended to prevent recurrence of misconduct by multiplying damages flowing from original misconduct by estimated risk of recurrence but-for new governance reforms).

*Second*, more rigorous and effective oversight will improve corporate decision-making and reduce the costs associated with the failure to comply with disclosure and other legal or regulatory requirements, as well as the substantial economic costs to the Company in winning back lost trust. A significant body of research confirms that companies with strong corporate governance make better decisions, take fewer unnecessary risks, and operate more profitably than comparable firms with weaker governance.[4]

---

[4] For example, Institutional Shareholder Services, one of the leading providers of proxy voting and corporate governance data services, commissioned a study in 2004 to evaluate the correlation between good corporate governance and company performance. The study confirmed a strong correlation with operational and financial performance. "[F]irms with weaker governance perform more poorly, are less profitable, riskier, and have lower dividends than firms with better governance." Lawrence D. Brown & Marcus L. Caylor, *The Correlation Between Corporate Governance and Company Performance*, I.S.S. (2004). The Reforms will be maintained by Athira for at least five (5) years, time enough for them to become embedded in the Company's corporate culture and routines. *Id*. at ¶15. *See also Cohn*, 375 F. Supp. 2d at 850 (three-year commitment ensures corporate governance reforms will effectively address alleged lapses).

PLAINTIFFS' UNOPPOSED MOTION FOR
FINAL APPROVAL OF DERIVATIVE
SETTLEMENT

Lead Case No. 2:22-cv-497-TSZ

**WEISS LAW**
305 Broadway, 7th Floor
New York, New York 10007
Telephone: (212) 682-3025

*Third*, the Governance Reforms lay the foundation necessary for restoring investor confidence in the veracity of the Company's SEC filings, offering documents and public disclosures, as well as the integrity of its management, and the effectiveness of its corporate governance and Board oversight. This will confer real and substantial economic value over and above the legal-regulatory risk reduction. Academic literature and well-regarded industry surveys confirm that investors pay substantial premiums for stock in companies with strong, independent board oversight, effective internal controls and strong, stockholder-focused corporate governance regimes. Institutional investors are willing to pay a premium of about 18% for securities issued by a well-governed company, which would suggest a substantial economic benefit to Athira and its stockholders.[5]

### D.    The Strength Of Plaintiffs' Case Weighed Against The Substantial Risks, Expense, Complexity And Likely Duration Of Further Litigation Supports Final Approval Of The Settlement

"In assessing the Settlement, this Court must balance the benefits accorded to [the company] and its stockholders, and the immediacy and certainty of a substantial recovery for them, against the continuing risks of litigation." *Cohn*, 375 F. Supp. 2d at 855; *Officers for Just.*, 688 F.2d at 624 ("the very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes'"). Courts universally recognize that stockholder derivative litigation is "notoriously difficult and unpredictable." *Maher*, 714 F.2d at 455; *see also Pac. Enters.*, 47 F.3d at 378.

Plaintiffs' thorough investigation confirmed the strength of their claims, but also brought into focus the substantial complexities, risks, expense, and delay that would be entailed in any attempt to improve upon the substantial benefits guaranteed by the proposed Settlement through further litigation. Those challenges begin at the pleading stage, where Plaintiffs would have to demonstrate the futility of making a demand on the Board through particularized facts demonstrating that a majority of directors faced a substantial likelihood of liability for utterly failing to exercise oversight.

---

[5] *See McKinsey & Company Investor Opinion Survey,* McKinsey & Company (June 2000).

PLAINTIFFS' UNOPPOSED MOTION FOR
FINAL APPROVAL OF DERIVATIVE
SETTLEMENT

Lead Case No. 2:22-cv-497-TSZ

WEISS LAW
305 Broadway, 7th Floor
New York, New York 10007
Telephone: (212) 682-3025

14

This so-called *Caremark* claim is widely recognized as "possibly the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment." *In re Caremark Int'l. Inc. Derivative Litig.,* 698 A.2d 959, 967 (Del. Ch. 1996); *Kamen v. Kemper Fin. Servs. Inc.*, 500 U.S. 90, 96 (1991) (demand futility requires "'extraordinary conditions'"). The Defendants would argue that the pleadings did not meet the rigorous standards for demonstrating demand futility and that the conduct pled was exculpated pursuant to the Company's Articles of Incorporation. Further, they would argue that the facts pled did not state a claim upon which relief would be granted under Fed. R. Civ. P. 12(b)(6). *See* Stip. at §III.

Even if Plaintiffs were to prevail at the pleading stage, significant questions would remain about whether Plaintiffs could secure evidence sufficient to overcome motions for summary judgment predicated on the "business judgment rule," which presumes directors act on an informed basis and in good faith. *See, e.g., In re Walt Disney Co. Derivative Litig.*, 907 A.2d 693, 746-47 (Del. Ch. 2005), *aff'd*, 906 A.2d 27 (Del. 2006). Plaintiffs would not only have to prove the elements of their breach of fiduciary duty claims, but they would also have to overcome the exculpatory provision of Section 1 of Article IX of the Company's Amended and Restated Certificate of Incorporation, which forecloses monetary damages absent proof of disloyalty, bad faith, intentional misconduct, receipt of an improper personal benefit, or a knowing violation of law.

Establishing liability with primarily circumstantial evidence would be difficult and uncertain. Pursuing the discovery necessary to defeat summary judgment motions, secure a verdict, and defeat post-trial motions would be a costly, lengthy effort. Additional document discovery would need to be completed. Dozens of percipient witnesses would have to be deposed concerning exceedingly complex facts. The trier of fact could react to the evidence in unpredictable and unfavorable ways.

The challenges involved in proving damages are equally daunting. Even if Plaintiffs proved a non-exculpated breach of fiduciary duty, whether—and to what extent—Athira suffered actual damages related to that breach would have been hotly contested. "The determination of damages …

PLAINTIFFS' UNOPPOSED MOTION FOR
FINAL APPROVAL OF DERIVATIVE
SETTLEMENT

Lead Case No. 2:22-cv-497-TSZ

**WEISS LAW**
305 Broadway, 7th Floor
New York, New York 10007
Telephone: (212) 682-3025

1   is a complicated and uncertain process, typically involving conflicting expert opinions. The reaction

2   of a trier-of-fact to such complex expert testimony is highly unpredictable." *In re Lloyd's Am. Tr.*

3   *Fund Litig.*, No. 96CIV1262, 2002 U.S. Dist. LEXIS 22663, at *61 (S.D.N.Y. Nov. 26, 2002); *Four*

4   *in One Co. v. S.K. Foods, L.P.*, No. 2:08-cv-3017-KJM-EFB, 2014 U.S. Dist. LEXIS 113084, at

5   **36-37 (E.D. Cal. Aug. 13, 2014) (noting the "risks of continuing to litigate the action include

6   determining damages, which is an 'expert-intensive uncertain process [] often involving conflicting

7   testimony,' and the possibility a jury could find either no damages or a fraction of the damages

8   contended"). Plaintiffs face a substantial risk that they would be precluded from even presenting

9   expert damages testimony. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 585 (1993).

10   And, of course, victory at trial is no guarantee that the judgment would not be vacated or

11   reduced on appeal. *See, e.g., In re Apollo Grp., Inc. Sec. Litig.*, No. 04-2147, 2008 U.S. Dist. LEXIS

12   61995, at *7 (D. Ariz. Aug. 4, 2008), *rev'd and remanded*, No. 08-16971, 2010 U.S. App. LEXIS

13   14478 (9th Cir. June 23, 2010) (holding evidence insufficient to support jury verdict for shareholders

14   of $277 million); *Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263 (2d Cir. 1979) (reversing

15   $87 million judgment after trial).

16   The proposed Settlement eliminates these and other risks, including the very real risk of no

17   recovery after years of litigation, guaranteeing Athira immediate substantial benefits. *See Officers*

18   *for Justice*, 688 F.2d at 625; Bushansky Decl. at ¶¶9-13; Houlihan Decl. at ¶¶14-18; Soofi Decl. ¶¶9-

19   13; Vrana Decl, at ¶¶10-14; Melnick Decl. at ¶¶6, 10; Stip at 6.

20   **E.    The Board's Decision To Approve The Settlement Warrants Deference**

21   In an exercise of its business judgment, the Committee appointed by the Board to oversee

22   settlement negotiations of the Derivative Actions and to provide a recommendation to the Board

23   with respect thereto, advised by independent outside legal counsel, considered and then

24   recommended the proposed Settlement to the Board. Stip. at §IV. The Board reviewed the proposed

25   Settlement and the Committee's recommendation and in an exercise of its independent business

26

27   PLAINTIFFS' UNOPPOSED MOTION FOR
     FINAL APPROVAL OF DERIVATIVE
28   SETTLEMENT

     Lead Case No. 2:22-cv-497-TSZ

**WEISS LAW**
305 Broadway, 7th Floor
New York, New York 10007
Telephone: (212) 682-3025

16

judgment issued a resolution that the Settlement and its terms provide a substantial benefit to, and are in the best interests of, the Company and its stockholders. Stip. at §§IV, V(B)(2) and V(D)(1). This exercise of business judgment warrants judicial deference. *See generally Zapata Corp. v. Maldonado*, 430 A.2d 779, 782 (Del. 1981); *see also, e.g., Lunsford v. Woodforest Nat'l Bank,* No. 1:12-cv-103-CAP*,* 2014 U.S. Dist. LEXIS 200716, at *14 (N.D. Ga. May 19, 2014) (in evaluating proposed settlement "the Court 'will not substitute its business judgment for that of the parties'") (citing *In re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228, 238 (5th Cir. 1982)); *Unitrin, Inc. v. Am. Gen. Corp.*, 651 A.2d 1361, 1386 (Del. 1995) ("courts will not substitute their business judgment for that of the directors, but will determine if the directors' decision was, on balance, within a range of reasonableness"); *Brooks v. Am. Exp. Indus., Inc*., No. 71 Civ. 5128, 1977 U.S. Dist. LEXIS 17313, at *10 (S.D.N.Y. Feb. 17, 1977) (board decision to approve settlement "is a business judgment with presumptive validity").

F.    **The Lack Of Objections Supports Approval Of The Settlement, As Well As The Fee And Expense Amount**

Pursuant to the Preliminary Approval Order, the Notice has been provided to Current Athira Stockholders.  Lead Counsel Decl. at ¶¶7, 22, 49, 50. The Notice sets forth, *inter alia*: the procedure for submitting a written objection to the Settlement, including the Fee and Expense Amount and the Service Awards. *See* Stip., Exs. B and C; ECF Nos. 21-1 and 21-2. To date, no objections have been received by Plaintiffs' Counsel. The positive reaction of Athira stockholders to the proposed Settlement further demonstrates its fairness, reasonableness, and adequacy. A settlement is presumptively fair under such circumstances, and courts in the Ninth Circuit and nationwide have long recognized that such a positive reaction weighs in favor of final approval of a settlement. *See, e.g., Peterson v. BSH Home Appliances Corp.,* No. 2:23-cv-00543-RAJ, 2024 U.S. Dist. LEXIS 105624, at **19-20 (W.D. Wash. June 13, 2024) (where no objections were made, court held that the "lack of objections … demonstrates the positive reaction of the Settlement Class Members to the

PLAINTIFFS' UNOPPOSED MOTION FOR
FINAL APPROVAL OF DERIVATIVE
SETTLEMENT

Lead Case No. 2:22-cv-497-TSZ

**WEISS LAW**
305 Broadway, 7th Floor
New York, New York 10007
Telephone: (212) 682-3025

Settlement"); *Fossett v. Brady Corp.*, No. ED CV 16-2572 PA (SPx), 2021 U.S. Dist. LEXIS 56132, at *25 (C.D. Cal. Mar. 23, 2021) ("[T]he absence of a large number of objections to the proposed class settlement raises a strong presumption that the terms … are favorable to the class members.").[6]

## V.    CONCLUSION

Plaintiffs respectfully submit that the Settlement is fair, reasonable, and adequate meriting final approval by the Court.

Dated: July 3, 2024

                                             **WEISS LAW**

                                             */s/ Joshua M. Rubin*
                                             Joshua M. Rubin
                                             David C. Katz
                                             305 Broadway, 7th Floor
                                             New York, NY 10007
                                             Telephone: (212) 682-3025
                                             Facsimile: (212) 682-3010
                                             Email:  jrubin@weisslawllp.com
                                                              dkatz@weisslawllp.com

                                             Patrick Slyne
                                             **SLYNE LAW LLC**

---

[6] *See In re Wells Fargo & Co. S'holder Deriv. Litig.*, 445 F. Supp. 3d 508, 518 (N.D. Cal. 2020) (explaining the absence of a large number of objections "raises a strong presumption" that the terms of a proposed derivative settlement are favorable to shareholders); *Zografos v. Qwest Commc'ns Co., LLC*, Case No. 6:00-cv-06201-AA, 2013 U.S. Dist. LEXIS 99573, at *12 (D. Or. July 11, 2013) ("The absence of objections by class members to Settlement Class Counsel's fee-and-expense request further supports finding it reasonable."); *In re MRV Commc'ns, Inc. Derivative Litig.*, Case No. CV 08-03800 GAF, 2013 U.S. Dist. LEXIS 86295, at **16-17 (C.D. Cal. June 6, 2013) (citation omitted) (finally approving derivative settlement where "Plaintiffs [were] not aware of a single objection to any aspect of the Settlement" and finding that factor "weighs in favor of final approval"); *In re Rambus Inc. Derivative Litig.*, Case No. C 06-3513 JF (HRL), 2009 U.S. Dist. LEXIS 131845, at *10 (N.D. Cal. Jan. 20, 2009) (shareholders' reaction to a proposed settlement "is perhaps the most significant factor to be weighed in considering its adequacy" and "[g]iven the benefits to Rambus and the lack of objections, the Court finds the Settlement to be fair, adequate, reasonable, and a sound alternative to continued litigation"); *Ryan ex rel. Maxim Integrated Prods. v. Gifford*, Civil Action No. 2213-CC, 2009 Del. Ch. LEXIS 1, at *32 (Del. Ch. Jan. 2, 2009) ("That only one shareholder filed an objection to the Settlement lends support to plaintiffs' argument that the Settlement is fair, reasonable, and adequate.").

PLAINTIFFS' UNOPPOSED MOTION FOR
FINAL APPROVAL OF DERIVATIVE
SETTLEMENT

Lead Case No. 2:22-cv-497-TSZ

                                             **WEISS LAW**
                                             305 Broadway, 7th Floor
                                             New York, New York 10007
                                             Telephone: (212) 682-3025

18

800 Westchester Avenue, N641
Rye Brook, NY 10573
Telephone: (914) 279-7000
Email: Patrick.Slyne@slynelaw.com

*Co-Lead Counsel for Plaintiffs*

Miles A. Yanick
**Yanick Law & Dispute Resolution PLLC**
1325 Fourth Avenue, Suite 1130
Seattle, WA 98101
Telephone: (206) 455-5924
Email: myanick@yanicklaw.com

*Local Counsel for Plaintiffs*

PLAINTIFFS' UNOPPOSED MOTION FOR
FINAL APPROVAL OF DERIVATIVE
SETTLEMENT

Lead Case No. 2:22-cv-497-TSZ

**WEISS LAW**
305 Broadway, 7th Floor
New York, New York 10007
Telephone: (212) 682-3025

19